**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

V SECRET CATALOGUE, INC.,
VICTORIA'S SECRET STORES, INC., and
VICTORIA'S SECRET CATALOGUE, INC.,

Plaintiffs,

vs.

VICTOR MOSELEY and CATHY MOSELEY
d/b/a VICTOR'S LITTLE SECRET,

Defendants.

Case No. 3:98-cv-395 (CRS-DW)

Electronically Filed

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Frank J. Colucci (FC-8441)
COLUCCI & UMANS
218 East 50th Street
New York, New York 10022
Telephone: (212) 935-5700
Facsimile: (212) 935-5728
Email: email@colucci-umans.com

Attorneys for Plaintiffs

Of Counsel:

Reford H. Coleman
COLEMAN LOCHMILLER & BOND
2907 Ring Road
P.O. Box 1177
Elizabethtown, Kentucky 42702-1177

**TABLE OF CONTENTS{PRIVATE }**

**TABLE OF CONTENTS** ........................................................................................ i

**TABLE OF AUTHORITIES** ................................................................................. iii

**I. PRELIMINARY STATEMENT** .................................................................1

**II. PROCEDURAL HISTORY** .........................................................................2

**III. STATEMENT OF FACTS**..........................................................................4

**A. Plaintiff's Business And Use Of The VICTORIA'S SECRET Mark**..............................................................4

**B. Defendants' Establishment And Use Of "Victor's Secret" And "Victor's Little Secret"** ...................................................10

**IV. DEFENDANTS' USE OF "VICTOR'S LITTLE SECRET," AS A MATTER OF LAW, IS LIKELY TO CAUSE DILUTION OF THE FAMOUS AND DISTINCTIVE VICTORIA'S SECRET MARK IN VIOLATION OF THE TRADEMARK DILUTION REVISION ACT OF 2006**..............................................................................................13

**A. Standard For Summary Judgment** .......................................................13

**B. The Trademark Dilution Revision Act Of 2006 Applies To The Case At Bar Because Victoria's Secret Seeks Only Injunctive Relief**.............................................................................14

**1. Enactment Of The Trademark Dilution Revision Act** ...................14

**2. Where A Plaintiff Seeks Injunctive Relief For Trademark Dilution, The Trademark Dilution Revision Act Applies** ..............15

**C. Applying The Elements Of The TDRA To The Undisputed Facts, There Are No Genuine Issues Of Material Fact, And, Therefore, Summary Judgment Should Be Granted In Favor Of Victoria's Secret** ............................................................19

**1. Defendants Do Not Contest That The VICTORIA'S SECRET Mark Is Famous** .......................................20

**2. Plaintiff's VICTORIA'S SECRET Mark Is Distinctive**................22

**3. Defendants' Use In Commerce Of "Victor's Little Secret" Commenced After The VICTORIA'S SECRET Mark Became Famous** ....................23

**4. Defendants' Use Of "Victor's Little Secret" Is Likely To Cause Dilution Of Plaintiff's VICTORIA'S SECRET Mark** ........24

**a. Dilution By Blurring** ....................25

**i. The VICTORIA'S SECRET Mark And "Victor's Little Secret" Are Nearly Identical** ..........26

**ii. The VICTORIA'S SECRET Mark Is Inherently Distinctive And Has Acquired Worldwide Secondary Meaning As A Designator Of Plaintiff's Products** ....................27

**iii. Plaintiff Engages In Substantially Exclusive Use Of Its VICTORIA'S SECRET Mark** ................28

**iv. The Famous VICTORIA'S SECRET Mark Is Recognized Throughout The United States And The World** ....................29

**v. Defendants Lack A Credible Explanation For Their Choice Of Mark And Their Wrongful Intent May Be Inferred** ....................29

**vi. Consumers Have Noted The Similarity Between The Marks And Are Likely To Associate The Parties** ....................30

**vii. The Sum Of The Factors Favors Plaintiff** ...............31

**b. Dilution By Tarnishment** ....................31

**V. CONCLUSION** ....................33

**TABLE OF AUTHORITIES**

**CASES**

*Advance Stores Co., Inc. v. Refinishing Specialties, Inc.*,
948 F. Supp. 643 (W.D. Ky. 1996)....14

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986)....13

*Anheuser-Busch, Inc. v. Andy's Sportswear, Inc.*,
40 U.S.P.Q.2d 1542 (N.D. Cal. 1996)....32

*Anheuser-Busch, Inc. v. Balducci Publ'ns*,
28 F.3d 769 (8th Cir. 1994)....25, 32

*Arizona v. California*,
460 U.S. 605 (1983)....20

*Audi AG v. D'Amato*,
469 F.3d 534 (6th Cir. 2006)....13, 19

*Autozone, Inc. v. Strick*,
466 F. Supp. 2d 1034 (N.D. Ill. 2006)....17

*AutoZone, Inc. v. Tandy Corp.*,
174 F. Supp. 2d 718 (M.D. Tenn. 2001)....26

*Bennett v. Eastpointe*,
410 F.3d 810 (6th Cir. 2005)....13, 14

*Big Ten Conference, Inc. v. Big Ten Worldwide Concert and Sport Club at Town Center, L.L.C.*,
No. 96-CV-70617-DT, 2000 U.S. Dist. LEXIS 22328 (E.D. Mich. Oct. 10, 2000)....31

*Bowling v. Pfizer, Inc.*,
132 F.3d 1147 (6th Cir. 1998)....20

*Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999)....28

*Celotex v. Catrett*,
477 U.S. 317 (1986)....13, 14

*Coal Resources, Inc. v. Gulf & Western Indus., Inc.*,
865 F.2d 761 (6th Cir. 1989)....20

*Coca-Cola Co. v. Gemini Rising*,
346 F. Supp. 1183 (E.D.N.Y. 1972) ....................................................................32

*Dan-Foam A/S v. Brand Name Beds, LLC*,
500 F. Supp. 2d 296 (S.D.N.Y. 2007)..........................................................15, 16, 20, 21

*Deere & Co. v. MTD Products, Inc.*,
41 F.3d 39 (2d Cir. 1994) ..................................................................................31

*Diane Von Furstenberg Studio v. Snyder*,
No. 1:06-CV-1356(JCC), 2007 U.S. Dist. LEXIS 6633 (E.D. Va. Sept. 10, 2007)..........31

*Hanover Ins. Co. v. American Eng'g Co.*,
105 F.3d 306 (6th Cir. 1997) ..............................................................................20

*Harris Research, Inc. v. Lydon*,
505 F. Supp. 2d 1161 (D. Utah 2007)...............................................................21, 22

*Hasbro, Inc. v. Internet Entertainment Group, Ltd.*,
40 U.S.P.Q.2d 1479 (W.D. Wash. 1996)................................................................32

*Holiday Inns, Inc. v. 800 Reservation, Inc.*,
86 F.3d 619 (6th Cir. 1996) ................................................................................14

*Jada Toys, Inc. v. Mattel, Inc.*,
496 F.3d 974 (9th Cir. 2007) ..............................................................................26

*Jet, Inc. v. Sewage Aeration Sys.*,
165 F.3d 419 (6th Cir. 1999) ..............................................................................14

*Kraft Foods Holdings, Inc. v. Helm*,
205 F. Supp. 2d 942 (N.D. Ill. June 7, 2002).........................................................26

*Landgraf v. USI Film Products, Inc.*,
511 U.S. 244 (1994)..........................................................................................16

*Levi Strauss & Co. v. Fox Hollow Apparel Group, LLC*,
No. C-06-3765 SC, 2007 U.S. Dist. LEXIS 31355 (N.D. Cal. Apr. 17, 2007) .................24

*Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*,
834 F.2d 568 (6th Cir. 1987) ..............................................................................23

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
464 F. Supp. 2d 495 (E.D. Va. 2006) ....................................................................16

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
No. 06-2267, 2007 U.S. App. LEXIS 26334 (4th Cir. Nov. 13, 2007) ................18, 25, 26

*Malletier v. Dooney & Bourke, Inc.*,
500 F. Supp. 2d 276 (S.D.N.Y. 2007)................................................................16, 17, 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..........................................................................................................14

*Moseley v. V Secret Catalogue, Inc.*,
537 U.S. 418 (2003)..........................................................................................3, 20, 30, 32

*New York Stock Exch. v. New York, New York Hotel LLC*,
293 F.3d 550 (2d Cir. 2002)..............................................................................................25

*Nike, Inc. v. Nikepal Int'l, Inc.*,
No. 2:05-cv-1468-GEB-JFM,
2007 WL 2782030 (E.D. Cal. Sept. 18, 2007)..............................22, 26, 27, 28, 29, 30, 31

*PepsiCo, Inc. v. #1 Wholesale, LLC*,
84 U.S.P.Q.2d 1040 (N.D. Ga. 2007) .........................................................................22, 31

