**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CASE NUMBER 3:98CV-395-S**

V SECRET CATALOGUE, ET AL PLAINTIFFS

**VS.** **Filed Electronically**

VICTOR MOSELEY, ET AL DEFENDANTS

---

**DEFENDANT'S RESPONSE TO CROSS-MOTION FOR SUMMARY JUDGMENT TO VACATE INJUNCTION**

---

Come the Defendants, Victor and Cathy Moseley d/b/a Victor's Little Secret, by and through counsel, and submit the following Memorandum of Law in Response to Plaintiffs' Cross-Motion for Summary Judgment.

**STATEMENT OF FACTS**

Defendants incorporate herein the statement of facts and procedural posture recited in their Memorandum of Law in Support of Motion for Summary Judgment. However, in light of Plaintiffs' arguments, the following procedural facts are also relevant.

When this case was before this Court at the trial level, Plaintiffs filed mandatory disclosures in accordance with Fed.R.Civ.P. 26 on September 4, 1998. Plaintiffs provided the name and contact information for every person likely to have discoverable information: Mr. James McGinty, Vice President and Comptroller; Ms. Jill Beraud, Vice President of Marketing; and Mr. Timothy Lyons, Vice President of Taxes. (Ex. 1: Pl.'s Resp. to Mandatory Disclosures, Attachment A.) Each of these witnesses was deposed during the discovery phase of litigation. On December 8, 1998, this Court entered its final scheduling order, by stipulation of the parties, which extended all non-expert discovery to January 21, 1999 and expert discovery to April 9, 1999. (Ex. 2.)

After both parties submitted cross-motions for summary judgment at the trial level, this Court entered an order on February 11, 2000 granting summary judgment to Plaintiffs on the trademark dilution claim pursuant to the FTDA. In its Memorandum Opinion, this court set forth its findings and conclusions with regard to the dilution claim and found that "Victor's Little Secret" was sufficiently, and substantially, similar to "Victoria's Secret" to cause dilution. However, this court grounded its holding in its express finding that "Defendants' mark dilutes Plaintiffs' mark because of its tarnishing effect upon the Victoria's Secret mark." (Ex. 3: Mem. Op. at 9 (emphasis added).) Specifically, the Court cited to Anheuser-Busch v. Balducci Publications, 28 F.3d 769, 777 (8th Cir. 1994) for the proposition that courts frequently enjoin "the tarnishment of a mark through association with unsavory goods, persons, or services." After describing the risqué, and possibly unsavory, character of Defendants' goods, this Court concluded that the use of "Victor's Little Secret" diluted Plaintiffs' mark and enjoined its use. (Ex. 3: Mem. Op. at 9.)

Only Defendants appealed this Court's order granting summary judgment. Thus, the only issues properly before the Court of Appeals and the Supreme Court, and the only issue addressed by those tribunals, was whether the entry of summary judgment against Defendants on the FTDA dilution claim was proper. After the Sixth Circuit Court of Appeals affirmed the decision, the Moseleys appealed to the Supreme Court, which reversed the Court of Appeals, holding that actual dilution was a required element of the FTDA and that Victoria's Secret had adduced "a complete absence of evidence" on this mandatory requirement. Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 433-34 (2003). The Court found that there was insufficient evidence to support the summary judgment and, thus, the injunction. See Id. at 434.

Both the Supreme Court in its Moseley opinion interpreting the FTDA and the TDRA in its statutory definitions of dilution by blurring and dilution by tarnishment require that the alleged diluting use demonstrate an impact on the famous mark. In the Moseley decision the Supreme Court has ruled as a matter of law that there was a "complete absence of evidence" that Defendant had any impact on the famous VICTORIA'S SECRET'S mark. Both the FTDA and the TDRA require evidence of an impact on the famous mark of a petitioner for injunction and the Supreme Court in Moseley has concluded that there exists no genuine issue of material fact to support any impact on the VICTORIA'S SECRET mark.

