**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

V SECRET CATALOGUE, INC.,
VICTORIA'S SECRET STORES, INC., and
VICTORIA'S SECRET CATALOGUE, INC.,

Plaintiffs,

vs.

VICTOR MOSELEY and CATHY MOSELEY
d/b/a VICTOR'S LITTLE SECRET,

Defendants.

Case No. 3:98-cv-395 (CRS-DW)

Electronically Filed

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Frank J. Colucci (FC-8441)
COLUCCI & UMANS
218 East 50th Street
New York, New York 10022
Telephone: (212) 935-5700
Facsimile: (212) 935-5728
Email: email@colucci-umans.com

Of Counsel:

Reford H. Coleman
COLEMAN LOCHMILLER & BOND
2907 Ring Road
P.O. Box 1177
Elizabethtown, Kentucky 42702-1177

# TABLE OF CONTENTS


**TABLE OF CONTENTS** .......... i

**TABLE OF AUTHORITIES** .......... ii

**ARGUMENT** .......... 1

**I. THE TDRA AND ITS LIKELIHOOD OF DILUTION STANDARD APPLY TO THE CASE AT BAR** .......... 1

**A. The Language, Structure, and Legislative History of the TDRA Indicate Congress's Unambiguous Intent that the TDRA Applies to Dilution Claims Arising Prior to Its Enactment Insofar as a Plaintiff Seeks Prospective Injunctive Relief** .......... 1

**B. Because Congress Legislatively Vacated the Supreme Court's Opinion in *Moseley v. V Secret Catalogue*, That Decision and the Sixth Circuit's Mandate Are Not Controlling** .......... 7

**II. DEFENDANTS' USE OF "VICTOR'S LITTLE SECRET" IS LIKELY TO DILUTE THE FAMOUS VICTORIA'S SECRET MARK** .......... 9

**A. Plaintiff Established Dilution by both Tarnishment and Blurring Before This Court and the Sixth Circuit Under the FTDA, Which Compels the Conclusion that Plaintiff Has Met the Lower Threshold of Likelihood of Dilution by Tarnishment and Blurring Under the TDRA** .......... 9

**B. Applying the Elements of the TDRA, Plaintiff's VICTORIA'S SECRET Mark Is Likely to Be Diluted by Defendants' Actions** .......... 11

**1. "Victor's Little Secret" Is Likely to Blur the VICTORIA'S SECRET Mark** .......... 11

**2. "Victor's Little Secret" Is Likely to Tarnish the VICTORIA'S SECRET Mark** .......... 12

**C. Because the Colucci and Kriss Declarations Merely Convey Information Already in the Record, They Do Not Constitute Additional Discovery and Are Fully Admissible** .......... 13

**III. CONCLUSION** .......... 14

# TABLE OF AUTHORITIES

## CASES

*Adidas America, Inc. v. Payless Shoesource, Inc.*,
No. CV 01-1655-KI, 2007 U.S. Dist. LEXIS 94192 (D. Ore. Dec. 21, 2007) .................... 2

*Alexander v. Robinson*,
756 F.2d 1153 (5th Cir. 1985) .................................................................................. 4

*Astoria Federal Savings & Loan Ass'n v. Solimino*,
501 U.S. 104 (1991) .................................................................................................. 5

*Autozone, Inc. v. Strick*,
466 F. Supp. 2d 1034 (N.D. Ill. 2006) ...................................................................... 2

*Bissell Carpet-Sweeper Co. v. Goshen Sweeper Co.*,
72 F. 545 (6th Cir. 1896) .......................................................................................... 7

*Bradley v. Richmond School Bd.*,
416 U.S. 696 (1974) .................................................................................................. 4

*Chovan v. E.I. Du Pont De Nemours & Co.*,
217 F. Supp. 808 (E.D. Mich. 1963) .......................................................................... 4

*Dan-Foam A/S v. Brand Named Beds, LLC*,
500 F. Supp. 2d 296 (S.D.N.Y. 2007) ......................................................................... 2

*Dinsmore v. Southern Express Co.*,
183 U.S. 115 (1901) .................................................................................................. 4

