UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

V SECRET CATALOGUE, INC., et al.                                    PLAINTIFFS


v.                                           CIVIL ACTION NO. 3:98CV-395-S

VICTOR MOSELEY and CATHY MOSELEY
d/b/a VICTOR'S LITTLE SECRET                                       DEFENDANTS


**<u>MEMORANDUM OPINION</u>**


This matter is before the court on cross-motions of the parties for summary judgment.  This case has had a long and colorful past which will be briefly described.[1]


I.  History of the Case

Victor and Cathy Moseley own and operate a retail store formerly named "Victor's Secret" and later "Victor's Little Secret."[2]  The store was self-described in its advertising as selling "Intimate Lingerie," "Romantic Lighting," "Lycra Dresses," "Pagers," and "Adult Novelties/Gifts." It is located in Elizabethtown, Kentucky, a short distance from Louisville.  An army colonel who saw the ad for the store opening was offended by what he perceived as an attempt to use Victoria's Secret's trademark to promote "unwholesome, tawdry merchandise."   He sent a copy of the ad to

---

[1]A portion of this description is taken from the opinion of the United States Supreme Court in *Moseley v. V Secret Catalogue, Inc.*, 123 S.Ct. 1115, 1119-1122 (2003).

[2]The store has been operating under the name "Cathy's Little Secret" since February of 2000 when this court entered an order enjoining the defendants from using the marks "Victor's Secret" or "Victor's Little Secret" in connection with their business.

the plaintiffs, the affiliated corporations of V Secret Catalogue, Inc., Victoria's Secret Stores, Inc., and Victoria's Secret Catalogue, Inc. (hereinafter collectively "V Secret").

At the time of the Supreme Court decision in 2003, V Secret operated over 750 Victoria's Secret stores, two of which were in Louisville.[3]  In 1998, the year this action was filed, V Secret spent over $55 million in advertising the Victoria's Secret brand, described by V Secret as "moderately priced, high quality, attractively designed lingerie sold in a store setting designed to look like a wom[a]n's bedroom."  V Secret distributed 400 million copies of the Victoria's Secret catalogue, or which 39,000 were distributed in Elizabethtown.  In 1998 their sales exceeded $1.5 billion.

Counsel for V Secret wrote to the Moseleys requesting immediate discontinuance of the use of the name "Victor's Secret" and any variations thereof as the name was likely to cause confusion with the VICTORIA'S SECRET mark and was likely to dilute the distinctiveness of the mark.  The Moseleys changed the name of the store to "Victor's Little Secret," a change which was unsatisfactory to V Secret which promptly filed suit.

The action alleged trademark infringement, unfair competition, dilution under the Federal Trademark Dilution Act ("FTDA"), common law trademark infringement and unfair competition.  V Secret sought injunctive relief and damages in connection with these claims.  After the close of discovery, the parties filed cross-motions for summary judgment.  This court granted summary judgment in favor of the Moseleys on all claims except the FTDA claim.

The court granted summary judgment in favor of V Secret on the FTDA claim, finding that the marks were substantially similar for purposes of the dilution claim and that the Moseleys' marks had a tarnishing effect upon the VICTORIA'S SECRET mark.  The court noted that "[i]ncluded in

---

[3]Ten years has elapsed since proof was taken in this case.  The figures have since changed.  We recite the facts as they existed at the time this court issued its initial ruling.  Recent statistical evidence has been offered by V Secret.  It is addressed later in this opinion.

the inventory sold by the Moseleys, in addition to lingerie, are adult videos as well as sex toys and other 'adult novelties.'[4]  'Courts have frequently enjoined the "tarnishment" of a mark through association with unsavory goods, persons, or services.'  *Anheuser-Busch, Inc. v. Balducci Publications*, 28 F.3d 769, 777 (8th Cir. 1994)."  February 9, 2000 Memorandum Opinion, p. 9 (DN 38).  The court ordered the Moseleys to refrain from using the "Victor's Secret" and "Victor's Little Secret" marks.

The Moseleys appealed the decision on the FTDA claim to the United States Court of Appeals for the Sixth Circuit.  The Sixth Circuit amplified this court's ruling on the claim, applying the newly announced standard for determining dilution in *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208 (2d Cir. 1999) and affirmed.  In its decision the Court of Appeals discussed two additional issues not addressed by this court.  The court considered whether the mark was distinctive, and whether relief could be granted before dilution had actually occurred.  The court held that the VICTORIA'S SECRET mark was distinctive and that actual dilution need not have occurred.  In light of a split of authority on the question of actual dilution, the Moseleys sought and the United States Supreme Court granted certiorari to consider this issue.

On March 4, 2003, the Supreme Court held that actual dilution was required under the FTDA and reversed the judgment of the Court of Appeals, remanding the case for further proceedings consistent with the opinion.  The Supreme Court entered its mandate on April 3, 2003, ordered costs to the Moseleys in the amount of $7,066.85, and sent the matter back to the Sixth Circuit.  On April 9, 2003, the Moseleys filed a motion in the Court of Appeals to vacate the injunction.  V Secret filed a response on April 25, 2003.  The case sat pending thereafter in the Sixth Circuit for over four years without action.  On July 26, 2007, the Sixth Circuit remanded the case to this court for further proceedings, stating that "[t]he decision of [the Sixth Circuit] having been reversed by the United

---

[4]It appears that the inventory presently sold by Cathy's Little Secret is essentially the same as it was ten years ago.