*Perfumebay.com Inc. v. eBay Inc.*,
No. 05-56794, 2007 U.S. App. LEXIS 25726 (9th Cir. Nov. 5, 2007) ......................27, 28

*P.T.C. Brands, Inc. v. Conwood Co., L.P.*,
887 F. Supp. 963 (W.D. Ky. 1995).........................................................................13, 14, 29

*Savin Corp. v. Savin Group*,
391 F.3d 439 (2d Cir. 2004)..............................................................................................20

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
477 F.3d 765 (2d Cir. 2007)..........................................................................................14, 17

*Tiffany & Co. v. Boston Club, Inc.*,
231 F. Supp. 836 (D. Mass. 1964) ...................................................................................25

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
505 U.S. 763 (1992)..........................................................................................................23

*Ty, Inc. v. Agnes M. Ltd.*,
No. 00-C-358, 2001 U.S. Dist. LEXIS 18852 (N.D. Ill. Nov. 9, 2001) ......................26, 27

*United States v. Adesida*,
129 F.3d 846 (6th Cir. 1997) ............................................................................................20

*United States v. Diebold, Inc.*,
369 U.S. 654 (1962)....................14

*United States v. Rayborn*,
495 F.3d 328 (6th Cir. 2007) ....................20

*Verilux, Inc. v. Hahn*,
No. 3:05CV254(PCD), 2007 WL 2318819 (D. Conn. Aug. 10, 2007) ....................16

*Victoria's Secret Stores v. Artco Equipment Co., Inc.*,
194 F. Supp. 2d 704 (S.D. Ohio 2002) ....................23, 32

*V Secret Catalogue, Inc. v. Moseley*,
No. 3:98CV-395-S, 2000 WL 370525 (W.D. Ky. Feb. 9, 2000)....................3, 20, 24, 29, 30

*V Secret Catalogue, Inc. v. Moseley*,
259 F.3d 464 (6th Cir. 2001) ....................3, 23, 24, 27, 30, 31

*WSM, Inc. v. Tennessee Sales Co.*,
709 F.2d 1084 (6th Cir. 1983) ....................30

## RULES AND STATUTES

*Fed. R. Civ. P.* 1....................14

*Fed. R. Civ. P.* 56....................13

Federal Trademark Dilution Act of 1995,
Pub. L. No. 104-98, 109 Stat. 985 (1996)
(codified as amended at 15 U.S.C. § 1125(c)) ....................2, 3

Trademark Dilution Revision Act of 2006,
Pub. L. No. 109-312, 120 Stat. 1730 (2006)
(codified at 15 U.S.C. § 1125(c)).................... *passim*

## SUPPLEMENTAL AUTHORITIES

Caroline Chicoine & Jennifer Visintine, *The Role of State Trademark Dilution Statutes in Light of the Trademark Dilution Revision Act of 2006*,
96 Trademark Rep. 1155 (Nov.-Dec. 2006) ....................17, 18

J. Alison Grabell, *Comments on the Trademark Dilution Revision Act of 2006*, PLI Order No. 11167, 890 PLI/Pat 213 (Feb. 22-23, 2007) ............................................17

Siegrun D. Kane, Practicing Law Institute, 13th Annual Institute on Intellectual Property Law, *Trademark Hot Topics 2007: Trademark Owners Win Some and Lose Some*, PLI Order No. 10983 (Sept.-Oct. 2007) ........................................................17

## I. PRELIMINARY STATEMENT

After taking a lengthy journey from this Court, to the Sixth Circuit and then the United States Supreme Court, whose reversal of the two lower courts was ultimately overruled by an act of Congress, the above captioned matter has returned to where it began. The outcome should be no different from when the Court last ruled on this matter nearly eight years ago, granting summary judgment in favor of Victoria's Secret on its claim of federal trademark dilution. This matter is back before the Court solely with respect to the parties' cross-motions for summary judgment on the dilution claim, which is the only remaining issue in the case.

Summary judgment once again is appropriate on plaintiff's claim for injunctive relief based on federal trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c) (2006). As a threshold matter, there can be no argument that the applicable version of the dilution statute is that embodied in the Trademark Dilution Revision Act of 2006, rather than its superseded predecessor, the Federal Trademark Dilution Act of 1995. There also is no genuine issue of material fact to preclude maintaining in place, based on the amended statute, the injunction against defendants because plaintiff's VICTORIA'S SECRET trademark (the "VICTORIA'S SECRET Mark") is famous and distinctive and was famous long before defendants began using their designations "Victor's Secret" and "Victor's Little Secret." Indeed, not only did the Court previously render findings to this effect, defendants do not contest these elements.

The Court's prior determinations are relevant to the present inquiry because the predicate elements to prove dilution remain unchanged with the exception of the burden of having to prove actual dilution, which Congress eliminated. Nevertheless, the Court previously found that defendants had caused dilution of the VICTORIA'S SECRET Mark – regardless of whether the determination under the predecessor statute required actual or likely dilution.

The current applicable law requires only that the mark be *likely* to cause dilution, which is a much lower standard to meet than *actual* dilution. Because the Court previously held that defendants caused dilution of the VICTORIA'S SECRET Mark, the Court's determination must not now deviate when it applies the more relaxed burden of proof in deciding whether defendants' use of their mark is merely "likely" to cause dilution of the VICTORIA'S SECRET Mark by blurring or tarnishment, as the Trademark Dilution Revision Act now delineates these two causes of action.

As will be established herein, when the undisputed facts are evaluated according to the amended statute's six non-exclusive factors for determining whether a defendant's use of its mark is likely to cause dilution by blurring, it is apparent that there is no genuine issue of material fact. Likewise, there is no genuine issue of material fact that defendants' sale of adult videos and sex toys under a mark nearly identical to the famous VICTORIA'S SECRET Mark harms the reputation of plaintiff and its famous mark due to the association that arises between the two marks.

Because there are no genuine issues of material fact to be tried, Victoria's Secret respectfully requests that this Court once again grant summary judgment in its favor.

## II. PROCEDURAL HISTORY

Plaintiffs V Secret Catalogue, Inc., Victoria's Secret Stores, Inc. and Victoria's Secret Catalogue, Inc. (collectively, "Victoria's Secret" or "plaintiff") filed a complaint on June 22, 1998, commencing this litigation against the Moseleys. The parties cross-moved for summary judgment; Victoria's Secret moved only with respect to Count III of its complaint, which alleged that defendants' acts constituted trademark dilution in violation of the Federal Trademark Dilution Act of 1995 ("FTDA"), Pub. L. No. 104-98, 109 Stat. 985 (1996) (codified

as amended at 15 U.S.C. § 1125(c)). The Court granted the Moseleys' motion for summary judgment on Victoria's Secret's claims of federal trademark infringement (Count I), violation of Section 43(a) of the Trademark Act (Count II), and common law trademark infringement and unfair competition (Count IV), on the basis that no likelihood of confusion between the parties' marks exists. *V Secret Catalogue, Inc. v. Moseley*, No. 3:98CV-395-S, 2000 WL 370525, at *4 (W.D. Ky. Feb. 9, 2000). The Court granted summary judgment to Victoria's Secret on its claim under the FTDA, finding that the two marks are substantially similar and that the Moseleys' use of "Victor's Little Secret" diluted Victoria's Secret's Mark. *Id.* at *5-6.

The Moseleys appealed, and the Sixth Circuit affirmed the district court decision. *V Secret Catalogue, Inc. v. Moseley*, 259 F.3d 464 (6th Cir. 2001). The Moseleys petitioned for certiorari, which the Supreme Court granted. The Supreme Court reversed and remanded the case, holding that the FTDA required a showing of actual dilution and that Victoria's Secret had failed to establish its mark had been diluted under the standard set by the Supreme Court. *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003).[1]

Subsequent to the Supreme Court decision in 2003 and prior to the Sixth Circuit's July 26, 2007 mandate to this Court, Congress legislatively overruled the Supreme Court's decision and amended the Lanham Act by replacing the FTDA with the Trademark Dilution Revision Act of 2006 ("TDRA"), Pub. L. No. 109-312, 120 Stat. 1730 (2006) (codified at 15 U.S.C. § 1125(c)), effective October 6, 2006. As a result, and for the reasons set forth in Point IV.B.2., *infra*, at 15, the Court must now apply the provisions of the amended statute.

[1] While the case was on remand to the Sixth Circuit, the defendants filed a motion to vacate the injunction, which the court did not act on prior to issuing its mandate and remanding the case to the district court in its July 26, 2007 order. Pursuant to the Court's instructions at the October 22, 2007 conference, the motion to vacate is deemed to be before this Court.

The Court conducted a conference among the parties on October 22, 2007. At that time, counsel for Victoria's Secret proffered a stipulation withdrawing its monetary claims, which all parties signed and the Court accepted. Following the conference, the Court issued an order directing the parties to file cross-motions for summary judgment and acknowledging plaintiff's withdrawal of all monetary claims.