By its opinion dated March 4, 2003, the Supreme Court reversed the summary judgment and remanded the case to the Sixth Circuit with an order for further proceedings consistent with the opinion. Id. The judgment of the Supreme Court, ordering costs to be paid to Plaintiffs, was entered on April 3, 2003 and received by the Court of Appeals on April 7, 2003. Two days later, on April 9, 2003, Plaintiffs filed a motion to vacate the injunction with the Court of Appeals and a Response was filed by Defendants on April 25, 2003. The Court of Appeals took no action for four years; on July 26, 2007 the court remanded the case to this court for further proceedings.

## ARGUMENT

### The TDRA does not apply to this case and, should the court conclude otherwise, Plaintiffs failed to prove their dilution claim that Defendants' use of "Victor's Little Secret" is likely to cause dilution by tarnishment.

**A The TDRA does not apply to this case.**

Contrary to Plaintiffs' assertions, the TDRA does not apply to this case, because 1) the language of the statute does not reflect a clear intent of retroactivity, 2) the law of the case doctrine and mandate rule reject its application, and 3) equity demands that this court refrain from applying the TDRA and, instead vacate the injunction as mandated by the Supreme Court.

**1. The language of the TDRA does not reflect a clear intent to be applied retroactively.**

Though Plaintiffs readily admit the TDRA does not express Congressional intent for it to apply retroactively, (Pl.'s Mem. Supp. Summ. J. at 15-16), they cite Malletier v. Dooney & Bourke, Inc., 500 F. Supp.2d 276, 283 (S.D.N.Y. 2007) for the proposition that since the TDRA restricts actions for monetary damages to those where the offending mark was first used in commerce after October 6, 2006, the absence of a similar date restriction in the injunctive relief provision reflects an implied Congressional intent that the statute be applied retroactively.1 Though Plaintiff's describe the holding of Dooney & Burke accurately, the district court's analysis in that case disregards well-established Supreme Court precedent on the retroactivity of statutes.

In a thoroughly researched opinion, Justice Scalia explained in Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 840 (1990) (concurring), that absent a specific indication to the contrary, the operation of nonpenal legislation is prospective only. The Court subsequently held that for a statute to apply to acts before the effective date, the Congressional intent must be clear. Landgraf vs. USI Film Prods. 511 U.S. 244, 286 (1994). The holding of Dooney & Burke is contrary to Supreme Court precedent, and is not binding precedent upon this Court (as it is not a Sixth Circuit decision). Indeed, Sixth Circuit precedent commands a result

[1] Each case cited by Plaintiffs in support of retroactive application of the TDRA is inapposite, because they involved application of the TDRA while a case was pending appeal. *See, e.g., Louis Vuitton Malletier S.A., v. Haute Diggity Dog, LLC, 464 F.Supp.2d 495 (E.D.Va. 2006)* (a district court determined at the trial court level that the statute, at least for purposes of injunctive relief, would apply retroactively); see also *Verilux, Inc. vs. Hahn, 2007 WL 2318819, at *11 (D. Conn. Aug. 10, 2007*; *Dan-Foan A/S vs. Brand Named Beds, LLC, 500 F. Supp. 2d 296, 306 n.87 (S.D.N.Y. 2007*; *Malletier vs. Dooney & Bourke, Inc., 500 F. Supp. 2d 276, 283 n.31 (S.D.N.Y. 2007*; and *Starbucks Corp. vs. Wolfe's Borough Coffee, Inc., 477 F.3d 765, 765-66 (2d Cir. 2007).* However, the rule governing retroactive application of statutes provides that "if, subsequent to the judgment, and **before** the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed...." *United States v. Schooner Peggy, 1 Cranch 103, 2 L.Ed. 49 (1801) (emphasis added).* Retroactive application of a statute is usually only applied where the change in law occurs between the decision of a lower court and the decision of the appellate tribunal. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 845-846 (1990) (Scalia, J. concurring).*

precisely the opposite of that which Plaintiffs' seek here, and in full accord with the Supreme Court precedent. See Parker-Hannifin vs. Commissioner of Internal Revenue, 139 F.2d 1090, 1095 (6th Cir. 1998) (holding a statute's plain language must ordinarily be regarded as conclusive, unless there exists a clearly expressed legislative intention to the contrary).