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*,
494 U.S. 827 (1990) ............................................................................................. 3, 4

*Keene Corp. v. United States*,
508 U.S. 200 (1993) .................................................................................................. 6

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) .................................................................................................. 3

*Levi Strauss & Co. v. Fox Hollow Apparel Group, LLC*,
No. C-06-3765 SC, 2007 U.S. Dist. LEXIS 31355 (N.D. Cal. Apr. 17, 2007) ................. 10

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
464 F. Supp. 2d 495 (E.D. Va. 2006) ......................................................................... 2

*Malletier v. Dooney & Bourke, Inc.*,
500 F. Supp. 2d 276 (S.D.N.Y. 2007)....................2

*Moseley v. V Secret Catalogue, Inc.*,
537 U.S. 418 (2003)....................7, 8, 10, 13

*Russello v. United States*,
464 U.S. 16 (1983)....................6

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
477 F.3d 765 (2d Cir. 2007)....................2

*Thorpe v. Housing Auth. of Durham*,
393 U.S. 268 (1969)....................3, 4

*United States v. Alabama*,
362 U.S. 602 (1960)....................4

*United States v. Moored*,
38 F.3d 1419 (6th Cir. 1994) ....................10

*United States v. Rayborn*,
495 F.3d 328 (6th Cir. 2007) ....................10

*United States Olympic Comm. v. Toy Truck Lines*,
237 F.3d 1331 (Fed. Cir. 2001)....................5

*Verilux, Inc. v. Hahn*,
No. 3:05cv254 (PCD), 2007 WL 2318819 (D. Conn. Aug. 10, 2007)....................2

*Victoria's Secret Stores v. Artco Equip. Co., Inc.*,
194 F. Supp. 2d 704 (S.D. Ohio 2002) ....................12

*V Secret Catalogue Inc. v. Moseley*,
No. 3:98CV-395-S, 2000 WL 370525 (W.D. Ky. Feb. 9, 2000)....................8, 9

*V Secret Catalogue, Inc. v. Moseley*,
259 F.3d 464 (6th Cir. 2001) ....................5, 8, 9, 10, 12, 13

*Wright v. Morris*,
111 F.3d 414 (6th Cir. 1997) ....................3

## STATUTES

Trademark Dilution Revision Act of 2006,
Pub. L. No. 109-312, 120 Stat. 1730 (2006)
(codified at 15 U.S.C. § 1125(c) (2006)) ........................................................1, 5, 9, 12, 13

## LEGISLATIVE HISTORY

H.R. Rep. No. 104-374 (1995).............................................................................13

*Trademark Dilution Revision Act of 2005: Hearing on H.R. 683 Before the H. Comm. on the Judiciary*, 109th Cong. (2005) ...............................................6

## SECONDARY SOURCES

Scot A. Duvall, *The Trademark Dilution Revision Act of 2006: Balanced Protection for Famous Brands*,
97 Trademark Rep. 1252 (2007)..........................................................................2

Norman J. Singer, *Sutherland Statutes and Statutory Construction*
(6th ed. 2001 rev.)..........................................................................................4, 5

## ARGUMENT

### I. THE TDRA AND ITS LIKELIHOOD OF DILUTION STANDARD APPLY TO THE CASE AT BAR

#### A. The Language, Structure, and Legislative History of the TDRA Indicate Congress's Unambiguous Intent that the TDRA Applies to Dilution Claims Arising Prior to Its Enactment Insofar as a Plaintiff Seeks Prospective Injunctive Relief

Viewing the TDRA as a whole, along with its statutory framework, it is indisputable that the pertinent provision pertaining to injunctive relief applies to the case at bar. The operative language appears in the first sentence of Subsection (c)(5) of the TDRA: "In an action brought under this subsection, the owner of the famous mark shall be entitled to injunctive relief as set forth in section 34." 15 U.S.C. § 1125(c)(5) (2006). There is no restriction or limitation regarding its application. The second sentence of Subsection (c)(5), on the other hand, affords monetary relief to an aggrieved plaintiff only where use of the defendant's mark occurred after the TDRA's effective date of October 6, 2006:

> The owner of the famous mark shall also be entitled to the remedies set forth in sections 35(a) and 36, subject to the discretion of the court and the principles of equity if (A) the mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in commerce by the person against whom the injunction is sought after *the date of enactment* of the Trademark Dilution Revision Act of 2006.