States Supreme Court and the case having been remanded for further proceedings, the Court further remands this case to the district court for further proceedings consistent with the Supreme Court's decision in *Moseley d/b/a Victor's Little Secret v. V Secret Catalogue, Inc.*, 123 S.Ct. 1115 (2003)." July 26, 2007 Order (DN 49). The court scheduled a pretrial conference for August 23, 2007. The mandate was received from the Court of Appeals on September 26, 2007.

## II. Enactment of the Trademark Dilution Revision Act

Between the time of the Supreme Court's remand to the Sixth Circuit in 2003 and the Sixth Circuit's remand to this court four years later, the United States Congress enacted the Trademark Dilution Revision Act of 2006 ("TDRA"), Pub.L.No. 109-312, 120 Stat. 1730 (2006)(codified at 15 U.S.C. § 1125(c)), effective October 6, 2006.[5] Of import in this case is that the TDRA eliminated the requirement of actual dilution enunciated by the Supreme Court in the 2003 *Moseley* decision.[6]

The TDRA provides:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1).

---

[5]V Secret theorized that the Court of Appeals might have held the case for this extended period of time in order to afford Congress the opportunity to supersede the FTDA with this new legislation. There is no evidence in the record to support this suggestion, nor does it matter to this court. The court must address the issues presented at the time of remand. The court will not engage in evaluation of "what if" scenarios such as that posed by the Moseleys; that is, what the necessary outcome would have been had the Court of Appeals promptly remanded the case to this court.

[6]In fact, the *Moseley* case has been said to have been the catalyst for the enactment of the TDRA: "Congress amended the [Federal Trademark Dilution] Act principally to overrule *Moseley* and to require that only a *likelihood* of dilution need be proved. *See*, 15 U.S.C. § 1125(c)(1)(West Supp. 2007)." *Louis Vuitton Malletier v. Haute Diggity Dog, LLC*, 507 F.3d 252, 264, n. 2 (4th Cir. 2007)(emphasis in original).

In light of this provision, we are faced with an order of the Court of Appeals remanding the case to us to apply law which has been superseded. The Sixth Circuit has held that the law of the case doctrine is inapplicable where a subsequent contrary view of the law by controlling authority occurs. *United States v. Moored*, 38 F.3d 1419, 1421 (6th cir. 1994). We find that the *Moseley* "actual dilution" standard is thus no longer the law of the case.

The Moseleys contend that the case at bar is distinguishable from the cited cases addressing changes in the law inasmuch as this case had already gone up to the Supreme Court and had been remanded to the Court of Appeals before the new statutory enactment. They urge this court to draw a distinction between cases on their way up the appellate ladder from cases on their way down to the trial court. They cite no authority for drawing such a distinction and we find no logical reason to do so. While the Moseleys complain that they lost the benefit of their success on appeal, the same could be said of a case ascending through the appellate process which is thwarted by superseding legislation. In either case, a change in the law would potentially alter the landscape of the appeal.

## III. Retroactivity

Retroactivity is the next issue which the court must address. Pertinent to this determination, the parties stipulated in October, 2007 to V Secret's withdrawal of all claims for monetary relief. The effective date of the new provisions was October 6, 2006. The TDRA does not explicitly state that the Act is to be applied retroactively. The Moseleys therefore urge that dilution claims pending prior to the effective date are governed by the FTDA rather than the new law, as retroactive application is generally disfavored in the law.

The TDRA applies to the dilution claim herein however, as V Secret seeks only prospective injunctive relief. As stated in *American Steel Foundries v. Tri-City Central Trades*, 257 U.S. 184, 201, 42 S.Ct. 72, 66 L.Ed.2d 189 (1921), "relief by injunction operates *in futuro* and the right to it must be determined as of the time of the hearing." *See, Louis Vuitton Malletier v. Haute Diggity*

*Dog, LLC,* 464 F.Supp.2d 495  (E.D.Va. 2006), *affm'd,* 507 F.3d 252 (4th Cir. 2007)( *citing,*

*Landgraf v. USI Film Products, Inc.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994);

applying TDRA to claim for injunctive relief); *Louis Vuitton Malletier v. Dooney & Bourke*, 500

F.Supp.2d 276, 282, n. 31 (S.D.N.Y. 2007)(applying TDRA to claim for injunctive relief); *Starbucks

Corporation v. Wolfe's Borough Coffee, Inc.*, 477 F.3d 765 (2d Cir. 2007)(*citing, Havana Club

Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116, 129 (2d Cir. 2000; applying TDRA to claim for

injunctive relief)); *Verilux, Inc. v. Hahn*, 2007 WL 2318819 (D.Conn. Aug. 10, 2007); *Dan-Foam

A/S v. Brand Named Beds, LLC*, 500 F.Supp.2d 296 (S.D.N.Y. 2007)(applying TDRA to claim for

injunctive relief).

    The Sixth Circuit, while not having had the opportunity to address the application of the

TDRA to dilution claims pending prior to the effective date of the Act, has approved the principle

upon which we base our decision.  In *BellSouth Telecommunications, Inc. v. Southeast Telephone,

Inc.*, 462 F.3d 650, 661 (6th Cir. 2006) the court noted, quoting *Landgraf*, that a new statute that

authorized or affected the propriety of prospective relief did not raise retroactivity concerns.