## III. STATEMENT OF FACTS

### A. Plaintiff's Business And Use Of The VICTORIA'S SECRET Mark

Victoria's Secret is firmly established as the United States' premier women's intimate apparel business and as a purveyor of glamorous fragrance and beauty care products. From its beginnings in 1977 as the name of a lingerie store with four locations in the San Francisco Bay area, and since 1982, when The Limited, Inc., the predecessor of plaintiff's corporate parent, purchased the VICTORIA'S SECRET Mark and business, until today, when over 1,000 VICTORIA'S SECRET and VICTORIA'S SECRET BEAUTY retail stores operate throughout the United States in every major U.S. market, the name and mark VICTORIA'S SECRET has been synonymous with lingerie and intimate apparel. (Declaration of Scott A. Kriss ("Kriss Decl."), ¶ 8)

The VICTORIA'S SECRET Mark was first registered in the United States Patent and Trademark Office on January 20, 1981, under Registration No. 1,146,199 for women's lingerie and has been continuously used on women's lingerie since June 12, 1977 when it was first used on women's lingerie and as the name of the first VICTORIA'S SECRET store in San Francisco. In addition, Victoria's Secret is the owner of U.S. Registration Nos. 1,908,042 and 2,455,260 of the VICTORIA'S SECRET Mark for a variety of goods and services, including clothing, lingerie, swimwear, candles and personal care products and retail store and catalog

services.[2] (Kriss Decl., ¶ 6) Victoria's Secret is also the owner of registrations and/or applications to register the trademark and service mark VICTORIA'S SECRET in over 120 countries worldwide. (Kriss Decl., ¶ 7)

By 1998, Victoria's Secret was one of the ten most recognized brands in the United States. (Colucci Decl., Ex. 22) The continued strength and popularity of the VICTORIA'S SECRET brand was recently demonstrated in a survey conducted by Scarborough Research, which asked women to identify the stores where they had shopped for apparel in the prior three months. Victoria's Secret was ranked among the top ten stores identified by the women surveyed and was one of only two specialty retailers to crack the top ten rankings. (Kriss Decl., ¶ 9)

In addition to its eponymous retail store locations, Victoria's Secret also owns and operates the VICTORIA'S SECRET Catalog (Kriss Decl., ¶¶ 5, 12, 20, 21) and Internet website, www.victoriassecret.com. (Kriss Decl., ¶¶ 5, 10) Since December 1998, Victoria's Secret has advertised, offered for sale and sold its VICTORIA'S SECRET goods on its Internet website located at www.victoriassecret.com and has shipped such goods to consumers around the world. (Kriss Decl., ¶ 10) From its introduction in 1998, Victoria's Secret has been a leader in e-commerce. In July 2007, Victoria's Secret was ranked 2nd in online apparel and accessories purchases among retailers by Nielsen/NetRatings (up from 3rd in a similar poll conducted in February, 2006). (Kriss Decl., ¶ 11)

---

[2]As of July 30, 2005, due to a corporate restructuring, Victoria's Secret Stores Brand Management, Inc. became the successor in interest to all trademark rights of the above captioned plaintiffs. As a result of the reorganization of the various Victoria's Secret companies, Victoria's Secret Stores Brand Management, Inc. is the current owner of all trademark applications and registrations worldwide of all trademarks and all rights arising therefrom that plaintiffs, V Secret Catalogue, Inc., Victoria's Secret Stores, Inc. and Victoria's Secret Catalogue, Inc., previously owned, including the VICTORIA'S SECRET Mark. (Kriss Decl., ¶ 4)

VICTORIA'S SECRET goods are exclusive to Victoria's Secret and are not offered for sale or sold in third-party stores. (Kriss Decl., ¶ 12) Each VICTORIA'S SECRET store prominently displays the VICTORIA'S SECRET trademark at the entrance to the storefront, so that consumers who see or enter the store know that the store is a VICTORIA'S SECRET store. In addition to the prominent display of the VICTORIA'S SECRET Mark at the entrance of each store, each VICTORIA'S SECRET store also displays from time to time a variety of posters and signage to advertise and promote select VICTORIA'S SECRET merchandise. (Kriss Decl., ¶ 13)

Since 1977, Victoria's Secret has sold and continues to sell a complete line of lingerie, women's undergarments and nightwear, robes, caftans and kimonos, slippers, sachets, lingerie bags, hanging bags, candles, soaps, cosmetic brushes, atomizers, bath products and fragrances. All merchandise purchased at a VICTORIA'S SECRET retail store is placed in a shopping bag, or wrapped in tissue paper and placed in a gift box, both of which bear the VICTORIA'S SECRET Mark. (Kriss Decl., ¶¶ 6, 14)

Plaintiff also offers its customers the opportunity to obtain a Victoria's Secret Angel credit card. The card may be used to purchase goods at all VICTORIA'S SECRET stores and through the VICTORIA'S SECRET Catalog and website. (Kriss Decl., ¶ 15)

Plaintiff is also the creator of the famous "Victoria's Secret Fashion Show," which was first launched in 1995. In addition to the Victoria's Secret models that participate in the show, numerous celebrities from the fashion, film and television industries also attend. Attendance is by invitation only, as no tickets to the show are sold. The "Victoria's Secret Fashion Show" has generated enormous media coverage. (Kriss Decl., ¶ 16)

In 1999, Victoria's Secret made history by simulcasting its annual fashion show over the Victoria's Secret website. Nearly two million people viewed the webcast live, setting a world's record for the total number of hits received during a specific event. The event was an international sensation and was reported by media outlets throughout the world. The 2007 Victoria's Secret Fashion Show was broadcast on national network television by CBS on December 4th and will be shown throughout the world. (Kriss Decl., ¶ 17)

The marketplace success and desirability of plaintiff's merchandise is evidenced by consumer purchases. Since at least as early as 1991, Victoria's Secret's sales at VICTORIA'S SECRET retail stores and in its VICTORIA'S SECRET Catalog and on its website have exceeded $1 billion annually. In fiscal 2006, Victoria's Secret's retail store, catalog and website sales collectively exceeded $4.9 billion. Total sales from 1982 through 2006 exceed $43 billion. (Kriss Decl., ¶ 18)

The VICTORIA'S SECRET stores located at the Mall St. Matthews, the Oxmoor Center, the Jefferson Mall and The Summit at Louisville in Louisville, Kentucky are located approximately 60 miles from defendants' store in Elizabethtown, Kentucky. Combined retail sales at these stores reached approximately $4.6 million in 1998, $4.4 million in 1997, $3.9 million in 1996, $4 million in 1995, and $3.9 million in 1994. The VICTORIA'S SECRET store in Oxmoor Center has been operating since April 24, 1985; the VICTORIA'S SECRET store at the Mall St. Matthews has been operating since November 16, 1992. (Kriss Decl., ¶ 19)

In 2006, Victoria's Secret distributed over 280 million issues of its famous VICTORIA'S SECRET Catalogs internationally to more than 200 countries. In each year since 1991, distribution of the VICTORIA'S SECRET Catalogs has exceeded 1 million catalogs

annually. Between 1982 and 2006, Victoria's Secret circulated more than 5 billion catalogs. (Kriss Decl., ¶ 20)

The VICTORIA'S SECRET catalog is also distributed to residents of Kentucky. Over 3.5 million VICTORIA'S SECRET catalogs were distributed to Kentucky residents in 1998, with 39,000 catalogs distributed in Elizabethtown alone in 1998. Furthermore, from 1994 to 1998, Kentucky residents purchased nearly $30 million of VICTORIA'S SECRET merchandise through the catalog. (Kriss Decl., ¶ 21)

Plaintiff has continuously used and advertised its VICTORIA'S SECRET Mark since 1977 when it placed its first ads in *The New Yorker*, *Glamour*, *Vogue* and *Harper's Bazaar* in order to educate the public as to the origin of the VICTORIA'S SECRET goods and to identify those goods with plaintiff. Such efforts now include the use of television and print ads, window displays and in-store signage, visual merchandising, direct mail, samples, public relations and customer affinity clubs. Victoria's Secret's has expended over $3 billion in advertising and promoting its brand since 1996. (Kriss Decl., ¶ 22) In Kentucky alone, 1998 advertising expenditures by Victoria's Secret Stores and Victoria's Secret Catalogue amounted to $690,000 and $2,066,000, respectively. (Kriss Decl., ¶ 23)

The success of the internationally famous Victoria's Secret retailing powerhouse has been covered by major magazines and publications that are widely circulated throughout the world. Articles about Victoria's Secret have been featured in publications such as *The New York Times*, *The Los Angeles Times*, *USA Today*, *The Wall Street Journal*, *Women's Wear Daily*, *Fortune* and *Forbes*. In the last several years alone, VICTORIA'S SECRET merchandise has been featured in the following internationally circulated magazines and publications: *Allure, Cosmopolitan, Elle, Family Circle, Glamour, Good Housekeeping, GQ, In Style, Jane, Lucky,*