Here, the TDRA does not express a clear intent that the injunctive relief provision, or any part of the statute for that matter, should be applied retroactively. Section 1125 reads:

> (c) Dilution by blurring; dilution by tarnishment
>
> (1) Injunctive relief
>
> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

(Emphasis added.) Plaintiffs argue that retroactivity should be implied because, unlike the monetary damages portion of the statute, the injunctive relief provision does not contain a date restriction. That argument amounts to little more than wishful thinking, because Congress did not express a clear intent for the statute to apply to those who commenced use of mark before the enactment date. As Defendants acknowledge, the legislative history is silent on the issue of retroactivity, so the plain meaning of the cause of action must control here. The present-tense operative language of the cause of action itself—"commences use"—plainly demonstrates that Congress had no clear intention to make the statute retroactive to pending cases.2

---

[2] Though Plaintiffs cite to a few articles in support of their argument that injunctive relief can be granted retroactively under the TDRA, those are hardly the last word on the subject. A recent article published in *The Trademark Reporter* confirms Plaintiff's admission that the legislative history did not indicate intention by Congress to apply the TDRA in the manner advocated in their cross-motion. *See Scot A. Duvall, The Trademark Dilution Revision Act of 2006; Balanced Protection for Famous Brands, 97TMR 1252, 1275 (2007)* ("The legislative history, however, contains no express acknowledgment of congressional intent on this issue [of retroactivity]"). Moreover, the article suggests that the statutory text counsels against retroactive application of the TDRA in circumstances

Ironically, Plaintiffs' arguments harken back to the same statutory construction arguments that failed them in the Supreme Court. This case journeyed to the Supreme Court on the issue of statutory interpretation of the operative language "causes dilution" in the former dilution cause of action. On remand, Plaintiffs are now confronted with similar operative language in the TDRA: "commences use". Not unlike their unsuccessful argument in the Supreme Court, Plaintiffs would have this Court infer meaning from a selectively-chosen, isolated portion of a statute to contradict the clear standard expressed in the cause of action itself. Here, the plain language of the TDRA cause of action does not reflect a clear intent for the injunctive relief to apply retroactively, so it must be considered conclusive under the Sixth Circuit's holding in Parker-Hannifin (holding a statute's plain language must ordinarily be regarded as conclusive, unless there exists a clearly expressed legislative intention to the contrary). This Court need look no further than a key admission by Plaintiffs—that what would be necessary to find the TDRA retroactive to this case is wholly absent here: "[t]he applicability of [the TDRA] to actions commenced prior to October 6, 2006 in which a plaintiff seeks injunctive relief, rather than damages, was not expressly addressed by the 2006 legislation." (Pl.'s Mem. Supp. Summ. J. at 15-16.) (Emphasis added)

**2. The law of the case doctrine and the mandate rule reject application of the TDRA to this case on remand.**

In yet another stunning admission in Plaintiffs' Cross-Motion for Summary Judgment, Plaintiffs expressly acknowledge and argue that the law of the case doctrine applies to this case.

---

such as those presented by this case. *See id.* ("[A] court could rely on this text ["commences use"] to determine that the TDRA cannot apply at all to cases where the offending use predated the statute's enactment, and that the FTDA, as interpreted by *Moseley*, would be the prevailing law in such cases"). As a logical result, "a victim of willful dilution that began prior to October 6, 2006 could make the argument that it is entitled to seek damages under the FTDA standard then in effect, if the plaintiff satisfies the elements of the FTDA (including, as required by *Moseley*, a showing of actual dilution)." *Id.* at 1275-76. Plaintiff's voluntary dismissal of its damages claims is an effective admission that the Moseleys did not engage in willful conduct, but that does not make the FTDA any less applicable to this case.

> "Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." Hanover Ins. Co. vs. American Eng'g Co., 105 F3d 306, 312 (6th Cir. 1997) (quoting Coal Resources, Inc. vs. Gulf & Western Indus., Inc., 865 F2d 761, 766 (6th Dir. 1989)). Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," Arizona vs. California, 460 U.S. 605, 618 (1983); United States vs. Rayborn, 495 F.3d 328, 337 (6th Cir. 2007), and the court is "precluded from reexamining an issue previously decided by the same court, or a higher court in the same case." Bowling vs. Pfizer, Inc., 132 F3d 1147, 1150 (6th Cir. 1998). Further, this doctrine precludes a party from challenging a decision from an earlier stage of the litigation that could have been challenged in a prior appeal, but where the party failed to do so. United States vs. Adesida, 129 F3d 846, 850 (6th Cir. 1997).