15 U.S.C. § 1125(c)(5) (emphasis added).

This dichotomy between the effective date of the injunction and monetary provisions demonstrates congressional intent that the TDRA applies to all claims for injunctive relief pending upon its enactment. By deliberately limiting the award of

monetary remedies to cases arising after the date of the TDRA's enactment in the second sentence, with no such restriction in the first sentence, Congress signaled its intent that no such limitation should apply in the case of injunctive relief. *Malletier v. Dooney & Bourke, Inc.*, 500 F. Supp. 2d 276, 282 n.31 (S.D.N.Y. 2007) ("Congress's intention that the October 6, 2006 cutoff date apply to monetary relief for dilution, but not to injunctive relief, is also readily apparent from the sentence structure of the TDRA. The first sentence of subsection 1125(c)(5), which provides for injunctive relief, lacks any reference to the explicit date restriction contained in the second sentence, which addresses monetary relief.").

Defendants' characterization of *Dooney & Bourke* as contrary to Supreme Court precedent and non-binding ignores the line of cases that stand on all fours with *Dooney & Bourke* by uniformly holding that the injunctive provision of the TDRA applies to all cases pending as of its effective date. *E.g.*, *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 477 F.3d 765, 765-66 (2d Cir. 2007); *Adidas America, Inc. v. Payless Shoesource, Inc.*, No. CV 01-1655-KI, 2007 U.S. Dist. LEXIS 94192, at *68 (D. Ore. Dec. 21, 2007); *Verilux, Inc. v. Hahn*, No. 3:05cv254 (PCD), 2007 WL 2318819, at *11 (D. Conn. Aug. 10, 2007); *Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 306 n.87 (S.D.N.Y. 2007); *Autozone, Inc. v. Strick*, 466 F. Supp. 2d 1034, 1044 (N.D. Ill. 2006); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 464 F. Supp. 2d 495, 503-04 (E.D. Va. 2006), *aff'd*, 507 F.3d 252 (4th Cir. 2007).[1]

[1] Despite the uniform body of case law to have emerged in the fifteen months since the passage of the TDRA, defendants, puzzlingly, rely on an article authored by Scot A. Duvall, *The Trademark Dilution Revision Act of 2006: Balanced Protection for Famous Brands*, 97 Trademark Rep. 1252 (2007). (Defs.' Mem. at 5) Defendants fail to mention that Mr. Duvall served as their counsel before the Supreme Court in *Moseley*. Moreover, the article merely proposes as an "available" argument the notion that the TDRA does not apply to pending claims for injunctive relief. *Id.* at 1275. Tellingly, in his discussion of this issue, Mr.

These decisions are entirely consistent with, and in many instances rely upon, the principles articulated by the Supreme Court in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), and in its progeny. Those cases establish that new statutes are rightly and equitably applied in pending cases where prospective injunctive relief is sought for ongoing conduct. (*See* Pl.'s Resp. at 4-13) Defendants' argument that "for a statute to apply to acts before the effective date, the Congressional intent must be clear" (Defs.' Resp. at 4) misstates the holding of *Landgraf*, which is that even where Congress has not "expressly prescribed the statute's proper reach," courts may apply the statute to pending cases if it is "the type of provision that should govern cases arising before its enactment," that is, if it would not have impermissible "retroactive effect." *Landgraf*, 511 U.S. at 280. Statutory enactments providing for injunctive relief are *prospective* in nature, not retroactive, and thus do not have an impermissible retroactive effect. *Id.* at 273-74; *see also Wright v. Morris*, 111 F.3d 414, 419 (6th Cir. 1997) ("Under *Landgraf*, applying a new statute to pending cases is proper where plaintiff seeks only future injunctive relief.").