Significantly, the court went on to quote that "[a] statute does not operate 'retrospectively' merely

because it...upsets expectations based in prior law." *Landgraf*, 114 S.Ct. at 1483:

> Even uncontroversially prospective statutes may unsettle expectations and impose
> burdens on past conduct: a new property tax or zoning regulation may upset the
> reasonable expectations that prompted those affected to acquire property...In other
> words, the fact that parties engage in conduct on the assumption that the law will
> allow them to act or to benefit in a certain manner is not sufficient reason to refuse
> to apply a new law that renders that assumption misplaced.

*BellSouth*, 462 F.3d at 662, *quoting, Landgraf*, 114 S.Ct. at 1483.  *See also, Combs v. Commissioner

of Social Security*, 459 F.3d 640 (6th Cir. 2006)(*quoting, Landgraf*, "A statute does not operate

'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's

enactment").

IV.  Law of the Case

The next inquiry, then, is whether any of the factual findings remain viable on remand of the dilution claim.  There were certain findings of fact and law that were either not appealed or were affirmed on appeal, such as the conclusions that the Victoria's Secret mark was "famous" and "distinctive."[7]  The sole issue on which certiorari was granted was the question of whether actual dilution had to be proven under the FTDA or whether a plaintiff need only show a likelihood of dilution of its mark.  The findings of the Supreme Court upon which reversal was based were (1) that the Court of Appeals (and this court) incorrectly analyzed the claim under a "likelihood of dilution" rather than an "actual dilution" standard; and (2) that there was no evidence of actual dilution of the Victoria's Secret mark.

As the FTDA has now been superseded by the TDRA, and the new law applies to pending claims, the findings concerning the FTDA and actual dilution fall away.  No other findings are rendered infirm by the TDRA.  Indeed, the parties each seek to maintain the findings that the VICTORIA'S SECRET mark is "famous" and "distinctive" as the law of the case.  The parties cite the same litany of cases in support of this proposition:

> "Issues decided at an early stage of litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." *Hanover Ins. Co. v. American Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997)(*quoting Coal Resources, Inc. v. Gulf & Western Indus., Inc.*, 865 F.2d 761, 766 (6th Cir. 1989)).  Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," *Arizona v. California*, 460 U.S. 605, 618 (1983); *United States v. Rayborn*, 495 F.3d 328, 337 (6th Cir. 2007), and the court is "precluded from reexamining an issue previously decided by the same court, or a higher court in the same case." *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir. 1998).  Further, this doctrine precludes a party from challenging a decision from an earlier stage of the litigation that could have been challenged in a prior appeal, but where the party failed to do so. *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997).

Pl. Cross-Motion for Sum. Judg., p. 20; Def. Response to Cross-Motion, p. 7.

---

[7]This court did not render a finding addressing the distinctiveness of the mark.

## V.  Finding of "No Evidence of Dilution"

Before proceeding further, we address an argument raised by the Moseleys.  They note that this court and the Court of Appeals both found that there was a likelihood of dilution of the VICTORIA'S SECRET mark.  They contend that the Supreme Court's reversal was premised on a finding that there was a complete absence of evidence of dilution.  The Moseleys urge that this court is bound by the Supreme Court's finding of "no evidence of dilution," and therefore V Secret cannot succeed on its claim.

The Moseleys read out of context the finding concerning the evidence adduced on summary judgment.  The Supreme Court's entire analysis was premised on the finding that a showing of actual dilution was required.  The court first noted that "at least where the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution."  *Moseley*, 123 S.Ct. at 1124.  The court then went on to state:

> The record in this case establishes that an army officer who saw the advertisement of the opening of a store named "Victor's Secret" did make the mental association with "Victoria's Secret," but it also shows that he did not therefore form any different impression of the store that his wife and daughter had patronized.  There is a complete absence of any lessening of the capacity of the VICTORIA'S SECRET mark to identify and distinguish goods or services sold in Victoria's Secret stores or advertised in its catalogs.  The officer was offended by the ad, but it did not change his conception of Victoria's Secret.  His offense was directed entirely at petitioners, not at respondents...The evidence in the present record is not sufficient to support the summary judgment on the dilution count.

*Moseley,* 123 S.Ct. at 1125.  The Supreme Court looked for evidence of actual dilution, considering the anecdotal and expert evidence, and found none.  The court did not address the finding by the Court of Appeals of a likelihood of dilution wherein that court stated:

> [W]e must ask whether a consumer would link a store called "Victor's Little Secret" that sold women's lingerie with the more famous Victoria's Secret.  We have little doubt that the average lingerie consumer would make just such an association.  Assuming that the district court was correct in finding that the sophistication of lingerie consumers and the differences in the quality of the products marketed by the two stores would prevent actual confusion, this is a case that highlights the

distinction between an infringement and a dilution claim. While no consumer is likely to go to the Moseleys' store expecting to find Victoria's Secret's famed Miracle Bra, consumers who hear the name "Victor's Little Secret" are likely automatically to think of the more famous store and link it to the Moseleys' adult-toy, gag gift, and lingerie shop. This, then, is a classic instance of dilution by tarnishing (associating the Victoria's Secret name with sex toys and lewd coffee mugs) and by blurring (linking the chain with a single, unauthorized establishment). Given this conclusion, it follows that Victoria's Secret would prevail in a dilution analysis, even without an exhaustive consideration of all ten of the *Nabisco* factors.

*V Secret Catalogue, Inc. v. Moseley*, 259 F.3d 464, 477 (6th Cir. 2001). However, the findings from both courts under the FTDA are so much flotsam and jetsam, having been jettisoned from the ship of the FTDA now sunk in the sea of new dilution law. Summary judgment was reversed. On remand, we have a dilution claim under the TDRA which must be analyzed without regard to the former findings.