*Marie Claire, Maxim, Men's Health, The New York Times, Nylon, People, Self, Seventeen, Us Weekly*, *Vogue*, *Vanity Fair* and *YM.* In addition to its paid advertising and promotion, Victoria's Secret has received valuable "free publicity" as a result of extensive editorial coverage in fashion magazines and the trade press. (Kriss Decl., ¶ 25)

Victoria's Secret merchandise has also been featured on numerous national and local television programs, including: *CBS Early Show, Good Morning America, The Today Show, Entertainment Tonight* and *Extra.* (Kriss Decl., ¶ 26)

Victoria's Secret engages in substantially exclusive use of the VICTORIA'S SECRET Mark. Victoria's Secret aggressively polices and enforces its rights against unauthorized, infringing and dilutive uses of the VICTORIA'S SECRET Mark, as it has done in this case. Such enforcement includes cease and desist letters, trademark oppositions and litigation in federal court. (Kriss Decl., ¶ 27)

In view of the renowned reputation of the VICTORIA'S SECRET Mark for apparel and accessories since 1977, the existence of approximately 1,000 VICTORIA'S SECRET and VICTORIA'S SECRET BEAUTY stores located in every principal city and major market throughout the United States, the sale of billions of dollars of merchandise on an annual basis bearing the VICTORIA'S SECRET Mark, the internationally famous VICTORIA'S SECRET Catalog and its popular website, www.victoriassecret.com, and the numerous registrations of the VICTORIA'S SECRET Mark both existing on the Principal Register of the United States Patent and Trademark Office, as well as internationally in over 120 countries, it is without question that the VICTORIA'S SECRET Mark is a famous mark, well-known to the public and the trade as the source and origin of VICTORIA'S SECRET goods. (Kriss Decl., ¶ 28)

**B. Defendants' Establishment And Use Of "Victor's Secret" And "Victor's Little Secret"**

In January, 1998, Victor Moseley and his wife, Cathy, decided to open an adult novelty store. (Declaration of Frank J. Colucci ("Colucci Decl."), ¶ 3) Months earlier, Mrs. Moseley had started a business selling adult toys, pagers and other merchandise out of the Moseleys' home, and Mr. Moseley previously had managed a "head shop" for nine years. (Colucci Decl., Ex. 18: V. Moseley Dep. at 9:16-20; 7:8-13)

During the next few weeks, the Moseleys began to set up shop in a strip mall in Elizabethtown, Kentucky and exchanged ideas about a marketable name for their shop. (Colucci Decl., ¶ 5) Among the names they bandied about were "Adult Toys Are Us,"[3] "Bumpin Ugly" and "Secret Pleasures." (Colucci Decl., ¶ 6) After approximately two weeks, they chose "Victor's Secret" as the name for their shop. (Colucci Decl., ¶ 12)

The Moseleys claim that they were not aware of VICTORIA'S SECRET until they received a cease and desist letter from Victoria's Secret's trademark counsel on February 25, 1998. (Colucci Decl., Ex. 23) Mr. Moseley testified that, although he had been in retail for 15 to 17 years, he was only vaguely aware of Victoria's Secret. (Colucci Decl., Ex. 18: V. Moseley Dep. at 54:21-55:24) Mrs. Moseley testified that she led a "sheltered life," and that the VICTORIA'S SECRET name never entered her mind when she and her husband decided to name their store "Victor's Secret." (Colucci Decl., Ex. 20: C. Moseley Dep. at 7:1-20)

"Victor's Secret" opened in Elizabethtown on February 7, 1998. (Colucci Decl., ¶ 12) Its merchandise assortment included lingerie and sleepwear (although not the type sold by

---

[3] Victor Moseley conceded that defendants were aware of the company Toys R Us when they considered using "Adult Toys Are Us." (Colucci Decl., ¶ 6)

Victoria's Secret), French maid's costumes, pornographic videos and various adult "sex toys" and novelties. (Colucci Decl., ¶ 21)

The store signage, its register and credit card machine featured the "Victor's Secret" name and a logo consisting of a hand with a finger over a pair of lips ("hand logo"). (Colucci Decl., ¶ 14) The Moseleys advertised the Grand Opening of "Victor's Secret" on the radio, through fliers and in such publications as the *News Enterprise*. (Colucci Decl., Ex. 18: V. Moseley Dep. at 47:18-22; 44:9-21) A copy of one such advertisement appeared as follows:




On February 25, 1998, the Moseleys received a letter from Victoria's Secret's counsel demanding that they cease using the name "Victor's Secret." (Colucci Decl., Ex. 23) In subsequent telephone conversations between Mr. Moseley and plaintiff's counsel, Mr. Moseley discussed the possibility of changing the name of his store to "Victor's Precious Secrets." Despite this discussion, and without notifying Victoria's Secret's counsel, the Moseleys changed the name of their store to "Victor's Little Secret" by merely adding the word "Little" above the hand logo. (Colucci Decl., ¶ 17) However, the word "Little" was printed significantly smaller in size than the name "Victor's Secret," as shown below:




The undersigned counsel for Victoria's Secret subsequently requested copies of the advertising, promotional materials and signage used by the Moseleys as well as photographs of the store, but the Moseleys flatly refused to provide any further information. When Victoria's Secret realized that its attempts to amicably resolve this matter were futile, it commenced this civil action on June 26, 1998. (Colucci Decl., ¶ 18)

Notwithstanding the commencement of this civil action, advertisements for "Victor's Little Secret" appeared on radio stations such as WRZI, Star 101.5, and in newspaper publications such as the *Central Kentucky Weekly Shopper*, the *News Enterprise* and online on WeeklyShopper.com. Mr. Moseley testified that he planned to continue advertising "Victor's Little Secret" in all of these media during the lawsuit. (Colucci Decl., ¶ 19) Mr. Moseley conceded that several customers have commented on the similarity between the name of defendants' store and that of VICTORIA'S SECRET. (Colucci Decl., Ex. 18: V. Moseley Dep. at 58:7-15)

After this Court enjoined the Moseleys from using both "Victor's Secret" and "Victor's Little Secret" for their store, they changed the store name to "Cathy's Little Secret," which they continue to successfully operate. *V Secret Catalogue*, 259 F.3d at 467-68.

## IV. DEFENDANTS' USE OF "VICTOR'S LITTLE SECRET," AS A MATTER OF LAW, IS LIKELY TO CAUSE DILUTION OF THE FAMOUS AND DISTINCTIVE VICTORIA'S SECRET MARK IN VIOLATION OF THE TRADEMARK DILUTION REVISION ACT OF 2006

### A. Standard For Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court shall grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Bennett v. Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). The mere presence of some issues of disputed fact will not preclude summary judgment if none of those issues goes to an issue material to the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also P.T.C. Brands, Inc. v. Conwood Co., L.P.*, 887 F. Supp. 963, 964 (W.D. Ky. 1995) ("Not every factual dispute between the parties will prevent summary judgment."); *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) (*quoting Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986)) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.") (emphasis in original).

Material facts are ones that "might affect the outcome of the suit" under the controlling substantive law, and a dispute is genuine where, "if [the facts] were proven at trial, a reasonable jury could return a verdict for the non-moving party." *P.T.C. Brands, Inc.*, 887 F. Supp. at 964 (*citing Anderson*, 477 U.S. at 248). Although the moving party bears the burden of showing that no genuine issue of material fact exists, "that burden may be discharged by 'showing – that is, pointing out to the district court – that there is an absence of evidence to

support the nonmoving party's case.'" *Bennett*, 410 F.3d at 817 (*quoting Celotex*, 477 U.S. at 325).

While the Court must view the inferences to be drawn in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)), the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *P.T.C. Brands, Inc.*, 887 F. Supp. at 964-65 (citations omitted).

The Supreme Court has held that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327 (*quoting Fed. R. Civ. P.* 1).

The protectability of a trademark may be decided as a matter of law on a summary judgment motion. *See, e.g., Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419 (6th Cir. 1999); *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619 (6th Cir. 1996); *Advance Stores Co., Inc. v. Refinishing Specialties, Inc.*, 948 F. Supp. 643 (W.D. Ky. 1996).

**B. The Trademark Dilution Revision Act Of 2006 Applies To The Case At Bar Because Victoria's Secret Seeks Only Injunctive Relief**

**1. Enactment Of The Trademark Dilution Revision Act**

Congress's 2006 enactment of the TDRA was a direct response to the Supreme Court's interpretation of the FTDA in *Moseley*. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 477 F.3d 765, 766 (2d Cir. 2007). The TDRA provides as follows:

> [T]he owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has

> become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1) (2006).