See Plaintiffs' Memorandum of Law at 20, n. 6. Though Plaintiffs spend an inordinate amount of space in their cross-motion arguing that the VICTORIA'S SECRET mark is distinctive and famous, their extensive discussion (and exhaustive references to evidence of record – and newly-disclosed evidence) is irrelevant. Defendants agree that the law of the case doctrine precludes a party "…from now challenging this conclusion or altering their position." . Plaintiffs' Memorandum of Law, at 20. As such, both parties hereto are equally bound not only by their characterization of the VICTORIA'S SECRET mark as "famous" and "distinctive", but also by the United States Supreme Court's holding that Victoria's Secret had adduced "a complete absence of evidence" of dilution. Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 433-34 (2003). The Court found that there was insufficient evidence to support the summary judgment and, thus, the injunction. See Id. at 434. Plaintiffs cannot have it both ways. This finding of fact and conclusion of law by the Supreme Court is inescapably the law of this case.

From the filing of the complaint, through extensive discovery, summary judgment, and review by the Sixth Circuit Court of Appeals and United States Supreme Court, the law of the case for the dilution claim has been the FTDA and its "actual dilution" standard. Now, on remand, despite having fully litigated this case, Plaintiffs (despite having acknowledged the

application of the law of the case doctrine) brazenly ask this Court to reject the law that has governed this case for nearly a decade and apply a new standard after the Supreme Court has already issued and opinion and judgment in Defendants' favor. This is but another example of Plaintiffs' invitation to this Court to exercise selective jurisprudence (as with their statutory construction argument, discussed above).

Under the law of the case doctrine, lower courts are bound by a prior appellate decision of the same case. Wheeler v. City of Pleasant Grove, 746 F.2d 1437, 1440 (11th Cir.1984). The doctrine promotes finality, assures the obedience of the district court to appellate decisions, and avoids waste of judicial resources. See id. at 1440. The companion rule requires lower courts to follow the commands of a superior court and advises that on remand of a case for further proceedings the trial court must "proceed in accordance with the mandate and the law of the case as established on appeal." United States v. Kikumura, 947 F.2d 72, 76 (3rd Cir. 1991) (internal citations omitted). The Sixth Circuit addressed these issues in Bissell Carpet-Sweeper Co. v. Goshen Sweeper Co., 72 F. 545, 548-549 (6th Cir.. 1896), with the following reasoning:

> When a case has once been decided by [the appellate] court on appeal, and remanded to the [trial] court, whatever was before [the appellate] court, and disposed of by its decree, is considered as finally settled. The [trial] court is bound by the decree as the law of the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution, or give any other or further relief, or review it, even for apparent error, upon any matter decided on appeal, or intermeddle with it, further than to settle so much as has been remanded.

Id. (internal citations omitted). Bissell is longstanding, controlling precedent. The TDRA is not expressly retroactive, as Plaintiffs admit. Accordingly, this court should honor the mandate rule and execute the Supreme Court's judgment by vacating the injunction and dismissing Plaintiffs' dilution claims.

**3. Equity demands that the TDRA should not be applied in this case.**

The TDRA, by its own language, advises that equity concerns should be weighed in determining the statute's applicability. See TDRA, 15 U.S.C. § 1125(c) (granting of injunctive relief is "subject to the principles of equity"). Here, equity demands that this case, as it has from its inception, be governed by the FTDA and that Defendants be entitled to relief as contained in the judgment of the United States Supreme Court.

In this case, the Supreme Court entered its judgment on April 3, 2003 and the Court of Appeals received it on April 7, 2003. Upon entry by the Supreme Court, the judgment became final and stood in the place of the judgment of this Court and the Sixth Circuit Court of Appeals as if Supreme Court's judgment had been entered by the trial court. Accord Inman v. Inman, 840 S.W.2d 927, 932 (Tenn. App. 1992). Inexplicably the Court of Appeals did not execute the Supreme Court's judgment, or otherwise address this case, for four years, but merely held it in a state of informal abeyance from which neither party could occasion its removal.