Defendant reiterates its contrived distinction that all the foregoing cases are inapposite because a statute should only be applied retrospectively where the law is changed in the interim period between the decisions of lower and appellate courts. First, defendants' procedural distinction is irrelevant because none of the cases relied on or even elucidated such a distinction. Second, defendants misinterpret Justice Scalia's concurrence in *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827 (1990). In *Kaiser*, Justice Scalia criticized *Thorpe v. Housing Auth. of Durham*, 393 U.S. 268

---

Duvall does not cite a single case, let alone distinguish the cases that unanimously hold the TDRA applies to pending cases.

(1969), and *Bradley v. Richmond School Bd.*, 416 U.S. 696 (1974), as aberrations from the longstanding rule that, "[if a] new law was silent as to its application, . . . it applied only prospectively." *Kaiser*, 494 U.S. at 844 (Scalia, J., concurring).[2] Justice Scalia distinguished *Thorpe* and *Bradley* from cases that properly applied a new statute to pending cases. Among these exceptions, Justice Scalia noted with approval cases seeking injunctive relief because they involve "prospective rather than retrospective application." *Kaiser Aluminum*, 494 U.S. at 849-50 (Scalia, J., concurring) (*citing Dinsmore v. Southern Express Co.*, 183 U.S. 115, 120 (1901); *United States v. Alabama*, 362 U.S. 602 (1960) (*per curiam*)). Thus, the distinction that defendants attempt to draw from the concurrence in *Kaiser*, after a careful reading, actually supports plaintiff's position.

Defendants' interpretation of the TDRA similarly flouts well-established rules of statutory interpretation that remedial statutes are applied to behavior occurring prior to enactment of the statute. Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 41:1 (6th ed. 2001 rev.) [hereinafter *Sutherland*] ("[R]emedial statutes are applied prospectively unless specific contrary intent appears."); *Alexander v. Robinson*, 756 F.2d 1153, 1155-56 (5th Cir. 1985) (holding statute permitting government to reduce current foodstamp benefits to compensate for prior inadvertent over-issuance was "procedural or remedial in nature and may be applied retroactively"). A statute is remedial, and can be applied retroactively, "when it relates to practice, procedure or remedies and it does not affect substantive or vested rights." *Sutherland* § 41:9; *see also Chovan v. E.I. DuPont de Nemours & Co.*, 217 F. Supp. 808, 811 (E.D. Mich. 1963).

[2] "*Thorpe* made no mention of our earlier presumption against retroactive application, and cited none of the numerous cases supporting that rule. The reason, apparently, was that it treated as distinctive the situation in which (as in *Thorpe*) the change in law occurs between the decision of a lower court and the decision of the appellate tribunal." *Kaiser*, 494 U.S. at 845 (Scalia, J., concurring).

Moreover, courts apply the law as it exists at the time of decision, unless this would materially affect a party's vested property right or investment in trademark use, increase a party's liability, or impose new duties for a party's past conduct. *United States Olympic Comm. v. Toy Truck Lines, Inc.*, 237 F.3d 1331, 1334 (Fed. Cir. 2001). Here, defendants do not have a vested right in the use of "Victor's Secret" or "Victor's Little Secret." Furthermore, they have operated successfully under the name "Cathy's Little Secret" for nearly eight years, *see V Secret Catalogue, Inc. v. Moseley*, 259 F.3d 464, 467-68 (6th Cir. 2001), and plaintiff does not seek monetary damages but only to prevent defendants' future dilutive use of "Victor's Secret" or "Victor's Little Secret." Defendants cannot claim the impairment of a right to use a name that, under existing law, is likely to dilute the famous VICTORIA'S SECRET Mark.

Moreover, a legislative body's repeal of a prior statutory provision on the same subject may offer evidence of legislative intent that a new act is to apply to pending cases. *Cf. Sutherland* § 41:4. In enacting the TDRA, Congress amended 15 U.S.C. § 1125(c) by striking the predecessor Subsection (c) in its entirety. Trademark Dilution Revision Act of 2006, Pub. L. No. 109-312, § 2, 120 Stat. 1730, 1730-32 (2006) (codified at 15 U.S.C. § 1125(c)).