## VI. Analytical Framework

V Secret urges the court to repackage its former findings and/or those of the Court of Appeals, noting that "[w]ith the exception of the change that now predicates liability of dilution, the elements are *nearly identical* to those applied under the FTDA." Pl. Cross-Motion for Sum. Judg., p. 19 (emphasis added). V Secret also cites *Levi Strauss & Co. v. Fox Hollow Apparel Group, LLC*, 2007 WL 1140648 (N.D.Cal. April 17, 2007) for the proposition that "[t]he [TDRA] revision changes the law to the pre-*Moseley* standard," a case which then went on to apply an analysis set forth in a 1998 case. V Secret then cites to a number of findings by this court and the Court of Appeals which it thus contends constitute the law of the case and should be restated as findings herein.

We reject the suggestion that since the elements under the TDRA are *nearly identical* to those of the FTDA, we should render the same findings as on the first summary judgment. There can be no application of the law of the case doctrine to factual findings rendered in accordance with a similar, but not identical, statute. Inasmuch as we are faced with a claim for prospective injunctive

relief, we must evaluate V Secret's entitlement to relief under the new statute as the matter is presented to us today.  *See, Haute Diggity Dog, Inc.*, 464 F.Supp.2d at 504 ("relief by injunction operates *in futuro* and the right to it must be determined as of the time of the hearing," *quoting, American Steel Foundries, supra*.).  We will therefore apply a rigorous analysis from the ground up, applying the standard for dilution as it is set forth in the TDRA.  While the outcome may be the same, we must employ the methodology of the applicable statute.

Additionally, we note herein that the unusual procedural posture of the case; that is, the fact that we are considering whether V Secret is entitled to prospective injunctive relief for use of marks which ceased eight years ago.  This is because the law changed while there was already an injunction in place prohibiting the use of the marks.  We find, however, that a case or controversy exists with respect to V Secret's entitlement to injunctive relief inasmuch as the Moseleys seek a lifting of this injunction.  No doubt, had remand to this court occurred prior to the enactment of the TDRA and the injunction lifted, had the Moseleys again used the "Victor's Secret" or "Victor's Little Secret" marks, V Secret would have been free to again seek injunctive relief under the new dilution statute.  As the Moseleys wish to no longer be bound by the present injunction's prohibition, we must consider the propriety of injunctive relief going forward, under the new standard.

## VII.  The TDRA

The TDRA provides, in pertinent part:

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, or of actual economic injury.

...For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark.  In determining whether a mark or trade name

- 10 -

is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:

> (I) The degree of similarity between the mark or trade name and the famous mark.
> (ii) The degree of inherent or acquired distinctiveness of the famous mark.
> (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.
> (iv) The degree of recognition of the famous mark.
> (v) Whether the user of the mark or trade name intended to create an association with the famous mark.
> (vi) Any actual association between the mark or trade name and the famous mark.

> ...For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

15 U.S.C. § 1125(c).[8]

In order to establish entitlement to injunctive relief, V Secret must show that (1) its mark is famous; (2) its mark is distinctive; (3) the Moseleys began using the mark after V Secret's mark became famous; and (4) the Moseleys' use of their mark is likely to cause dilution of V Secret's mark by blurring or by tarnishment of the mark.


### VIII.  Summary Judgment

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976).  Not every factual dispute between the parties will prevent summary judgment.  The disputed facts must be material.  They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty*

---

[8]We reject out of hand the argument of the Moseleys that on remand, the court's analysis must be limited to the issue of tarnishment, as that was the basis for this court's grant of summary judgment.  The TDRA specifically provides for proof of dilution by blurring and tarnishment.  As we are addressing the claim afresh under the new statutory provision, our analysis need not be limited to the tarnishment of V Secret's mark.

*Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).  The dispute must also be genuine.  The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party.  *Id.* at 2510.  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).  The evidence must be construed in a light most favorable to the party opposing the motion.  *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).  We find that there is no genuine issue of material fact to preclude summary judgment, and the issue of dilution can be decided on the present record.

The Moseleys have quoted Fed.R.Civ.P. 56(f) in their response to V Secret's motion for summary judgment.  They have not, however, filed a Rule 56(f) affidavit, nor have they requested additional time for discovery.  Rather they object wholesale to the affidavits filed by V Secret on the ground that on remand, the court's review should be limited to the closed record.  They also urge that the court's analysis should only address dilution by tarnishment as that was the extent of this court's original ruling.

The summary judgment has been reversed and the court has determined that a new statute for obtaining prospective injunctive relief must be applied.  As the analysis for likelihood of dilution under the TDRA contemplates both dilution by blurring and dilution by tarnishment, our assessment will address both theories.  Further, as the court is required to determine V Secret's present entitlement to injunctive relief, it is appropriate for this court to consider updated evidence.  As the Moseleys have not sought additional time for discovery under Rule 56(f), the court will consider the information.  We will do so with due regard for the Moseleys' criticisms of the V Secret affidavits, as set out in their responsive brief.

IX.  Application of the TDRA

1. Fame

In the case of *Dan-Foam, supra.,* the court held that the requirements for a "famous" mark "remain[] unchanged by the TDRA's reconfiguration of the fame factor."  500 F.Supp.2d at 307, n. 90.  The TDRA states that in determining whether a mark possesses the requisite degree of recognition to be considered famous, the court may consider (1) the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties; (2) the amount, volume, and geographic extent of sales of good or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered.  15 U.S.C. § 1125(c)(2)(A).