The enactment of the TDRA resulted in several important modifications to the FTDA, the most significant of which are as follows:

(1) Establishes that the standard is "likelihood of dilution" rather than "actual dilution" and that neither actual economic injury nor likelihood of confusion is required to prevail on a federal dilution claim;

(2) Defines a famous mark as one "widely recognized by the general consuming public of the United States," eliminating protection for "niche" marks, and revises the factors for determining whether a mark is famous;

(3) Clarifies that marks with acquired distinctiveness may be protected, as well as inherently distinctive marks;

(4) Establishes that separate causes of action exist for dilution by blurring and dilution by tarnishment; and

(5) Sets forth factors to consider in evaluating dilution by blurring.[4]

The TDRA applies retroactively to claims arising before its effective date of October 6, 2006 insofar as injunctive relief is sought. The parties have stipulated to the withdrawal of Victoria's Secret's monetary claims, which the Court has so ordered. Therefore, Victoria's Secret's claim of trademark dilution must be analyzed under the TDRA because Victoria's Secret only seeks an injunction.

### 2. Where A Plaintiff Seeks Injunctive Relief For Trademark Dilution, The Trademark Dilution Revision Act Applies

The applicability of 15 U.S.C. § 1125(c), as amended by the TDRA, to actions commenced prior to October 6, 2006 in which a plaintiff seeks injunctive relief, rather than

---

[4] Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c) (2006); *see also Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 306 n.87 (S.D.N.Y. 2007).

damages, was not expressly addressed by the 2006 legislation. However, the courts that have considered the issue have consistently held that the TDRA applies retroactively, insofar as a claim seeks injunctive relief.

One of the first cases to apply the TDRA unequivocally held that the TDRA's amendments to 15 U.S.C. § 1125(c) applied to a case commenced prior to the law's enactment because the plaintiff sought injunctive relief. *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 464 F. Supp. 2d 495, 503-04 (E.D. Va. 2006) (*citing Landgraf v. USI Film Products, Inc.*, 511 U.S. 244 (1994)), *aff'd*, No. 06-2267, 2007 U.S. App. LEXIS 26334 (4th Cir. Nov. 13, 2007). Although it acknowledged the Supreme Court's holding in *Moseley*, 537 U.S. at 433, the district court in the *Haute Diggity Dog* case observed that the TDRA had changed the standard to one of "likely dilution." *Id.* at 504. The court then applied the two-part test developed by the Supreme Court in *Landgraf* to determine that the TDRA applied retroactively to Louis Vuitton's dilution claim, insofar as it sought injunctive relief. *Id.* ("In this case, Plaintiff has pled for injunctive relief on the issue of dilution. Therefore, the amended statute will apply in this case.") (citation omitted). Thus, the plaintiff only needed to show a likelihood of dilution. *Id.*

Following the seminal decision in *Haute Diggity Dog*, the courts that have considered the applicability of the TDRA have concluded uniformly that the TDRA amendments apply to all pending dilution claims to the extent that the plaintiff seeks injunctive relief. *See, e.g.*, *Verilux, Inc. v. Hahn*, No. 3:05cv254(PCD), 2007 WL 2318819, at *11 (D. Conn. Aug. 10, 2007) (holding that to the extent plaintiff's action filed in February 2005 sought injunctive relief, the TDRA applied); *Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 306 n.87 (S.D.N.Y. 2007) (holding that for suit filed in August 2006 plaintiff would be entitled to injunctive relief under the TDRA, but not monetary remedies); *Malletier v. Dooney & Bourke*,

*Inc.*, 500 F. Supp. 2d 276, 283 n.31 (S.D.N.Y. 2007) ("Congress's intention that the October 6, 2006 cutoff date apply to monetary relief for dilution, but not to injunctive relief, is also readily apparent from the sentence structure of the TDRA. The first sentence of subsection 1125(c)(5), which provides for injunctive relief, lacks any reference to the explicit date restriction contained in the second sentence, which addresses monetary relief."); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 477 F.3d 765, 765-66 (2d Cir. 2007) (vacating district court's December 2005 judgment that Starbucks had not met its burden of showing "actual dilution" under the FTDA and *Moseley* and remanding to district court with instructions to consider Starbucks's dilution claim for injunctive relief under the "likely to cause dilution" standard enacted by the TDRA); *see also Autozone, Inc. v. Strick,* 466 F. Supp. 2d 1034, 1044 (N.D. Ill. 2006) (holding that, because plaintiffs sought only prospective injunctive relief in their claim filed before enactment of the TDRA, "[t]he amended version of § 1125(c) applies to plaintiffs' dilution claim."). *See generally* Siegrun D. Kane, Practicing Law Institute, 13th Annual Institute on Intellectual Property Law, *Trademark Hot Topics 2007: Trademark Owners Win Some and Lose Some*, PLI Order No. 10983, at 125-26 (Sept.-Oct. 2007) (discussing the elements of the TDRA and summarizing its retroactive application in *Haute Diggity Dog* and *Starbucks*); J. Alison Grabell, *Comments on the Trademark Dilution Revision Act of 2006*, PLI Order No. 11167, 890 PLI/Pat 213, 223-25 (Feb. 22-23, 2007) (stating that an injunction remains the principal remedy under the TDRA and that this is the only relief the Act affords for dilution occurring prior to enactment); Caroline Chicoine & Jennifer Visintine, *The Role of State Trademark Dilution Statutes in Light of the Trademark Dilution Revision Act of 2006*, 96 Trademark Rep. 1155, 1177-78 (Nov.-Dec. 2006) (noting the TDRA prohibits monetary remedies in cases where the

offending mark was "first used in commerce" prior to enactment, but observing that "[t]here is no corresponding limitation on injunctive relief.").

In contrast, Congress explicitly provided that the monetary remedies of the TDRA are available only in cases in which "the mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in commerce by the [defendant] after the date of enactment of the Trademark Dilution Revision Act of 2006," *i.e.*, October 6, 2006. 15 U.S.C. § 1125(c)(5) (2006); *see also Dooney & Bourke*, 500 F. Supp. 2d at 283 ("The second sentence of [TDRA] subsection 1125(c)(5), entitling owners of famous marks to dilution damages, contains an unambiguous date restriction that authorizes the application of the 'likelihood of dilution' standard as a basis for recovering damages to civil actions where the diluting mark or trade name was first introduced in commerce *after October 6, 2006*.") (emphasis in original). The *Dooney & Bourke* court held that the absence of a similar date restriction in the context of injunctive relief indicated a Congressional intent that the October 6, 2006 cutoff date *not* apply to dilution claims seeking injunctive relief. *Id.*

To the extent the defendants assert that the FTDA applies because that statute was in effect when the complaint was filed and when this Court, the Court of Appeals, and Supreme Court decided the case, that argument is flawed. Congress's purpose in enacting the TDRA was "principally to overrule [the Supreme Court's decision in] *Moseley* and to require that only a *likelihood* of dilution need be proved." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, No. 06-2267, 2007 U.S. App. LEXIS 26334, at *25 n.2 (4th Cir. Nov. 13, 2007) (emphasis in original). As the courts addressing this issue uniformly have held, to the extent plaintiff's dilution claim seeks injunctive relief, the TDRA applies retroactively; conversely, to the extent that a claim filed before October 6, 2006 seeks monetary relief, it will be examined under the

FTDA. Thus, the FTDA would have governed Victoria's Secret's claims for monetary relief had it not expressly stipulated to the withdrawal of its monetary claims.

Because the only relief sought by Victoria's Secret is injunctive, the Court must apply the TDRA, including its standard of "likelihood of dilution" and its explicit rejection of any requirement of economic injury, rather than the FTDA as interpreted by the Supreme Court.

### C. Applying The Elements Of The TDRA To The Undisputed Facts, There Are No Genuine Issues Of Material Fact, And, Therefore, Summary Judgment Should Be Granted In Favor Of Victoria's Secret

The TDRA sets forth the current federal cause of action for trademark dilution. A plaintiff seeking to bring a claim of federal dilution must show: (1) the plaintiff's mark is famous; (2) the plaintiff's mark is distinctive, either inherently or acquired through use; (3) the defendant commenced use in commerce of a mark or trade name after the plaintiff's mark became famous; and (4) the defendant's use of its mark or trade name is likely to cause dilution of the plaintiff's mark by blurring or tarnishment. 15 U.S.C. § 1125(c)(1) (2006). With the exception of the change that now predicates liability on a likelihood of dilution, the elements are nearly identical to those applied under the FTDA.[5] A plaintiff that establishes these elements is entitled to nationwide injunctive relief against the defendant. Furthermore, a claim of dilution may be sustained regardless of the presence or absence of likely or actual confusion, whether the parties directly compete, and regardless of whether the plaintiff has incurred actual economic injury. *Id.* Applying the dilution elements as set forth by the TDRA, Victoria's Secret is entitled to summary judgment because defendants cannot show any genuine issue of material fact with regard to Victoria's Secret's dilution claim.