Equity demands that a party to a lawsuit, who expends great time and expenses in prosecuting an appeal from an adverse judgment and is successful in that regard, reap the benefits of his endeavor. In this case, Defendants secured a judgment from the Supreme Court of the United States and thereafter requested that the lower courts adhere to the well-established policy of effectuating a mandate from the highest court in the land. To apply the TDRA to these facts after Defendants have secured a reversal of the summary judgment by the Supreme Court with a ruling that there was no evidence to support it would run contrary to the "principles of equity" as stated in the TDRA, as well as obliterate the common law's preference for finality of judgment. The mere fact that the Sixth Circuit failed to complete the administrative task of effectuating the Supreme Court's orders cannot work to invalidate the Supreme Court's opinion and judgment.

**B Defendants did not violate the TDRA, even in the event of a finding that the "likelihood of dilution" standard applies.**

Should this Court conclude that the TDRA applies (which is expressly denied and objected to by these Defendants), Plaintiffs fail to establish their claim under the TDRA's new "likely to cause dilution" standard. As an initial matter, Plaintiffs argue that continuation of the injunction under the TDRA is warranted because the less-burdensome threshold "likely dilution" is employed as opposed to having to show actual dilution. This argument cannot be reconciled with the Supreme Court's opinion. The only issue that was appealed in this case was whether Plaintiffs proved their dilution claim under the FTDA. The Supreme Court expressly ruled that there was a "complete absence of evidence" of dilution of the Victoria's Secret mark. Moseley, 537 U.S. at 434. The Supreme Court concluded that there was insufficient evidence to support the summary judgment and, thus, the injunction. Id. at 433-34 (2003). While this court found "that Defendants' mark dilutes Plaintiffs' mark because of its tarnishing effect upon Victoria's Secret's mark," this finding was ultimately reversed on appeal. Accordingly, the fact that the TDRA employs a less rigorous standard than did the FTDA is of no consequence because, as the Supreme Court noted, Plaintiffs did not introduce any evidence probative on the issue of dilution, and moreover, proceeded in this case in the District Court under the assumption that the applicable standard was "likelihood of dilution". 3 Furthermore, as above-referenced, Plaintiffs have admitted that the law of the case doctrine precludes a party "…from now challenging this

[3] Notably, Plaintiff's ultimately changed their approach and argued in the Supreme Court that the evidence of record actually met the "actual dilution" standard (See Brief for Respondents at 39), but that does not change the result here. The evidence of record adduced by Plaintiffs in the District Court was premised on the applicable standard being "likelihood of dilution," a standard that Plaintiffs labored under in the District Court, and advocated in the Sixth Circuit as the applicable standard. The Sixth Circuit upheld the "likelihood of dilution" standard and affirmed the injunction based on the evidence of record. The Supreme Court agreed with Plaintiffs that evidence of actual economic injury was not a requirement of actual dilution, yet held that the evidence adduced failed to be probative on the issue of dilution generally, and demonstrated no adverse impact on the VICTORIA'S SECRET mark. This finding has equal relevance to the new "likely to cause dilution" standard that Plaintiffs seek to apply retroactively here. If the evidence of the closed record was not probative on the issue of dilution at all, it matters not whether the applicable standard is "actual" dilution or "likely" dilution. Simply put, a "complete absence of evidence" does not and cannot equate to a "likelihood of dilution."

conclusion or altering their position." Plaintiffs' Memorandum of Law, page 20. As such, both parties hereto are bound by the United States Supreme Court's holding that Victoria's Secret had adduced "a complete absence of evidence" of dilution. Moseley, at pg. 433-34. The Court found that there was insufficient evidence to support the summary judgment and, thus, the injunction. See id. at 434. Plaintiffs cannot have it both ways, and this finding of fact and conclusion of law of the Supreme Court is the law of this case.