Additionally, defendants' interpretation of the TDRA disregards the basic principle that a statute should be construed "so as to avoid rendering superfluous" any of its language. *Astoria Federal Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991). If silence truly means that the TDRA is not to be applied retroactively, as defendants contend, then Congress need not have put an explicit date restriction into Section 1125(c)(5) at all. Yet, the fact that Congress did so with regard to monetary

damages, but did not in the immediately preceding sentence dealing with injunctive relief, indicates that Congress intended the two sections to have two very different effects. *See, e.g.*, *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (*quoting Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")).

Moreover, the history of the TDRA reinforces Congress's intent that the statute apply to pending dilution claims for injunctive relief. During the February 17, 2005 hearing before the House Judiciary Subcommittee on Courts, the Internet, and Intellectual Property, Anne Gundelfinger, President of the International Trademark Association ("INTA"), testified that in contrast to the FTDA, which was "silent on the issue of retroactivity" and resulted in division among the courts, the TDRA "corrects this oversight" and "provides that only injunctive relief is available to the owner of a famous mark where a person has adopted and used a designation of source in commerce *prior to* the date of enactment of the bill." *See Trademark Dilution Revision Act of 2005: Hearing on H.R. 683 Before the H. Comm. on the Judiciary*, 109th Cong. 17 (2005) (statement of Anne Gundelfinger, President, International Trademark Association) (emphasis added). Ms. Gundelfinger articulated INTA's approval of this approach by explaining that damages are backward-looking but injunctive relief "is a prospective remedy, and a plaintiff seeking such relief can look to the defendant's ongoing conduct in order to determine whether an injunction is appropriate." *Id.*; (*see also* Pl.'s Resp. at 7). The legislative record reflects no contravening testimony.

### B. Because Congress Legislatively Vacated the Supreme Court's Opinion in *Moseley v. V Secret Catalogue*, That Decision and the Sixth Circuit's Mandate Are Not Controlling

Although defendants refer to the Supreme Court's statement that the record before it revealed a "complete absence of evidence" of *actual* dilution, *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 434 (2003), this statement in no way compels the conclusion that plaintiff did not show, or that plaintiff cannot now show, a *likelihood* of dilution under the TDRA. As defendants acknowledge, "[t]he only issue that was appealed in this case was whether Plaintiffs proved their dilution claim under the FTDA." (Defs.' Resp. at 10). Whether plaintiff has proved a likelihood of dilution under the TDRA is the issue now at bar, and the Court has not yet addressed this question. *See Moseley*, 537 U.S. at 436 (Kennedy, J., concurring) ("The Court's opinion does not foreclose injunctive relief if respondents on remand present sufficient evidence of either blurring or tarnishment.").

Defendants persist in their blind adherence to the *pro forma* mandate by citing *Bissell Carpet-Sweeper Co. v. Goshen Sweeper Co.*, 72 F. 545, 548-49 (6th Cir. 1896), for the proposition that a trial court on remand is bound to execute the mandate of the reviewing appellate court. This argument ignores the paramount issue, which is that Congress amended the statute, thereby negating the instructions in the mandate to follow the Supreme Court's invalidated decision. The Sixth Circuit's mandate notwithstanding, the task now before the Court is to apply the TDRA.

According to defendants, the Sixth Circuit's failure to perform the "administrative task of effectuating the Supreme Court's orders" resulted in inequity to defendants. (Defs.' Resp. at 9) This specious reasoning mistakes the nature of the

Supreme Court's remand, as well as the roles of this Court and the Sixth Circuit. By defendants' reckoning, the "administrative task" of the lower courts was simply to reverse the summary judgment and vacate the injunction. In fact, the "task" of the lower courts on remand would have been to grant the parties the opportunity to address the facts in light of the new standard applied by the Supreme Court and to consider the evidence under that standard. That defendants maintain their "hard fought" challenge reveals the likely prospect of their future use of "Victor's Secret" or "Victor's Little Secret" and, hence, the need by plaintiff for the injunction to remain in place.