Without doubt, the VICTORIA'S SECRET mark is valuable.  The Moseleys have not challenged the conclusion that the VICTORIA'S SECRET mark qualifies as a famous mark.

We note that the affidavit of Scott A. Kriss, Vice President of Victoria's Secret Stores Brand Management, Inc., indicates that today, over 1, 000 Victoria's Secret and Victoria's Secret Beauty retail stores operate throughout the United States.  Victoria's Secret continues to sell women's lingerie, undergarments, nightwear, robes, caftans, kimonos, slippers, sachets, lingerie bags, hanging bags, candles, soaps, cosmetic brushes, atomizers, bath products, and fragrances.  Since December 1998, V Secret has advertised, offered for sale, and sold Victoria's Secret goods on its internet website located at www.victoriassecret.com and it ships its goods around the world.  In an April 2007 article in *Women's Wear Daily*, it was reported that Victoria's Secret ranked in the top ten women's apparel stores in a Scarsborough Research survey.  In a September 2007 article in *Women's Wear Daily*, it was reported that Victoria's Secret ranked second by Nielsen/NetRatings in online apparel and accessories purchases among retailers.  V Secret reports that in fiscal year 2006, Victoria's Secret retail store, catalog, and website sales collectively exceeded $4.9 billion. V Secret continues to operate retail stores in Louisville, Kentucky at the Oxmoor Center, the Mall

St. Matthews, the Jefferson Mall, and The Summit at Louisville. These locations are approximately sixty miles from the Moseleys' establishment. In 2006, over 280 million issues of the Victoria's Secret catalog were distributed in over 200 countries. V Secret spent approximately $454 million in advertising in 2006.

### B.  Distinctiveness

The TDRA requires but does not define "distinctiveness."  The Act defines dilution by blurring as an association arising from the similarity between a mark and a famous mark which impairs the distinctiveness of the famous mark. "There can be no dilution of a mark's distinctive quality unless the mark is distinctive." *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 216 (2d Cir. 1999).

The Moseleys do not challenge the conclusion that the VICTORIA'S SECRET mark is distinctive. This factor is discussed in greater depth in the analysis of the likelihood of blurring of the distinctiveness of the VICTORIA'S SECRET mark.

### C.  Use

There appears to be no question concerning the timing of the Moseleys' use of the "Victor's Secret" and "Victor's Little Secret" marks.  Again, the Moseleys do not dispute that they began using their marks well after V Secret's mark became famous.

The VICTORIA'S SECRET mark has been registered since 1981.  The Moseleys did not open their store until 1998. As the declaration of Kriss evidences, by 1998 V Secret had over 750 retail stores and revenues exceeding $2 billion, the combined retail sales from the Kentucky retail locations alone exceeded $4 million, and over 400 million catalogs were distributed annually.  Thus Victoria's Secret's fame was clearly established prior to the Moseleys' use of their marks.

### D. Likelihood of Dilution

The TDRA establishes that dilution may be shown through evidence of either dilution by blurring or dilution by tarnishment.

### 1. Dilution by Blurring

The TDRA defines "dilution by blurring" as an association arising from the similarity between a mark and a famous mark that impairs the distinctiveness of the famous mark.  15 U.S.C. § 1125(a)(2)(B).  The court has already found the VICTORIA'S SECRET mark to be distinctive. "Dilution by blurring occurs when consumers mistakenly associate a famous mark with goods and services of a junior mark, thereby diluting the power of the senior mark to identify and distinguish associated goods and services." *Ringling Bros. - Barnum & Bailey Combined Shows, Inc. v. Utah Division of Travel Dev.,* 955 F.Supp. 605, 615 (E.D.Va. 1997), *citing, Mead Data Cent., Inc. v. Toyota Motor Sales U.S.A., Inc.*, 875 F.2d 1026, 1031 (2d Cir. 1989)).  The TDRA recites five particular factors as relevant in determining the likelihood of dilution by blurring.  These factors will be addressed *seriatim.*

### a. The degree of similarity between the marks

The marks in issue must be "identical" or "nearly identical" or "substantially similar."  While the TDRA does not require that the marks be "identical" or "nearly identical," it does not appear that the Act eliminated this requirement previously established in the law.  *Nike, Inc. v. Nikepal International, Inc.*, 2007 WL 2782030, *6 (E.D.Cal. 2007).  The court previously addressed this factor, and the Court of Appeals approved the analysis.  We readopt the finding here.

Significantly, the Moseleys originally named their store "Victor's Secret."  This name is quite similar to V Secret's mark, "Victoria's Secret."  The Moseleys subsequently changed the name

to "Victor's Little Secret," but an examination of the signage[9] and advertising reveals that the alteration was very minor.  The word "Little" is substantially smaller than the words "Victor's" and "Secret," so much as to make it an afterthought in the advertising.  There are only two letters' difference between "Victor's Secret" and "Victoria's Secret."  We find the two marks to be substantially similar for purposes of V Secret's dilution claim.

### b.  Distinctiveness of the Famous Mark

The Court of Appeals explained the significance of the "distinctiveness" analysis in its decision affirming the summary judgment of this court, but applying a modified test for dilution set out in *Nabisco, Inc., supra.*  "Distinctiveness" is a factor under the TDRA.  This element is satisfied when the famous mark is distinctive either inherently or through acquired distinctiveness.  15 U.S.C. § 1125(c)(1).  The "distinctiveness" element remains unchanged under the new statute.