[5] The Sixth Circuit applied a five-part test in analyzing dilution claims under the FTDA prior to the enactment of the TDRA. To prevail on a claim under the elements of the FTDA, a plaintiff had to show that its trademark was (1) famous and (2) distinctive, that (3) defendant used the mark in commerce, (4) defendant's use began after plaintiff's mark became famous, and (5) defendant's use caused dilution of the distinctive quality of plaintiff's mark. *Audi AG v. D'Amato*, 469 F.3d 534, 547 (6th Cir. 2006).

**1. Defendants Do Not Contest That The VICTORIA'S SECRET Mark Is Famous**

A plaintiff's mark must be "truly famous" for a court to "afford the owner of the mark the vast protections of the FTDA." *Savin Corp. v. Savin Group*, 391 F.3d 439, 449 (2d Cir. 2004); *see also Dan-Foam*, 500 F. Supp. 2d at 307 n.90 (citing *Savin* and holding that its "truly famous" requirement "remains unchanged by the TDRA's reconfiguration of the fame factors"). Defendants have never contested that plaintiff's VICTORIA'S SECRET Mark is famous. *V Secret Catalogue*, 2000 WL 370525, at *5; *Moseley*, 537 U.S. at 432. The law of the case doctrine precludes defendants from now challenging this conclusion or altering their position.[6]

Under the TDRA, a trademark is "famous" if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). The TDRA provides four nonexclusive factors courts should consider in determining whether a mark is "famous." These factors are:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, either by the owner or by third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services under the mark.

(iii) The extent of actual recognition of the mark.

(iv) Whether the mark is registered.

---

[6] "Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." *Hanover Ins. Co. v. American Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (*quoting Coal Resources, Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761, 766 (6th Cir. 1989)). Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," *Arizona v. California*, 460 U.S. 605, 618 (1983); *United States v. Rayborn*, 495 F.3d 328, 337 (6th Cir. 2007), and the court is "precluded from reexamining an issue previously decided by the same court, or a higher court in the same case." *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir. 1998). Further, this doctrine precludes a party from challenging a decision from an earlier stage of the litigation that could have been challenged in a prior appeal, but where the party failed to do so. *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997).

*Id.*; *see also Harris Research, Inc. v. Lydon*, 505 F. Supp. 2d 1161, 1165-66 (D. Utah 2007); *Dan-Foam*, 500 F. Supp. 2d at 307.

The application of the TDRA factors to the undisputed facts reveals that the VICTORIA'S SECRET Mark meets the high standard for "fame" under the federal statute. The duration, extent, and reach of plaintiff's advertising and publicity of its VICTORIA'S SECRET Mark are incontestably broad. In 2006, Victoria's Secret had an international circulation of over 280 million catalogs. (Kriss Decl., ¶ 20) Articles about plaintiff and its VICTORIA'S SECRET Mark have appeared in major magazines and publications with worldwide circulation. (Kriss Decl., ¶ 25)

Under the second element, plaintiff's combined sales through its VICTORIA'S SECRET retail stores, catalog, and website reached $4.9 billion in 2006. Plaintiff's overall sales of merchandise with the VICTORIA'S SECRET Mark have exceeded $43 billion since the business began in 1977. (Kriss Decl., ¶ 18)

Moreover, plaintiff's mark has achieved significant actual recognition among consumers in the United States and worldwide. Indeed, VICTORIA'S SECRET has become one of the ten most recognized brands in the United States. (Colucci Decl., Ex. 22) A recent survey recognized Victoria's Secret as one of the top ten stores, and one of only two specialty retailers among the top ten, identified by women who were asked where they had shopped in the prior three months. (Kriss Decl., Ex. 6)

Finally, plaintiff's VICTORIA'S SECRET Mark has been registered with the United States Patent and Trademark Office since January 20, 1981. (Kriss Decl. ¶ 6)

All of these facts weigh in favor of a finding of fame. (Kriss Decl., ¶ 28); *see also Harris Research*, 505 F. Supp. 2d at 1166 (holding plaintiff's CHEM-DRY mark famous where

the mark is widely recognized by the general public in connection with plaintiff's carpet cleaning services, plaintiff had used the mark since 1977, the mark had been registered since 1979, the mark is used in advertising throughout the world, and there are nearly 4,150 franchisees of plaintiff).

Moreover, plaintiff's VICTORIA'S SECRET Mark ranks among the select group of the most famous trademarks in the world. *See PepsiCo, Inc. v. #1 Wholesale, LLC*, 84 U.S.P.Q.2d 1040, 1042, 1044 (N.D. Ga. 2007) (finding PepsiCo's marks, including PEPSI, MOUNTAIN DEW, and SIERRA MIST, "among the most well-known and famous trademarks in the world," given PepsiCo's long use of the marks, its sale of billions of dollars of products under the marks throughout the United States, and its expenditure of hundreds of millions of dollars in advertising and promotion); *see also Nike, Inc. v. Nikepal Int'l, Inc.*, No. 2:05-cv-1468-GEB-JFM, 2007 WL 2782030, at *5 (E.D. Cal. Sept. 18, 2007) (finding the NIKE mark "famous" before defendant's first use of NIKEPAL as a result of promotion of the NIKE mark for two decades through athlete endorsements, television, radio, print media, and billboard placements, and where Nike's promotion expenditures exceeded one billion dollars prior to defendant's use of the offending mark).

Based on the undisputed facts as well as the prior rulings in this case and defendants' failure to contest this issue, there is no question that the VICTORIA'S SECRET Mark is famous.

**2. Plaintiff's VICTORIA'S SECRET Mark Is Distinctive**

In addition to being famous, a mark must be distinctive, either "inherently or through acquired distinctiveness," for a claim of dilution to arise. 15 U.S.C. § 1125(c)(2)(A). Distinctiveness is a reflection of the conceptual strength of a mark. The spectrum of

distinctiveness ranges from generic marks on the unprotectable end to arbitrary and fanciful marks qualifying as the most distinctive and, hence, most protectable. *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571 (6th Cir. 1987). The Sixth Circuit concluded in this case that "the 'Victoria's Secret' mark ranks with those that are 'arbitrary and fanciful' and is therefore deserving of a high level of trademark protection.'" *V Secret Catalogue*, 259 F.3d at 470; *see also Victoria's Secret Stores v. Artco Equipment Co., Inc.*, 194 F. Supp. 2d 704, 730-31 (S.D. Ohio 2002) (holding that the VICTORIA'S SECRET Mark is an arbitrary and fanciful mark). As an arbitrary and fanciful mark, plaintiff's VICTORIA'S SECRET Mark is inherently distinctive. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Nothing has changed to warrant deviating from the determination that the VICTORIA'S SECRET Mark is entitled to strong protection because of its high level of distinctiveness.

Likewise, the billions in sales and multiple millions of dollars dedicated to promoting the VICTORIA'S SECRET Mark through the hundreds of millions of its eponymous catalogs circulated annually, its advertising, and its unsolicited media coverage establish that the VICTORIA'S SECRET Mark also has acquired distinctiveness and attained secondary meaning in the eyes of the public. (Kriss Decl., ¶ 28) Indeed, defendants conceded this point in their April 16, 1999 memorandum in support of their motion for summary judgment when they acknowledged, "Clearly, the specific mark 'Victoria's Secret' has acquired secondary meaning . . . ." (Defs'. Mem. at 8)

### 3. Defendants' Use In Commerce Of "Victor's Little Secret" Commenced After The VICTORIA'S SECRET Mark Became Famous

At the time plaintiff commenced this action, defendants were using "Victor's Little Secret" in commerce as their trade name and in advertisements. (Colucci Decl., ¶¶ 17, 18)

Defendants commenced use of "Victor's Secret" on February 7, 1998 (Colucci Decl., ¶ 12) and inserted "Little" between the two words after they received plaintiff's February 25, 1998 cease and desist letter. (Colucci Decl., ¶ 17) Plaintiff's VICTORIA'S SECRET Mark has been in use since 1977 (Kriss Decl., ¶ 6) and attained "famous" status well before defendants began using either "Victor's Secret" or "Victor's Little Secret." (Kriss Decl., ¶¶ 16, 18, 20, 22, 25, 28) Thus, there is no genuine issue of material fact with regard to this third element.