Plaintiffs argue that Defendants' use of "Victor's Little Secret" dilutes by both blurring and tarnishing the Victoria's Secret mark. Should this court apply the TDRA to this case, the review should be limited to whether Defendants' mark tarnishes Plaintiffs' mark. This Court's opinion, and thus the basis for the injunction, was grounded in an express finding that Defendants tarnished Plaintiffs' mark. The only issue appealed from the District Court was the issue of tarnishment. In its decision, the Sixth Circuit considered sua sponte the issue of blurring, which was then submitted to the Supreme Court along with tarnishment. The Supreme Court ultimately reversed both findings based on a "complete absence of evidence" of the type of mental association required to support a dilution claim for non-identical marks. In any event, the fact that the injunction is grounded only in a finding of tarnishment means that the issue of blurring is not a proper issue for consideration on remand. Accordingly, if the "likelihood of dilution" standard applies retroactively, this Court only has jurisdiction to address dilution by tarnishment, because under the law of the case it was the only basis for the injunction.

If the Court were to consider likelihood of dilution by tarnishment, there remains insufficient evidence to support Plaintiffs' claim. Tarnishment is "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). However, there is no evidence in this case of any

harm to the reputation of the VICTORIA'S SECRET mark, much less the requisite association. The army officer who reported the use of Defendants' mark was offended by the ad, but the use of the mark did not change his conception of the VICTORIA'S SECRET mark. Moseley v. V Secret Catalogue, Inc., 537 U.S. at 434. In fact, the officer's affidavit noted that members of his family frequent Victoria's Secret. He did not express an opinion that the "Victor's Secret" mark lessened his esteem of Victoria's Secret or their products (indeed, his approbation was reserved for the Moseleys directly). At the close of discovery in 1999, Victoria's Secret had identified 3 lay witnesses who were deposed in the case, and disclosed no expert witnesses in support of their case, other than an affidavit from a marketing expert, from which the Supreme Court concluded that "neither he, nor any other witness, expressed any opinion concerning the impact, if any, of petitioners' use of the name 'Victor's Little Secret' on that value [of the VICTORIA'S SECRET mark]." Moseley v. V Secret Catalogue, Inc., 537 U.S. at 424-25.

After discovery the parties filed cross-motions for summary judgment. The record contained uncontradicted affidavits and deposition testimony describing the vast size of respondent's business, the value of the VICTORIA'S SECRET name, and descriptions of the items sold in the respective parties' stores. Respondents sell a "complete line of lingerie" and related items, each of which bears a VICTORIA'S SECRET label or tag. Petitioners sell a wide variety of items, including adult videos, "adult novelties, " and lingerie. Victor Moseley stated in an affidavit that women's lingerie represented only five percent of their sales. Id., at 131. In support of their motion for summary judgment, respondents submitted an affidavit by an expert in marketing who explained "the enormous value" of respondents' mark. Id., at 195-205. Neither he, nor any other witness, expressed any opinion concerning the impact, if any, of petitioners' use of the name "Victor's Little Secret" on the value. Moseley, at pp 424-25.

In short, the evidence failed to meet the FTDA standard, and it equally fails to meet the TDRA standard – not because any legal standard has changed, but because the "evidence" failed to substantiate claims for "dilution" both under the FTDA and TDRA (if it is deemed to apply retroactively).

Likewise, if the court were to consider likelihood of dilution by tarnishment on the closed record, Plaintiffs would not be prejudiced on remand. In filing their original Motion for Summary Judgment on the original Complaint, they represented to the Court that they had collected all of the evidence they deemed necessary in support of their arguments. Plaintiffs tried this case as a likelihood of dilution case from the very beginning and put forth whatever evidence of likelihood of dilution they could muster in support of their original Motion for Summary Judgment. Plaintiffs premised their entire case on the assumption that this lesser standard applied, not the actual dilution standard that the Supreme Court in Moseley ultimately held to be the governing standard. As such, the Plaintiff has not been disadvantaged or prejudiced in any way in its ability to produce probative and relevant evidence in support of its arguments for the injunction. Therefore, any consideration of TDRA claims on remand would necessarily be in light of the closed record—and is discussed above, such claims would fail. As discussed below, Plaintiffs have sought to circumvent such a result in an impermissible (if not desperate) manner.