Although the Supreme Court ruled that there was a "complete absence of evidence of any [*actual*] lessening of the capacity of the VICTORIA'S SECRET mark to identify and distinguish goods or services," *Moseley*, 537 U.S. at 434, this ruling was based on a higher standard than what is now required under the TDRA. The Sixth Circuit and District Court, however, found sufficient evidence to meet the lesser standard of "likely dilution" applied prior to *Moseley v. V Secret Catalogue*. *V Secret Catalogue Inc. v. Moseley*, No. 3:98CV-395-S, 2000 WL 370525, at *5-6 (W.D. Ky. Feb. 9, 2000); *V Secret Catalogue*, 259 F.3d at 466; (*see also* Pl.'s Resp. at 20-21).

The Supreme Court did *not* rule that plaintiff had produced no evidence probative of "likely" dilution, but rather that it had produced no evidence of the type that would demonstrate "actual" dilution. *Moseley*, 537 U.S. at 434. Whereas the TDRA now clarifies the factors to establish whether a likelihood of dilution exists, under the predecessor statute the process was unclear.[3]

---

[3] Under the TDRA, the factors to establish a likelihood of dilution by blurring are: (i) The degree of similarity between the mark or trade name and the famous mark; (ii) The degree of inherent or acquired distinctiveness of the famous mark; (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (iv) The degree of recognition of the famous mark; (v) Whether the

The Supreme Court's opinion, which analyzed the superseded FTDA, has no validity at this stage regarding the ultimate issue of liability under the TDRA. Nonetheless, where the prior factual determinations of fame and similarity of marks that this Court and the Sixth Circuit made under the FTDA correspond to and remain relevant under the TDRA, this Court should be guided by these prior determinations under the doctrine of the law of the case. (*See* Pl.'s Resp. at 19-20)

## II. DEFENDANTS' USE OF "VICTOR'S LITTLE SECRET" IS LIKELY TO DILUTE THE FAMOUS VICTORIA'S SECRET MARK

### A. Plaintiff Established Dilution by both Tarnishment and Blurring Before This Court and the Sixth Circuit Under the FTDA, Which Compels the Conclusion that Plaintiff Has Met the Lower Threshold of Likelihood of Dilution by Tarnishment and Blurring Under the TDRA

When this Court granted summary judgment for plaintiff on its dilution claim in 2000, the Court based its holding on *both* dilution by blurring and dilution by tarnishment. *V Secret Catalogue*, 2000 WL 370525, at *5-6; *V Secret Catalogue*, 259 F.3d at 466; (Pl.'s Resp. at 20-22). Therefore, defendants' claim that the injunction ordered by this Court had its basis only in tarnishment (Defs.' Resp. at 11) is inaccurate.

Even if this Court now determines that its grant of summary judgment to plaintiff in 2000 rested solely on the basis of tarnishment, the Court is not constrained from evaluating what the facts support, a claim of likely dilution by blurring, notwithstanding defendants' misplaced reliance on the law of the case, the mandate rule, or defendants' argument that plaintiff has not distinctly pled blurring at the appellate stage. Since the Sixth Circuit affirmed the injunction on the grounds of both blurring and

---

user of the mark or trade name intended to create an association with the famous mark; and (vi) Any actual association between the mark or trade name and the famous mark. 15 U.S.C. § 1125(c)(2)(B).

tarnishment, *V Secret Catalogue*, 259 F.3d at 477, the Supreme Court addressed the issue of blurring, *Moseley*, 537 U.S. at 433-34, and blurring is set forth in the TDRA. On remand, both likely dilution by blurring and dilution by tarnishment are properly before this Court.

Moreover, as discussed in plaintiff's response memorandum, the law of the case doctrine is inapplicable where a "subsequent contrary view of the law by the controlling authority" occurs. *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994). Enactment of the TDRA is a "subsequent contrary view of the law by the controlling authority," in this case Congress, which warrants this Court's review of plaintiff's dilution claims under the legal doctrines and standards set forth under the TDRA, including the TDRA's recognition of both blurring and tarnishment as distinct causes of action. *See United States v. Rayborn*, 495 F.3d 328, 337 (6th Cir. 2007). Because Victoria's Secret seeks only prospective injunctive relief, rather than retroactive punitive and monetary relief, the amended law applies. Consequently, this Court should now look to the new definitions and guidelines of the TDRA in determining whether "Victor's Little Secret" is likely to blur and/or tarnish the VICTORIA'S SECRET Mark.