The analysis by the Court of Appeals remains sound and stands unchallenged on summary judgment.  Therefore this court will readopt the findings therein:

> ...['T]he *Kellogg/Nabisco* test requires a plaintiff to prove that its mark is not only famous, but also distinctive. Although in *Kellogg* we did not conduct a full dilution analysis, the Second Circuit provided an extended discussion of distinctiveness in the *Nabisco* decision, as follows:

> Distinctiveness in a mark is a characteristic quite different from fame. Distinctiveness is a crucial trademark concept, which places marks on a ladder reflecting their inherent strength or weakness. The degree of distinctiveness of a mark governs in part the breadth of the protection it can command. At the low end are generic words – words that name the species or object to which the mark applies. These are totally without distinctiveness and are ineligible for protection as marks because to give them protection would be to deprive competitors the right to refer to their products by name...Thus, no one can claim the exclusive right to use the mark "CAR" for a car.  One rung up the ladder are "descriptive" marks – those that *describe* the product or its attributes or claims.  These also have little distinctiveness and accordingly are ineligible for protection unless they have acquired "secondary meaning" – that is, unless the consuming public has come to associate the mark with the products or services of its user...[T]he next higher rung belongs to "suggestive"

---

[9] which was utilized until this court enjoined the use in 2000,

marks; these fall in an in-between category...They do not name or describe the product for which they are used, but they suggest the qualities or claims of that product.  They are more distinctive than descriptive marks, and thus are accorded trademark rights without need to demonstrate that consumers have come to associate them with the user of the mark...Nonetheless, because they seek to suggest qualities of the product, they possess a low level of distinctiveness.  The [sic] are given less protection than is reserved for more distinctive marks – those that are "arbitrary" or "fanciful."...A mark is arbitrary or fanciful if there is no logical relationship whatsoever between the mark and the product on which it is used.  However, even within the category of arbitrary or fanciful marks, there is still a substantial range of distinctiveness.  Some marks may qualify as arbitrary because they have no logical relationship to the product, but nonetheless have a low level of distinctiveness because they are common.  The most distinctive are marks that are entirely the product of the imagination and evoke no association with human experience that relate intrinsically to the product...The strongest protection of the trademark laws is reserved for these most highly distinctive marks.  *Nabisco*, 191 F.3d at 215-16 (citations omitted).

...The requirement of distinctiveness is furthermore an important limitation.  A mark that, notwithstanding its fame, has no distinctiveness is lacking the very attribute that the antidilution statute seeks to protect.

..."[T]he *degree* of distinctiveness of the senior mark has a considerable bearing on the question whether a junior use will have a diluting effect. *Nabisco*, 191 F.3d at 217.

*V Secret Catalogue, Inc.*, 259 F.3d at 469-470.

Nothing in the new version of the antidilution statute has changed with regard to this element.  After this discussion of the principles underlying the characteristic of distinctiveness, the Sixth Circuit held that

In this case, for example, although the word "secret" may provoke some intrinsic association with prurient interests, it is not automatically linked in the ordinary human experience with lingerie.  "Secret" is not particularly descriptive of bras and hosiery.  Nor is there anything about the combination of the possessive "Victoria's" and "secret" that automatically conjures thoughts of women's underwear – except, of course, in the context of plaintiff's line of products.  Hence, we conclude that the "Victoria's Secret" mark ranks with those that are "arbitrary and fanciful" and therefore deserving of a high level of trademark protection.

*V Secret Catalogue, Inc. v. Moseley*, 259 F.3d 464, 470 (6th Cir. 2001), *rev'd*, 120 S.Ct. 1115 (2003).

c.  Substantially Exclusive Use of the Mark

As noted in *Nikpal*, *supra*, "The law does not require that use of a famous mark be absolutely exclusive, but merely 'substantially exclusive.'" *Nikpal*, 2007 WL 2782030 at *7, *citing, L.D. Kichler Co. v. Davoil Inc.*, 192 F.3d 1349, 1352 (Fed.Cir. 1999).  V Secret asserts that it is engaged in substantially exclusive use of the VICTORIA'S SECRET mark.  In support of this contention, Vice President Kriss avers that V Secret actively and aggressively polices its mark against unauthorized and dilutive uses by others.  It pursues unauthorized uses through cease and desist letters, trademark oppositions, and litigation.  Kriss Decl., ¶ 27.  The Moseleys have not disputed this assertion.  We therefore find the requisite substantially exclusive use of the mark.

d.  Recognition of the Mark

The court finds that there can be little dispute over the degree of consumer recognition of the VICTORIA'S SECRET mark.  The commercial success of the retail stores, catalog and internet venues offers a measure of the recognition of the brand.  As attested in the Kriss declaration, V Secret prominently displays its mark in a variety of ways.  All V Secret garments bear "Victoria's Secret" hang tags and garment labels.  The stores prominently display the VICTORIA'S SECRET mark at the entrance to their storefronts.  All merchandise is placed in a shopping bag or wrapped in tissue paper and placed in a gift box, both of which bear the VICTORIA'S SECRET mark.  Victoria's Secret is known worldwide, through the broadcast of the Victoria's Secret Fashion Show, catalog distribution, and the internet shopping venue.  V Secret has also advertised and continues to advertises its mark in nationally circulated magazines such as *The New Yorker*, *Glamour*, *Vogue*, and *Harper's Bazaar*.  In recent years its merchandise has been featured in various internationally circulated magazines such as *Allure*, *Cosmopolitan*, *Elle*, *Family Circle*, and *Glamour*, to name a few.  Its merchandise has also been featured on various national television programs such as *CBS Early Show*, *Good Morning America*, *The Today Show*, *Entertainment Tonight*, and *Extra*.  Kriss

- 18 -

Decl., ¶¶ 12-14, 16, 22, 25-27.  The court finds that the VICTORIA'S SECRET mark has a high

level of consumer recognition.