**4. Defendants' Use Of "Victor's Little Secret" Is Likely To Cause Dilution Of Plaintiff's VICTORIA'S SECRET Mark**

The TDRA provides for relief to an aggrieved mark owner if a defendant's mark is likely to cause dilution by blurring or by tarnishment. The Court previously determined that defendants' use of "Victor's Little Secret" diluted the VICTORIA'S SECRET Mark, which the Court of Appeals affirmed. *V Secret Catalogue, Inc. v. Moseley*, 2000 WL 370525, at *5-6; *V Secret Catalogue*, 259 F.3d at 477. Notwithstanding the Supreme Court decision in *Moseley*, the enactment of the TDRA lowered the bar by clarifying that Victoria's Secret need only demonstrate defendants' mark is *likely* to cause dilution. *Cf. Levi Strauss & Co. v. Fox Hollow Apparel Group, LLC*, No. C-06-3765 SC, 2007 U.S. Dist. LEXIS 31355, at *8 (N.D. Cal. Apr. 17, 2007) ("The [TDRA] revision changes the law to the pre-*Moseley* standard."). Insofar as this Court and the Sixth Circuit have already determined that "Victor's Little Secret" diluted the famous and distinctive VICTORIA'S SECRET Mark, reason dictates that defendants must similarly be held liable when the lower standard of likelihood of dilution is employed. Therefore, this Court should find, once again, that no genuine issue of material fact exists as to likelihood of dilution by blurring.

**a. Dilution By Blurring**

The TDRA defines "dilution by blurring" as an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). Distinctiveness arises from the ability of a famous mark "uniquely to identify a single source" of a product. *See Haute Diggity Dog*, 2007 U.S. App. LEXIS 26334 at *26 (*citing New York Stock Exch. v. New York, New York Hotel LLC*, 293 F.3d 550, 558 (2d Cir. 2002)). Blurring of a mark's distinctiveness, "although not likely to confuse consumers as to source, tend[s] to weaken the unique association of the mark with the trademark owner." *Anheuser-Busch, Inc. v. Balducci Publ'ns*, 28 F.3d 769, 777 (8th Cir. 1994) (*citing Tiffany & Co. v. Boston Club, Inc.*, 231 F. Supp. 836, 844 (D. Mass. 1964) (enjoining Boston restaurant's use of the New York jeweler's TIFFANY mark)).

The Court may consider "all relevant factors" in evaluating whether a mark is likely to cause dilution by blurring, including these six factors enumerated in the statute:

(i) The degree of similarity between the mark or trade name and the famous mark.

(ii) The degree of inherent or acquired distinctiveness of the famous mark.

(iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

(iv) The degree of recognition of the famous mark.

(v) Whether the user of the mark or trade name intended to create an association with the famous mark.

(vi) Any actual association between the mark or trade name and the famous mark.

15 U.S.C. § 1125(c)(2)(B); *see also Nikepal*, 2007 WL 2782030, at *6. "Not every factor will be relevant in every case, and not every blurring claim will require extensive discussion of the factors." *Haute Diggity Dog*, 2007 U.S. App. LEXIS 26334, at *30.

**i. The VICTORIA'S SECRET Mark And "Victor's Little Secret" Are Nearly Identical**

For purposes of dilution, "the marks must be sufficiently similar so that, in the mind of the consumer, the junior mark will conjure an association with the senior." *AutoZone, Inc. v. Tandy Corp.*, 174 F. Supp. 2d 718, 736-37 (M.D. Tenn. 2001), *aff'd*, 373 F.3d 786 (6th Cir. 2004). The allegedly diluting mark need not be identical, so long as it is nearly identical or substantially similar to the protected mark. *See Nikepal*, 2007 WL 2782030, at *6 (finding plaintiff's NIKE and defendant's NIKEPAL marks nearly identical under the TDRA).

Both "Victor's Secret" and "Victor's Little Secret" are substantially similar to the VICTORIA'S SECRET Mark. Indeed, defendants' original mark, "Victor's Secret," is identical to plaintiff's mark but for two letters. In analyzing the similarity of two marks, "if one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." *Kraft Foods Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 948-49 (N.D. Ill. 2002) (holding that defendant's "King VelVeeda" was "strikingly" similar to plaintiff's "Velveeta," notwithstanding that "King" prefaced defendant's mark, thus supporting preliminary injunction on plaintiff's claim of dilution by tarnishment); *see also Jada Toys, Inc. v. Mattel, Inc.*, 496 F.3d 974, 981 (9th Cir. 2007) (reversing entry of summary judgment in favor of defendant, because reasonable trier of fact could find HOT WHEELS and HOT RIGZ nearly identical); *Ty, Inc. v. Agnes M. Ltd.*, No. 00-C-358, 2001 U.S. Dist. LEXIS 18852, at *45-46 (N.D. Ill. Nov. 9, 2001) (holding that defendant's BEANIEBABES.COM was

sufficiently similar to plaintiff's BEANIEBABIES.COM and BEANIE BABIES marks to constitute trademark dilution).

Defendants' use of "Victor's Little Secret" immediately conjures an association with the world-renowned VICTORIA'S SECRET Mark. In fact, the Sixth Circuit had "little doubt that the average lingerie consumer would make just such an association." *V Secret Catalogue*, 259 F.3d at 477. The marks share the commonality of the Victoria/Victor name, in the possessive form, preceding the arbitrary use of "Secret." Similar to the marks at issue in *Nikepal* and *Kraft Foods*, for example, the addition of a relatively minor variation such as "Little" to "Victor's" and "Secret" does not alter the near-identity of plaintiff's and defendants' marks, particularly because of the way defendants sized and placed the word "Little." *Id.* at 476-77. The law of the case dictates that the parties' marks are "semantically almost identical" and "graphically similar." *Id.*

**ii. The VICTORIA'S SECRET Mark Is Inherently Distinctive And Has Acquired Worldwide Secondary Meaning As A Designator Of Plaintiff's Products**

As discussed in Point IV.C.2., the VICTORIA'S SECRET Mark, as an arbitrary or fanciful mark, is inherently distinctive, which weighs in favor of plaintiff. *See Nikepal*, 2007 WL 2782030, at *7. Moreover, unlike the NIKE mark at issue in *Nikepal*, which the court categorized as merely suggestive, *id.*, the VICTORIA'S SECRET Mark is arbitrary and fanciful.

In addition, the VICTORIA'S SECRET Mark has generated extraordinarily strong market recognition among consumers, across the nation and the world, in the years since its adoption by plaintiff (Kriss Decl., ¶ 28), and thus deserves a high level of protection under federal dilution law. *See Perfumebay.com Inc. v. eBay Inc.*, No. 05-56794, 2007 U.S. App. LEXIS 25726, at *38-39 (9th Cir. Nov. 5, 2007) ("The stronger a mark – meaning the more

likely it is to be remembered and associated in the public mind with the mark's owner – the greater the protection that it is accorded by the trademark laws.") (*quoting Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999)). The inherent distinctiveness of the VICTORIA'S SECRET Mark, combined with its very strong recognition among consumers, are vital components of the likelihood of dilution analysis. *See Perfumebay.com Inc.*, 2007 U.S. App. LEXIS 25726, at *39-40 (reversing district court's finding that PERFUMEBAY did not cause likelihood of dilution of EBAY, because district court did not "fully [consider] the highly distinctive qualities of eBay's famous mark," including mark's distinctiveness, fame, and strong association of EBAY with eBay's services).

The ability of the VICTORIA'S SECRET Mark to instantly identify plaintiff as the sole source of products so marked supports plaintiff's claim that its famous mark enjoys an extraordinarily high degree of inherent, as well as acquired, distinctiveness, and that dilution is likely as a result of defendants' activities**.**

**iii. Plaintiff Engages In Substantially Exclusive Use Of Its VICTORIA'S SECRET Mark**

Plaintiff engages in substantially exclusive use of the famous and distinctive VICTORIA'S SECRET Mark. (Kriss Decl., ¶ 27) The TDRA does not require that a mark's use be absolutely exclusive, but rather "substantially exclusive," and a limited degree of third-party use does not defeat a showing of substantially exclusive use. *Nikepal*, 2007 WL 2782030, at *7. To ensure that its use of the VICTORIA'S SECRET Mark remains substantially exclusive, Victoria's Secret actively and aggressively polices its mark against unauthorized, infringing, and dilutive uses of the VICTORIA'S SECRET Mark. Such policing activity includes cease and desist letters, trademark oppositions, and litigation in federal court. (Kriss Decl., ¶ 27)

**iv. The Famous VICTORIA'S SECRET Mark Is Recognized Throughout The United States And The World**

The VICTORIA'S SECRET Mark enjoys strong national and worldwide consumer recognition, as evidenced by its catalog circulation, the appearance of the mark in many of the nation's most prominent publications, plaintiff's extensive advertising, plaintiff's billions of dollars of sales from its catalog, website, and stores located in every principal city and major market in the United States, and plaintiff's annual fashion show. (Kriss Decl., ¶¶ 16, 17, 18, 20, 22, 25, 28); *see also Nikepal*, 2007 WL 2782030, at *7 (finding NIKE mark enjoys strong degree of recognition under the TDRA, where millions of NIKE products are sold throughout the nation each year and the NIKE mark is "readily recognized").