**C The Newly- Minted Affidavits of Attorney Colucci and Mr. Kriss Are By Persons Not Previously Disclosed As Witnesses And, In The Case Of Attorney Colucci, Barred By His Role As Counsel For Plaintiffs.**

Defendants object to the affidavits/declarations attached to Plaintiffs Cross-Motion for Summary Judgment. Discovery ended on April 9, 1999, over eight years ago. Furthermore, at the October 22, 2007 status conference in this case, no request was made to re-open discovery. The declarations and other exhibits referenced in Plaintiffs' Memorandum of Law are all after-

the-fact disclosures, and are not appropriate to be considered by this Court pursuant to the Federal Rules of Civil Procedure. 4

During discovery when asked to disclose witnesses that would be testifying at trial, Plaintiffs named James McGinty, Vice President and Comptroller, Jill Beraurd, Vice President of Marketing, and Timothy Lyons, Vice President of Taxes. Nowhere in discovery was Scott A. Kriss identified as a potential witness. By Mr. Kriss' own admission, Mr. Kriss was not even employed by Plaintiffs until 2005. The testimony sought to be introduced through his Declaration is after the close of discovery and inadmissible given the Court's Pretrial Deadlines regarding discovery and the fact none of this has been produced or disclosed to Defendants prior to its introduction in Plaintiffs' Cross Motion for Summary Judgment.

Likewise, nowhere in discovery was Frank Colucci identified as a potential witness (not surprisingly, given that Mr. Colucci is counsel of record for Plaintiffs in this matter). The information referenced in Mr. Colucci's Declaration simply restates evidence that is already of record that was previously litigated before this Court and appealed through the Sixth Circuit Court of Appeals and to the Supreme Court. His Affidavit/Declaration is both inappropriate and irrelevant as the information contained is already of record. Furthermore, the Affidavit/Declaration is inadmissible due to relevance and due to the fact that it is inaccurate and

---

[4] Fed. R. Civ. P. 56(f) states (emphasis added):

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

This rule allows parties to have additional time for discovery in order to more adequately refute a motion for summary judgment. The rule "protects parties that cannot, for valid reasons, sufficiently oppose a motion for summary judgment." *Mallory v. Noble Correctional Institute,* 45 Fed. Appx. 463,469 (6th Cir.2002). This, insofar as Plaintiffs motion for summary judgment is concerned (which is essential for avoiding an order vacating the injunction). Rule 56 (f) does not contemplate permitting the Plaintiffs any further discovery in this case. Simply put, their discovery period is closed and Plaintiffs' back-door tactics aimed at introducing their newly-minted evidence are impermissible.

misrepresents the facts of the case it purports to declare to the Court. The below highlighted sections are cited from the Declaration of Frank Colucci and following each are referenced commentary on the inaccuracy and invalidity of same.

**2. This whole case arose when an army colonel notified Victoria's Secret about an advertisement for "Victor's Secret" adult retail establishment because of the similarity of the names "Victor's Secret" and "Victoria's Secret" and because he perceived defendants' use of "Victor's Secret" for their store name as an effort to take advantage of plaintiff's respected trademark to promote "unwholesome, tawdry merchandise." Exhibit 17 is a true and accurate copy of the April 19, 1999 Affidavit of Colonel John E. Baker that Victoria's Secret submitted with its initial motion for summary judgment.**

CRITICISM: The record speaks for itself with regard to this allegation and moreover, the relevance of Colonel Baker's statements had already been addressed by the Supreme Court in the Moseley decision at page 434.

**8. Victor Moseley testified that although he had been in retail for 15 to 17 years, he was only vaguely aware of Victoria's Secret. (Ex. 18: V. Moseley Dep. At 54:21-55:24).**

CRITICISM: This declaration misrepresents the testimony of Victor Moseley who testified, at his deposition, that he had never been in the store or seen a catalogue or commercial. (See attached as Ex. 4 Moseley deposition, pages 54-55).

**13. Exhibit 22 is a true and accurate copy of a Women's Wear Daily article dated August 26, 1998, discussing a 1998 survey which rated VICTORIA'S SECRET as the ninth most famous brand in the United States – the only retailer to be among the top ten.**

CRITICISM: Mr. Colucci cannot aver to the accuracy of this survey or introduce it into evidence otherwise. Even so, it is irrelevant because Defendants did not contest that the VICTORIA'S SECRET mark is "distinctive and famous" under the FTDA.