Inasmuch as this Court applied a "likelihood of dilution" standard under the FTDA in concluding that "Victor's Little Secret" either blurred or tarnished the VICTORIA'S SECRET Mark, this Court should again find, given identical facts and evidence and a similar TDRA standard of "likelihood of dilution," that defendants' actions are unlawful. *See Levi Strauss & Co. v. Fox Hollow Apparel Group, LLC*, No. C-06-3765 SC, 2007 U.S. Dist. LEXIS 31355, at *8 (N.D. Cal. Apr. 17, 2007) ("The [TDRA] revision changes the law to the pre-*Moseley* standard."); (*see also* Pl.'s Mem. at

24). For these reasons, this Court's 2000 decision, though no longer controlling as to the FTDA standard then applied, should, in a practical sense, nevertheless be highly persuasive in deciding the issue at bar, that is, whether "Victor's Little Secret" is likely to dilute the VICTORIA'S SECRET Mark by blurring or by tarnishment.

### B. Applying the Elements of the TDRA, Plaintiff's VICTORIA'S SECRET Mark Is Likely to Be Diluted by Defendants' Actions

Because plaintiff's Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment has already addressed the dilution elements of (i) fame, (ii) distinctiveness, (iii) defendants' use in commerce of "Victor's Little Secret" after the VICTORIA'S SECRET Mark achieved fame, and (iv) likely dilution by blurring and tarnishment, plaintiff refers to its earlier memorandum for a more comprehensive discussion of these elements. (Pl.'s Mem. at 19-33) Plaintiff will reply only to defendants' claim that the VICTORIA'S SECRET Mark is not likely to be diluted.

#### 1. "Victor's Little Secret" Is Likely to Blur the VICTORIA'S SECRET Mark

As discussed at Point I.B., *supra*, the fact that the Supreme Court found insufficient evidence under the higher "actual dilution" standard of the FTDA does not preclude this Court from finding a *likelihood* of dilution under the lower standard of the TDRA. This conclusion is even more compelling because the new statute enumerates specific factors by which to evaluate the likelihood of dilution by blurring. Given the near-identity of the VICTORIA'S SECRET Mark and "Victor's Little Secret," the inherent distinctiveness and strong secondary meaning of the VICTORIA'S SECRET Mark, plaintiff's substantially exclusive use of its mark, the wide recognition of the mark across the United States and the world, defendants' failure to proffer a credible

explanation for their selection of "Victor's Little Secret" as the name of their lingerie and adult gift shop, and the fact that third parties have noted the similarity between the two marks, plaintiff has shown a likelihood of dilution under the terms of the TDRA. (*See* Pl.'s Mem. at 25-31)

**2. "Victor's Little Secret" Is Likely to Tarnish the VICTORIA'S SECRET Mark**

Similarly, the evidence proffered by plaintiff in support of its claim of dilution by tarnishment is sufficient for this Court to determine under the TDRA that the VICTORIA'S SECRET Mark is likely to be tarnished by defendants' actions. (*See* Pl.'s Mem. at 31-33) The merchandise offered for sale by defendants under the "Victor's Little Secret" name is directly at odds with the sexy and playful image plaintiff has carefully cultivated over the past three decades, and for which plaintiff is famous. (Pl.'s Mem. at 24, 32) The close similarity of the VICTORIA'S SECRET Mark and "Victor's Little Secret," combined with the adult toys, novelties and sundry other sexually-oriented items sold by defendants (*see* Pl.'s Mem. at 10-12), tarnish plaintiff's mark and good name. *V Secret Catalogue*, 259 F.3d at 477 ("This, then, is a classic instance of dilution by tarnishing (associating the Victoria's Secret name with sex toys and lewd coffee mugs) . . . ."); *see also Victoria's Secret Stores v. Artco Equip. Co., Inc.*, 194 F. Supp. 2d 704, 729 (S.D. Ohio 2002) (affirming magistrate judge's report and recommendation that defendant's online retail business, which promoted and sold sex toys and other adult-oriented merchandise, resulted in dilution by tarnishment of the VICTORIA'S SECRET Mark).