### e.  Intent to Associate with Famous Mark

This court considered the evidence offered with respect to the Moseleys' intent in selecting

"Victor's Secret" to create an association in the mind of the consumer with the VICTORIA'S

SECRET mark.  The court concluded that the explanation offered by the Moseleys was not credible,

and determined that they indeed intended to foster such an association.  The court held:

> The Moseleys assert that their selection of "Victor's Secret" for the name of their store was a complete coincidence.  They claim that they had never seen a Victoria's Secret catalogue or a Victoria's Secret advertisement prior to opening their store.  Their explanation for the selection of the name "Victor's Secret" is that Victor Moseley wanted to keep the opening of his store quiet while working for a previous employer – thus, it was "Victor's Secret."

> The notable similarity between the two marks alone is enough to call into question Defendants' explanation, but Victoria's Secret also submits further evidence to rebut the Moseleys' claims.  Mr. Moseley testified in his deposition that he was unemployed prior to opening his store.  This not only tends to refute his explanation for the name "Victor's Secret," but seriously damages his credibility.

*V Secret Catalogue, Inc.*, 2000 WL 370525 at *4.

Neither the Sixth Circuit nor the Supreme Court addressed this finding.  Upon revisiting the

issue, the court sees no reason to deviate from this earlier analysis of the facts.  The Moseleys'

"Victor's Secret" name appears in all capital letters in an almost identical font to "Victoria's Secret,"

and is employed as the name for a store also selling lingerie.[10]  This is too remarkable a coincidence

for this court to accept the assertion that it was unknowing.  We therefore readopt our earlier

analysis and conclude that Moseleys intended to create an association with the VICTORIA'S

SECRET mark.

---

[10]We are not swayed by the assertion that lingerie sales comprise a small percentage of the Moseleys' business.  The lingerie figures prominently in the Moseleys' advertising and store window displays.

- 19 -

f. Actual Association

This element encompasses more than one aspect of the blurring calculus.  The Supreme Court found under the standard of "actual dilution" that there was evidence of an actual association of the "Victor's Secret" mark with the VICTORIA'S SECRET mark, through the testimony of the army colonel who reported the advertisement he had received to V Secret.

The Supreme Court noted, however, that blurring is not a necessary consequence of a mental association in the mind of the consumer between an accused mark and a famous mark.  The court found that there was a "complete absence of evidence of any lessening of the capacity of the VICTORIA'S SECRET mark to identify and distinguish goods or services sold in Victoria's Secret stores or advertised in its catalogs." *Moseley*, 123 S.Ct. at 1125.  The court noted that V Secret's expert did not address the impact of the Moseleys' use of their mark on the strength of the VICTORIA'S SECRET mark.  Thus the court found that there was actual association between the marks, but no evidence of actual dilution of the famous mark.  However, we are analyzing the evidence under the "likelihood of dilution" standard enunciated in the TDRA, and thus are unconcerned with the second aspect of the Supreme Court's analysis.

The Supreme Court noted that the army colonel who saw the advertisement for Victor's Secret's grand opening did readily make the mental association with "Victoria's Secret," but he was not actually misled as to the ownership of the Moseleys' store, nor was his esteem of V Secret's business diminished.  Rather, he was offended that the Moseleys would attempt to use a variant of the VICTORIA'S SECRET mark in such a fashion.  Thus, we answer the question as to actual association as did the Supreme Court and conclude that there was proof, albeit one testimonial, of actual association.

The evidence here is quantitatively less impressive than the evidence in the *Nikepal* case in which there was a survey performed showing that over 87% of the people in Nikepal's customer pool associated "Nikepal" with "Nike."  However, in light of the fact that Nikepal was not

attempting to sell athletic shoes or gear, but rather sold services and products to analytical, environmental, and scientific laboratories. A survey of that particular customer base was, no doubt, necessary in or to establish actual association. By contrast, here we have a lingerie and adult products store calling itself "Victor's Secret," and an individual consumer who saw the accused mark and was so offended by the association to "Victoria's Secret" that he contacted the company to report the offending use. We find the evidence of actual association here no less compelling than in *Nikepal*.

### g. Conclusion as to Blurring

"Blurring" is defined as an association arising from the similarity between a mark and a famous mark that impairs the distinctiveness of the famous mark. As already established, the VICTORIA'S SECRET mark is quite famous and strongly associated with V Secret's products. The evidence, which is essentially limited to the experience of the offended army colonel, militates against a finding that the distinctiveness of the VICTORIA'S SECRET mark would likely be impaired by the use of the "Victor's Secret" or "Victor's Little Secret" marks. The evidence in the case established that a consumer, the army colonel, readily associated the Moseleys' mark with the VICTORIA'S SECRET mark, but did not link the store to the Victoria's Secret brand. There was no question in his mind that the Moseleys' offerings of intimate lingerie, sex toys, and adult videos were not V Secret merchandise. The choice of name and presentation by the Moseleys being just slightly different from the VICTORIA'S SECRET mark, conjured the association with the famous mark, but fell short of blurring its distinctiveness in this instance.