**v. Defendants Lack A Credible Explanation For Their Choice Of Mark And Their Wrongful Intent May Be Inferred**

As for defendant's intent, the Court rejected as incredible Mr. Moseley's purported explanation that he selected the name "Victor's Secret" to symbolize his objective to keep from his employer information about his store. *V Secret Catalogue, Inc. v. Moseley*, 2000 WL 370525, at *4. Since Mr. Moseley testified in his deposition that he was unemployed prior to opening the store, the Court found his credibility to be seriously damaged. *Id.; see also P.T.C. Brands, Inc. v. Conwood Co. L.P.*, 887 F. Supp. 963, 971-72 (W.D. Ky. 1995) (holding that defendant's failure to offer a credible explanation for the similarity of the marks at issue lead to presumption that defendant acted in bad faith).

Likewise, given the national fame of VICTORIA'S SECRET, it is not plausible for defendants to contend they did not have the mark in mind when they selected "Victor's Secret" as their store name. *See Nikepal*, 2007 WL 2782030, at *7 (defendant's knowledge of plaintiff's mark prior to its adoption of allegedly diluting mark, combined with testimony

revealing defendant's purported explanation for adopting its mark was "not credible," resulted in finding that defendant intended to create association with plaintiff's mark). Defendants' excuses aside, there can be no serious doubt that defendants intended to generate the very association with the VICTORIA'S SECRET Mark that they did in fact create.

The undisputed facts offer no basis to deviate from this Court's prior conclusion that "[d]efendants selected their mark with the intention of causing confusion." *V Secret Catalogue, Inc. v. Moseley*, 2000 WL 370525, at *4. Furthermore, the defendants' willful decision to sell lingerie undoubtedly reflects an intent to foster an association with the VICTORIA'S SECRET Mark. *Cf. WSM, Inc. v. Tennessee Sales Co.*, 709 F.2d 1084, 1087 (6th Cir. 1983) (inferring wrongful intent where defendant was aware of plaintiff's mark but, from a wide universe of alternative designs, selected one nearly identical to plaintiff's and placed it on identical goods).

**vi. Consumers Have Noted The Similarity Between The Marks And Are Likely To Associate The Parties**

Finally, as for actual association between the famous and the offending marks, Mr. Moseley admitted that several of his customers have commented on the similarity between the name of the defendants' store and VICTORIA'S SECRET. (Colucci Decl., Ex. 18: V. Moseley Dep. at 58:7-15) Such an association was also noted by an army colonel who notified Victoria's Secret about defendants' use of "Victor's Secret" and the similarity to plaintiff's trademark. (Colucci Decl., Ex. 17: Baker Affidavit at 2-3); *see also Moseley*, 537 U.S. at 423. The Sixth Circuit certainly recognized such an association: "[C]onsumers who hear the name 'Victor's Little Secret' are likely automatically to think of the more famous store and link it to the Moseleys' adult-toy, gag gift, and lingerie shop." *V Secret Catalogue*, 259 F.3d at 477.

**vii. The Sum Of The Factors Favors Plaintiff**

Each of the dilution by blurring factors weighs in favor of Victoria's Secret. There is no genuine issue of material fact that defendant's use of "Victor's Little Secret" is likely to cause dilution by blurring of plaintiff's mark. *See Nikepal*, 2007 WL 2782030, at *8.

**b. Dilution By Tarnishment**

As articulated by the TDRA, "dilution by tarnishment" results where there is an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). "This, then, is a classic instance of dilution by tarnishing (associating the Victoria's Secret name with sex toys and lewd coffee mugs) . . . ." *V Secret Catalogue*, 259 F.3d at 477.

Dilution by tarnishment can be found where a plaintiff's trademark is "portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product," *Diane Von Furstenberg Studio v. Snyder*, No. 1:06-CV-1356 (JCC), 2007 U.S. Dist. LEXIS 66633, at *10 (E.D. Va. Sept. 10, 2007) (*quoting Deere & Co. v. MTD Prods.*, 41 F.3d 39, 43 (2d Cir. 1994)), or where a famous mark is connected with "obscenity, unwholesome wares, or sexual or illegal activity." *Big Ten Conference, Inc. v. Big Ten Worldwide Concert and Sport Club at Town Center, L.L.C.*, No. 96-CV-70617-DT, 2000 U.S. Dist. LEXIS 22328, at *35 (E.D. Mich. Oct. 10, 2000) (citation omitted). *See also PepsiCo, Inc.*, 84 U.S.P.Q.2d at 1044-45 (holding that defendant's marketing and sale of safes superficially indistinguishable from plaintiff's soda cans was likely to dilute and tarnish PepsiCo's marks because the safes were of the sort "commonly associated with the concealment of illicit narcotics").

Here, this whole case arose when an army colonel notified Victoria's Secret about an advertisement for "Victor's Secret" adult retail establishment because he perceived it as an

effort to take advantage of plaintiff's respected trademark to promote "unwholesome, tawdry merchandise." (Colucci Decl., Ex. 17: Baker Affidavit at 2-3); *see also Moseley*, 537 U.S. at 423.

Courts have held that association of a mark with "unsavory goods, persons or services" constitutes tarnishment. *Balducci Publ'ns*, 28 F.3d at 777 (citations omitted); *see also Anheuser-Busch, Inc. v. Andy's Sportswear, Inc.*, 40 U.S.P.Q.2d 1542 (N.D. Cal. 1996) (use of the logo BUTTWISER on t-shirts resembling BUDWEISER beer advertising); *Hasbro, Inc. v. Internet Entertainment Group, Ltd.*, 40 U.S.P.Q.2d 1479 (W.D. Wash. 1996) (use of the name CANDYLAND to identify a sexually explicit Internet site); *Coca-Cola Co. v. Gemini Rising, Inc.*, 346 F. Supp. 1183 (E.D.N.Y. 1972) (use of the phrase ENJOY COCAINE on a poster in characteristic COCA-COLA script and colors).

The Moseleys' business, which comprises retail store services promoting and selling adult videos, sex toys, and the like (Colucci Decl., ¶ 21), clearly is an unsavory connection for Victoria's Secret, which has been associated with quality women's lingerie since its inception. (Kriss Decl., ¶ 8); *see also Victoria's Secret Stores v. Artco Equipment Co., Inc.*, 194 F. Supp. 2d at 729 (S.D. Ohio 2002) (affirming magistrate judge's report and recommendation that defendant's online retail business, which promoted and sold sex toys and other adult-oriented merchandise, resulted in dilution by tarnishment of the VICTORIA'S SECRET Mark). The association arising between plaintiff and defendants, due to the similarity of "Victor's Little Secret" and the VICTORIA'S SECRET Mark, harms plaintiff's image as a well-respected retailer of high-quality women's lingerie. Plaintiff has carefully developed and maintained an image that is sexy and playful. (Kriss Decl. ¶ 8). The defendants' advertising, promotion and sale of "intimate lingerie" alongside sexually-related novelties and toys, on the

other hand, *see* Point III.B., *supra*, at 10-12, tarnish the VICTORIA'S SECRET Mark due to the close association arising from the similarities between the parties' marks. Regardless of whether consumers mistakenly believe the "adult" goods offered at defendants' store come from plaintiff, it is the association due to the similarity of the marks that renders defendants' acts likely to cause dilution by tarnishment. This constitutes harm to the reputation of Victoria's Secret by associating it in consumers' minds with a class of sexually explicit goods that plaintiff does not sell and that is at odds with and offensive to the sexy and playful image that Victoria's Secret has cultivated as the nation's premier retailer of women's intimate apparel. (Kriss Decl., ¶ 8)

Therefore, defendants' use of both "Victor's Secret" and "Victor's Little Secret" in connection with the sale of sexually-related paraphernalia evokes an association with the famous and distinctive VICTORIA'S SECRET Mark that tarnishes its reputation. Accordingly, the Court should maintain the injunction it granted on February 9, 2000.

## V. CONCLUSION

Because the TDRA applies to this case, and because the VICTORIA'S SECRET Mark is clearly famous and distinctive, and was so long before defendants' use of their marks "Victor's Secret" and "Victor's Little Secret," which are likely to cause dilution of plaintiff's mark by both blurring and tarnishment, Victoria's Secret respectfully requests that the Court grant its motion for summary judgment and maintain and make final the injunction enjoining defendants from using the designations "Victor's Secret" or "Victor's Little Secret" or any mark similar thereto.

Dated: New York, New York
December 6, 2007

Respectfully submitted,

**COLUCCI & UMANS**

By: s/ Frank J. Colucci
Frank J. Colucci (FC-8441)
218 East 50th Street
New York, New York 10022
Telephone: (212) 935-5700
Facsimile: (212) 935-5728
Email: email@colucci-umans.com

Attorneys for Plaintiffs

Of Counsel:

Reford H. Coleman
COLEMAN LOCHMILLER & BOND
2907 Ring Road
P.O. Box 1177
Elizabethtown, Kentucky 42702-1177