**17. In subsequent telephone conversations between Mr. Moseley and plaintiffs' counsel, Mr. Moseley discussed the possibility of changing the name of his store to "Victor's Precious Secrets." Despite this discussion, and without notifying Victoria's Secret's counsel, the Moseleys changed the name of their store to "Victor's Little Secret," Exhibit 24 is a true and accurate copy of an advertisement for "Victor's Little Secret," which name change occurred subsequent to defendants' receipt of plaintiffs' February 25, 1998 cease and desist letter.**

CRITICISM: This testimony Mr. Colucci, apart from being prohibited, alludes to no basis as to how he knows this to be true.

**18. Our office thereafter requested that Mr. Moseley provide us with copies of the advertising, promotional materials and signage used by the Moseleys as well as photographs of the store, but the Moseleys flatly refused to provide any further**

**information. After realizing that its attempts to amicably resolve this matter were futile, Victoria's Secret commenced this civil action on June 26, 1998.**

CRITICISM: Once again, Mr. Colucci's self-serving testimony has no basis or foundation whatsoever. This sort of personal testimony by an attorney of record is inappropriate under the Rules of Procedure. See Declaration of Frank Colucci, attached hereto as Exh. 5 for the highlighted portions above-referenced.

Therefore, the introduction of subsequent, non-disclosed evidence through Declaration/Affidavit of Mr. Colucci and Mr. Kriss are inappropriate, untimely since Plaintiffs had every opportunity to produce this in the original record, and inadmissible as irrelevant due to the law of the case doctrine and mandate rule. Further, the Declaration is redundant and duplicative of matters already of record that do not need to be rehashed for this Court (much less with commentary and testimony by Mr. Colucci). Even worse, many of the statements in the Declarations misrepresent the record upon which they are based. For all of these reasons, the Declaration of Mr. Colucci, along with that of Mr. Kriss, should be excluded from consideration by this Court. The newly-minted "evidence" Plaintiffs seek to enter into the record is indeed thin and lacking in credibility, especially given the affiants were not subject to cross-examination. In any event, these statements are no more a basis for maintaining the injunction than the evidence originally relied upon, which the Supreme Court found inadequate.

## CONCLUSION

As such, there is no genuine issue of material fact to support Plaintiff's claim even under the likelihood of dilution standard found in the new TDRA and both under the old standard and the new standard Plaintiff's injunction against Defendant cannot be supported as a matter of law. There is absolutely no evidence of any impact upon the VICTORIA'S SECRET mark that would sustain this injunction. Furthermore, this Defendant, as above-referenced, objects to the Declarations and Exhibits of Frank Colucci and Scott Kriss as non-admissible, and request that same not be considered by this Court in its adjudication of these Cross-Motions. Finally,

Defendant objects to Plaintiff's request for oral arguments on these Motions as unnecessary, and not likely to add any insight into the issues to be determined by this honorable Court. Wherefore, the well-established law of the case doctrine and mandate rule requires that the injunction proscribing Defendants' use of the marks "Victor's Secret" or "Victor's Little Secret" should be vacated.

Respectfully submitted,

**CLARK & WARD, PLLC**
333 West Vine Street, Suite 1100
Lexington, KY 40507
Telephone: (859) 422-6000
Facsimile: (859) 422-6001

BY: s/ Licha H. Farah, Jr.
Licha H. Farah, Jr.
Brian H. Stephenson

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served upon the following:

Frank J. Colucci
Courtney Wilson Monahon
G. Mathew Lombard
Colucci & Umans
101 East 52nd Street
New York, NY 10022

Richard Paul Schiller
SCHILLER, OSBOURN & BARNES, PLLC
401 West Main Street
1600 One Riverfront Plaza
Louisville, Kentucky 40202

Redford H. Coleman
COLEMAN LOCHMILLER & BOND
2907 Ring Road
P.O. Box 1177
Elizabethtown, Kentucky 42702-1177

John E. Spainhour
GIVHAN & SPAINHOUR, PSC
200 S. Buckman Street, Suite 1
Shepherdsville, Kentucky 40165

All on this the 4th day of January, 2008.

/s/ Licha H. Farah, Jr.
Licha H. Farah, Jr.
Brian H. Stephenson

G:\CASES\CL\LCL183\pleadings\071217.ResponseMSJ2.doc