Although defendants cite to the definition of dilution embodied in the TDRA, that is, "'dilution by tarnishment' is association arising from the similarity

between a mark or trade name and a famous mark that harms the reputation of the famous mark," 15 U.S.C. § 1125(c)(2)(C), they seem to forget that the standard is no longer "actual dilution," which would presumably require evidence of actual harm or actual association. The TDRA specifically did away with the requirement that a plaintiff show "actual harm" to prevail on a claim for dilution, recognizing that dilution must be prevented at its incipiency, otherwise, once "actual harm" can be established in a court of law, the harm indeed will already have been done. *See Moseley,* 537 U.S. at 436 (Kennedy, J., concurring) ("A holder of a famous mark threatened with diminishment of the mark's capacity to serve its purpose should not be forced to wait until the damage is done and the distinctiveness of the mark has been eroded."); *see also V Secret Catalogue*, 259 F.3d at 475 ("Confusion leads to immediate injury, while dilution is an infection, which if allowed to spread, will inevitably destroy the advertising value of the mark.") (*citing* H.R. Rep. No. 104-374, at 3 (1995)). The evidence presented by plaintiff of the similarity of the marks, of an army colonel's association between the marks, and of the nature of the parties' respective goods, overwhelmingly demonstrates dilution by tarnishment is likely, and if defendants are permitted to operate under "Victor's Little Secret," consumers are likely to associate defendants' business and their crude, tawdry merchandise with plaintiff and its line of premier lingerie. (Pl.'s Mem. at 31-33)

### C. Because the Colucci and Kriss Declarations Merely Convey Information Already in the Record, They Do Not Constitute Additional Discovery and Are Fully Admissible

Defendants' objections to the Kriss and Colucci declarations are, at best, misplaced, and, at worst, misleading. The declarations merely summarize for the Court's convenience facts present in the record that are relevant to the present motions for

summary judgment. Defendants' objection that Mr. Kriss and Mr. Colucci were not disclosed as witnesses is irrelevant because neither declaration purports to convey any information based on the personal knowledge of the declarants. The declaration by Mr. Kriss affirms that plaintiff's business, as it stood in 1999, continues to the present, or, where otherwise, merely updates the Court regarding plaintiff's current corporate structure, sales, and recognition. The declaration by Mr. Colucci, moreover, gathers relevant information already present in the record and presents it in a consolidated format to efficiently direct the Court's attention to the principal facts relied on by plaintiff in support of its request for summary judgment.

## III. CONCLUSION

For all the foregoing reasons, plaintiff respectfully requests that the Court grant summary judgment in its favor.

Dated: New York, New York
January 18, 2008

Respectfully submitted,

**COLUCCI & UMANS**

By: /s Frank J. Colucci
Frank J. Colucci (FC-8441)
218 East 50th Street
New York, New York 10022
Telephone: (212) 935-5700
Facsimile: (212) 935-5728
Email: email@colucci-umans.com

Of Counsel:

Reford H. Coleman
COLEMAN LOCHMILLER & BOND
2907 Ring Road
P.O. Box 1177
Elizabethtown, Kentucky 42702-1177

**CERTIFICATE OF SERVICE**

It is hereby certified that on January 18, 2008, the foregoing Reply Memorandum in Further Support of Plaintiff's Cross-Motion for Summary Judgment was electronically filed with the Clerk of Court using the Western District of Kentucky's CM/ECF system, which will automatically transmit a Notice of Electronic Filing via e-mail to the attorneys of record as follows:

| | |
|---|---|
| Reford H. Coleman | clblaw@bbtel.com |
| Licha H. Farah, Jr. | lfarah@clarkward.com |
| John E. Spainhour | jspainhour@alltel.net |

s/ Frank J. Colucci
Frank J. Colucci