While it is possible that a blurring of that distinctiveness *could* occur in the minds of some consumers, we deal here with *likelihood* of blurring. We must address the evidence before us which militates against a finding of likelihood. The offended colonel wrote to V Secret not to say "stop selling sex toys," but rather to alert them that their mark was being associated with an establishment

selling such items in derogation of their name.  Thus we have evidence not of blurring, but of tarnishment.

So while we have found that the blurring factors, including intent on the part of the Moseleys to create the association with V Secret's mark, favor V Secret, the record evidence establishes that the distinctiveness of the VICTORIA'S SECRET mark was not blurred, at least in the instance of one consumer confronted with the use of the accused mark.

V Secret has not argued that satisfaction of the statutory factors trumps evidence of a *lack* of blurring of the famous mark's distinctiveness.  We believe that such an argument, if made, would be unsuccessful inasmuch as the statute states that the court "may consider all relevant factors," including the ones delineated.  The weight to be given any of the considerations listed in the statute is unclear.  However, the court notes that V Secret could have met the evidence militating against a finding of blurring, but chose not to do so.  The Supreme Court clearly suggested an evidentiary deficiency, albeit applying an "actual dilution" standard, but V Secret did not seek to further develop evidence on remand.

V Secret contends that the Court of Appeals found dilution by blurring, and that finding should be adopted herein.  However, we conclude that the lack of any factual analysis on the point by the appellate court is problematic and would lead to an erroneous result.  The Court of Appeals stated that

> While no consumer is likely to go to the Moseleys' store expecting to find Victoria's Secret's famed Miracle Bra, consumers who hear the name "Victor's Little Secret" are likely automatically to think of the more famous store and link it to the Moseleys' adult-toy, gag gift, and lingerie shop.  This, then, is a classic instance of dilution by tarnishing (associating the Victoria's Secret name with sex toys and lewd coffee mugs) and by blurring (linking the chain with a single, unauthorized establishment).

*V Secret Catalogue*, 259 F.3d at 477.  The Supreme Court stated, however, that

> ...at least where the marks at issue are not identical, the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution.  As the facts of that case demonstrate, such mental

association will not necessarily reduce the capacity of the famous mark to identify the goods of its owner, the statutory requirement for dilution under the FTDA. For even though Utah drivers may be reminded of the circus when they see a license plate referring to the "greatest *snow* on earth," it by no means follows that they will associate "the greatest show on earth" with skiing or snow sports, or associate it less strongly or exclusively with the circus. "Blurring is not a necessary consequence of mental association. (Nor, for that matter, is "tarnishing.")

*Moseley*, 123 S.Ct. at 1125.

As we are considering the matter afresh under the new statute's "likelihood of dilution standard," we conclude that the better course includes our thorough analysis of the facts, in the application of the new statute.

We conclude for the foregoing reasons that there has been no showing of a likelihood of dilution by blurring.

### 2.  Dilution by Tarnishment

The TDRA states that "dilution by tarnishment" is an "association arising from the similarity between a mark...and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C).

Dilution by tarnishment "generally arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product." *Diane Von Furstenberg Studio v. Snyder*, 2007 WL 2688184 (E.D.Va. Sept. 10, 2007) at *4, *quoting, Deere & Co. v. MTD Prods.*, 41 F.3d 39, 43 (2d Cir. 1994). As explained in *Deere & Co.*, "[i]n such situations, the trademark's reputation and commercial value might be diminished because the public will associate the lack of quality, or lack of prestige in the defendant's goods with the plaintiff's unrelated goods, or because the defendant's use reduces the trademark's reputation and standing in the eyes of consumers as a wholesome identifier of the owner's products and services." 41 F.3d at 43.

The evidence in this case supports a finding of a likelihood of dilution by tarnishment. The army colonel's offended reaction to the use of "Victor's Secret," what he clearly believed to be a bastardization of the VICTORIA'S SECRET mark, for the promotion of "unwholesome, tawdry merchandise," suggests the likelihood that the reputation and standing of the VICTORIA'S SECRET mark would be tarnished. In the words of the *Deere & Co.* case, the reputation of the famous mark would be "reduced" in the eyes of consumers as "a wholesome identifier" of the Victoria's Secret brand *Id.* V Secret has stated that it scrupulously avoids sexually explicit goods while cultivating a "sexy and playful" image. The line between "sexy and playful" and sexually explicit in the world of women's lingerie purveyors is one which V Secret seeks to maintain in order to preserve its image as a "well-respected retailer of high-quality women's lingerie." Kriss Decl., ¶98. The use of the remarkably similar "Victor's Secret" or "Victor's Little Secret" in connection with the sale of intimate lingerie along with sex toys and adult videos tarnishes the reputation of the VICTORIA'S SECRET mark. Thus we find a likelihood of dilution of the mark, entitling V Secret to injunctive relief.

Conclusion

The parties agree that the record is complete and the court may decide the matter herein on the merits. Having found the TDRA to be applicable to the remanded dilution claim, and having found a likelihood of dilution the VICTORIA'S SECRET mark on an essentially undisputed factual record, summary judgment will be granted in favor of V Secret, summary judgment denied to the Moseleys, and a permanent injunction will be entered by separate order.

**IT IS SO ORDERED.**