*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0144p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

V SECRET CATALOGUE, INC.,
*Plaintiff-Appellee,*

and

VICTORIA'S SECRET STORES, INC.,
*Plaintiff,*

*v.*

VICTOR MOSELEY, dba Victor's Little Secret, fka Victor's Secret; CATHY MOSELEY, dba Victor's Little Secret, fka Victor's Secret,
*Defendants-Appellants.*

No. 08-5793

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 98-00395—Charles R. Simpson III, District Judge.

Argued: January 21, 2010

Decided and Filed: May 19, 2010

Before: MERRITT, MOORE, and GIBBONS, Circuit Judges.

---

**COUNSEL**

**ARGUED:** John E. Spainhour, GIVHAN & SPAINHOUR, Shepherdsville, Kentucky, for Appellants. Frank J. Colucci, COLUCCI & UMANS, New York, New York, for Appellees. **ON BRIEF:** John E. Spainhour, GIVHAN & SPAINHOUR, Shepherdsville, Kentucky, for Appellants. Frank J. Colucci, COLUCCI & UMANS, New York, New York, for Appellees.

MERRITT, J., delivered the opinion of the court. GIBBONS, J. (p. 12), delivered a separate concurring opinion. MOORE, J. (pp. 13-19), delivered a separate dissenting opinion.

## OPINION

MERRITT, Circuit Judge. In this trademark "dilution by tarnishment" case, brought under the Trademark Dilution Revision Act of 2006,[1] the question is whether the plaintiff, an international lingerie company that uses the trade name designation "Victoria's Secret" has a valid suit for injunctive relief against the use of the name "Victor's Little Secret" or "Victor's Secret" by the defendants, a small retail store in a mall in Elizabethtown, Kentucky, that sells assorted merchandise, including "sex toys" and other sexually oriented products. The District Court issued the injunction. Since then the shop has been operating under the name of "Cathy's Little Secret." The District Court concluded that even though the two parties do not compete in the same market, the "Victor's Little Secret" mark — because it is sex related — disparages and tends to reduce the positive associations and the "selling power" of the "Victoria's Secret" mark. The question is whether the plaintiff's case meets the definitions and standards for

[1]The relevant provisions of the new law change the test for "dilution by tarnishment" from an "actual" to only a likelihood of "harm" to the "reputation" of the senior mark:

> **15 U.S.C. § 1125(c) Dilution by blurring; dilution by tarnishment**
> **(1) Injunctive relief**
>
> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce *that is likely to cause dilution by blurring or dilution by tarnishment* of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition or of actual economic injury.
>
> **(2) Definition**
>
> . . . .
>
> (C) For purposes of paragraph (1), "dilution by tarnishment" *is association* arising from the similarity between a mark or trade name and a famous mark that *harms the reputation* of the famous mark.

(Emphasis added.)

"dilution by tarnishment" set out in the new Act which amended the old Act, *i.e.*, the Federal Trademark Dilution Act of 1995.[2]

The new Act was expressly intended to overrule the Supreme Court interpretation of the old Act in this very same case, *Moseley v. V Secret Catalog, Inc.*, 537 U.S. 418 (2003), *rev'g* 259 F.3d 464 (6th Cir. 2001), *aff'g* 54 U.S.P.Q.2d 1092 (W.D. Ky. 2000). The Supreme Court reversed a panel of this Court that had affirmed an injunction against "Victor's Little Secret" issued by the District Court. On remand to the District Court from the Supreme Court after the 2003 reversal, no new evidence was introduced, and the District Court reconsidered the case based on the same evidence but used the new language in the new Act which overrules the Supreme Court in this case. We will first brief the Supreme Court opinion and the reasons Congress overruled the Supreme Court in this case. We will then outline our understanding of the new standards for measuring trademark "dilution by tarnishment" and apply them to this case. We conclude that the new Act creates a kind of rebuttable presumption, or at least a very strong inference, that a new mark used to sell sex related products is likely to tarnish a famous mark if there is a clear semantic association between the two. That presumption has not been rebutted in this case.

## I. The Supreme Court Opinion and the New Act

The Supreme Court explained that this case started when an Army Colonel at Fort Knox saw an ad for "Victor's Secret" in a weekly publication. It advertised that the small store in Elizabethtown sold adult videos and novelties and lingerie.[3] There was

---

[2]The relevant provisions of the old law provide:

> § 1125(c)(1). The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, *if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark. . . .*

[3]The Supreme Court explained:

"In the February 12, 1998, edition of a weekly publication distributed to residents of the military installation at Fort Knox, Kentucky, petitioners advertised the "GRAND OPENING just in time for Valentine's Day!" of their store "VICTOR'S SECRET" in nearby Elizabethtown. The ad featured "Intimate Lingerie *for every woman*," "Romantic Lighting"; "Lycra Dresses"; "Pagers"; and "Adult

no likelihood of confusion between the two businesses or the two marks, but the Army Colonel was offended because the sexually-oriented business was semantically associating itself with "Victoria's Secret." The Court explained that the concepts of "dilution by blurring" and "dilution by tarnishment" originated with an article in the Harvard Law Review, Frank Schechter, "Rational Basis of Trademark Protection," 40 HARV. L. REV. 813 (1927), and that the history and meaning of the concepts were further well explained in Restatement (Third) of Unfair Competition, Section 25 (1995). The Restatement section referred to by the Supreme Court explains this new intellectual property tort and contains in § 25 a comprehensive statement of "Liability Without Proof of Confusion: Dilution and Tarnishment." "Tarnishment," as distinguished from "dilution by blurring" was the only claim before the Supreme Court and is the only claim before us in this new appeal. We quote at length the relevant Restatement explanation of "tarnishment" in the footnote below.[4]

---

Novelties/Gifts." An army colonel, who saw the ad and was offended by what he perceived to be an attempt to use a reputable company's trademark to promote the sale of "unwholesome, tawdry merchandise," sent a copy to respondents. Their counsel then wrote to petitioners stating that their choice of the name "Victor's Secret" for a store selling lingerie was likely to cause confusion with the well-known VICTORIA'S SECRET mark and, in addition, was likely to "dilute the distinctiveness" of the mark. They requested the immediate discontinuance of the use of the name "and any variations thereof." In response, petitioners changed the name of their store to "Victor's Little Secret." Because that change did not satisfy respondents, they promptly filed this action in Federal District Court." 537 U.S. at 426 (internal citations omitted).

[4]"c. *Interests protected*. The antidilution statutes have been invoked against two distinct threats to the interests of a trademark owner. First, a mark may be so highly distinctive and so well advertised that it acts as a powerful selling tool. Such a mark may evoke among prospective purchasers a positive response that is associated exclusively with the goods or services of the trademark owner. To the extent that others use the trademark to identify different goods, services or businesses, a dissonance occurs that blurs this stimulant effect of the mark. The antidilution statutes protect against this dilution of the distinctiveness and selling power of the mark.

The selling power of a trademark also can be undermined by a use of the mark with goods or services such as illicit drugs or pornography that "tarnish" the mark's image through inherently negative or unsavory associations, or with goods or services that produce a negative response when linked in the minds of prospective purchasers with the goods or services of the prior user, such as the use on insecticide of a trademark similar to one previously used by another on food products.

Tarnishment and dilution of distinctiveness, although conceptually distinct, both undermine the selling power of a mark, the latter by disturbing the conditioned association of the mark with the prior user and the former by displacing positive with negative associations. Thus, tarnishment and dilution of distinctiveness reduce the value of the mark to the trademark owner.

. . . .

*g. Tarnishment*. The antidilution statutes have also been invoked to protect the positive associations evoked by a mark from subsequent uses that may disparage or tarnish those associations. The rule stated in Subsection (1)(b) applies to cases in which the tarnishment results from a subsequent use of

After reviewing a number of secondary sources other than the Harvard Law Review article and the Restatement, including state statutes on dilution and a Fourth Circuit case, the Supreme Court held that "actual harm" rather than merely the "likelihood of tarnishment" is necessary and stated its conclusion as follows:

> Noting that consumer surveys and other means of demonstrating actual dilution are expensive and often unreliable, respondents [Victoria's Secret] and their *amici* argue that evidence of *an actual* "lessening of the capacity of a famous mark to identify and distinguish goods or services," may be difficult to obtain. It may well be, however, that direct evidence of dilution such as consumer surveys will not be necessary *if actual dilution can reliably be proved* through circumstantial evidence — the obvious case is one where the junior and senior marks are identical. *Whatever difficulties of proof may be entailed, they are not an acceptable reason for dispensing with proof of an essential element of a statutory violation*. The evidence in the present record is not sufficient to support the summary judgment on the dilution count. The judgment is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

537 U.S. at 434 (emphasis added).

Thus, the Court held that "actual harm" rather than merely a "likelihood" of harm must be shown by Victoria's Secret in order to prevail and that this means that Victoria's Secret carries the burden of proving an actual "lessening of the capacity of the Victoria's Secret mark to identify and distinguish goods or services sold in Victoria's Secret stores

---

the mark or a substantially similar mark in a manner that associates the mark with different goods, services, or businesses. Use of another's mark by the actor, not as a trademark or trade name, but in other ways that may disparage or tarnish the prior user's goods, services, business, or mark is governed by the rule stated in Subsection (2).

Any designation that is distinctive under the criteria established in § 13 is eligible for protection against disparaging or tarnishing use by others. Whenever the subsequent use brings to mind the goods, services, business, or mark of the prior user, there is potential for interference with the positive images associated with the mark. To prove a case of tarnishment, the prior user must demonstrate that the subsequent use is likely to come to the attention of the prior user's prospective purchasers and that the use is likely to undermine or damage the positive associations evoked by the mark.

**Illustration:**

3. *A*, a bank, uses the designation "Cookie Jar" to identify its automatic teller machine. *B* opens a topless bar across the street from *A* under the trade name "Cookie Jar." Although prospective customers of *A* are unlikely to believe that *A* operates or sponsors the bar, *B* is subject to liability to *A* for tarnishment under an applicable antidilution statute if the customers are likely to associate *A*'s mark or *A*'s business with the images evoked by *B*'s use."

or advertised in its catalogs." *Id.* In the new law Congress rejected the Court's view that a simple "likelihood" of an association in the consumer's mind of the Victoria's Secret mark with the sexually-oriented videos and toys of "Victor's Secret" is insufficient for liability.

The House Judiciary Committee Report states the purpose of the new 2006 legislation as follows:

> The *Moseley* standard *creates an undue burden* for trademark holders who contest diluting uses and should be revised.
>
> . . . .
>
> The new language in the legislation [provides] . . . specifically that the standard for proving a dilution claim is "likelihood of dilution" and that both dilution by blurring and dilution by tarnishment are actionable.

(Emphasis added.) U.S. Code Cong. & Adm. News, 109th Cong. 2d Sess. 2006, Vol. 4, pp. 1091, 1092, 1097. The relevant language of the new Act designed to carry out this purpose is recited and underlined in footnote 1, *supra*. The drafters of the Committee Report also called special attention to the "burden" of proof or persuasion placed on "trademark holders" by the Supreme Court's opinion in *Moseley*, suggesting a possible modification in the burden of proof. The question for us then is whether "Victor's Little Secret" with its association with lewd sexual toys creates a "likelihood of dilution by tarnishment" of Victoria's Secret mark.

## II. Application of Statutory Standard

The specific question in this case is whether, without consumer surveys or polls or other evidence, a semantic "association" is equivalent to a liability-creating mental "association" of a junior mark like "Victor's Little Secret" with a famous mark like "Victoria's Secret" that constitutes dilution by tarnishment when the junior mark is used to sell sexual toys, videos and similar soft-core pornographic products. There appears to be a clearly emerging consensus in the case law, aided by the language of § 25 of the Restatement of Trademarks 3d, quoted in footnote 4, *supra*, that the creation of an "association" between a famous mark and lewd or bawdy sexual activity disparages and

defiles the famous mark and reduces the commercial value of its selling power. This consensus stems from an economic prediction about consumer taste and how the predicted reaction of conventional consumers in our culture will affect the economic value of the famous mark.

There have been at least eight federal cases in six jurisdictions that conclude that a famous mark is tarnished when its mark is semantically associated with a new mark that is used to sell sex-related products. We find no exceptions in the case law that allow such a new mark associated with sex to stand. *See Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 525 (S.D.N.Y. 2009) (defendants' display at an adult entertainment exhibition of two models riding a VIAGRA-branded missile and distributing condoms would likely harm the reputation of Pfizer's trademark); *Williams-Sonoma, Inc. v. Friendfinder, Inc.*, No. C 06-6572 JSW (MEJ) , 2007 WL 4973848, at *7 (N.D. Cal., Dec. 6, 2007) (defendants' use of POTTERY BARN mark on their sexually-oriented websites likely to tarnish "by associating those marks for children and teenager furnishings"); *Kraft Foods Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 949-50 (N.D. Ill. 2002) (pornographic website's use of "VelVeeda" tarnishes VELVEETA trademark); *Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1355 (S.D. Fla. 2001) (defendants' internet trade names likely to tarnish famous mark when websites "will be used for entertainment of a lascivious nature suitable only for adults"); *Mattell, Inc. v. Internet Dimensions Inc.*, 55 U.S.P.Q.2d 1620, 1627 (S.D.N.Y. 2000) (linking BARBIE with pornography will adversely color the public's impressions of BARBIE); *Polo Ralph Lauren L.P. v. Schuman*, 46 U.S.P.Q.2d 1046, 1048 (S.D Tex. 1998) (defendants' use of "The Polo Club" or "Polo Executive Retreat" as an adult entertainment club tarnished POLO trademark); *Pillsbury Co. v. Milky Way Prods., Inc.*, 215 U.S.P.Q. 124, 135 (N.D. Ga. 1981) (defendant's sexually-oriented variation of the PILLSBURY DOUGHBOY tarnished plaintiff's mark); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 467 F. Supp. 366, 377 (S.D.N.Y. 1979) (pornographic depiction of a Dallas Cowboys Cheerleader-style cheerleader in an adult film tarnished the professional mark of the Dallas Cowboys).

The phrase "likely to cause dilution" used in the new statute (see footnote 1) significantly changes the meaning of the law from "causes actual harm" under the pre-existing law. The word "likely" or "likelihood" means "probably," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1310 (1963); BLACK'S LAW DICTIONARY 1076 (1968). It is important to note also that the Committee Report quoted above seeks to reduce the "burden" of evidentiary production on the trademark holder. The burden-of-proof problem, the developing case law, and the Restatement (Third) of Trademarks in § 25 (particularly subsection g) should now be interpreted, we think, to create a kind of rebuttable presumption, or at least a very strong inference, that a new mark used to sell sex-related products is likely to tarnish a famous mark if there is a clear semantic association between the two. This *res ipsa loquitur*-like effect is not conclusive but places on the owner of the new mark the burden of coming forward with evidence that there is no likelihood or probability of tarnishment. The evidence could be in the form of expert testimony or surveys or polls or customer testimony.

In the present case, the Moseleys have had two opportunities in the District Court to offer evidence that there is no real probability of tarnishment and have not done so. They did not offer at oral argument any suggestion that they could make such a showing or wanted the case remanded for that purpose. The fact that Congress was dissatisfied with the *Moseley* result and the *Moseley* standard of liability, as well as apparently the *Moseley* burden of proof, supports the view of Victoria's Secret that the present record — in the eyes of the legislative branch — shows a likelihood of tarnishment. Without evidence to the contrary or a persuasive defensive theory that rebuts the presumption, the defendants have given us no basis to reverse the judgment of the District Court. We do not find sufficient the defendants' arguments that they should have the right to use Victor Moseley's first name and that the effect of the association is *de minimis*. The Moseleys do not have a right to use the word "secret" in their mark. They use it only to make the association with the Victoria's Secret mark. We agree that the tarnishing effect of the Moseley's mark on the senior mark is somewhat speculative, but we have no evidence to overcome the strong inference created by the case law, the Restatement, and Congressional dissatisfaction with the burden of proof used in this case in the Supreme

Court. The new law seems designed to protect trademarks from any unfavorable sexual associations. Thus, any new mark with a lewd or offensive-to-some sexual association raises a strong inference of tarnishment. The inference must be overcome by evidence that rebuts the probability that some consumers will find the new mark both offensive and harmful to the reputation and the favorable symbolism of the famous mark.

Our dissenting colleague, in relying on the Supreme Court treatment of the proof in this case — for example, the long quotation from the Supreme Court concerning the legal effect of the evidence — fails to concede what seems obvious: Congress overruled the Supreme Court's view of the burden of proof. As quoted above, it said, "the Moseley standard creates an undue burden for trademark holders who contest diluting uses. . . . ." It seems clear that the new Act demonstrates that Congress intended that a court should reach a different result in this case if the facts remain the same. We do not necessarily disagree with our dissenting colleague that the policy followed by the Supreme Court in such cases may be better. We simply believe that the will of Congress is to the contrary with regard to the proof in this case and with regard to the method of allocating the burden of proof.

## III. Other Issues

The defendants also contend that the new Act should not be applied to them in this case because (1) the Law of the Case Doctrine means that the Supreme Court opinion in their favor remains in effect, (2) the new Act is not retroactive, and (3) the plaintiff's claim does not fit within the language of the Act found in 15 U.S.C. § 1125(c)(5) which reads as follows:

> **Additional remedies**
>
> In an action brought under this subsection, the owner of the famous mark shall be entitled to injunctive relief as set forth in section 1116 of this title. [Describing requirements in addition to normal injunctions under § 1125(c)(1) to obtain injunctions in various kinds of trademark disputes.] The owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, [Describing remedies for attorneys fees, treble damages, etc., not

> applicable here.] subject to the discretion of the court and the principles of equity if --
>
> (A) The mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in commerce by the person against whom the injunction is sought after October 6, 2006, and
>
> (B) in a claim arising under this subsection —
>
> (i) by reason of dilution by blurring, the person against whom the injunction is sought willfully intended to trade on the recognition of the famous mark; or
>
> (ii) *by reason of dilution by tarnishment, the person against whom the injunction is sought willfully intended to harm the reputation of the famous mark.*

Defendants claim somehow that the new Act is only applicable to claims brought under this subsection and that the plaintiff's claims were brought for use of a trade name used before, not after October 6, 2006, and hence in violation of subsection (5)(A).

1. Law of the Case Doctrine. — The Law of the Case Doctrine has no application here to the prospective relief sought because while the case was pending a "controlling authority" (Congress) changed the law, *see United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) ("a subsequent contrary view of the law by the controlling authority" in a pending case justifies disregarding the Law of the Case Doctrine).

2. Retroactivity. — New statutes are not necessarily "retroactive" and may be applied to pending cases where prospective relief is sought for ongoing conduct: "When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Landgraft v. U.S.I. Film Prods.*, 511 U.S. 244, 273-74 (1994).

3. Applicability of 15 U.S.C. § 1125(c)(5). — The defendants' reliance on this subsection of the new act is misplaced. This subsection of the new Act refers to "Additional remedies," not set out in the injunctive relief section of § 1125(c)(1), the first section of the new Act quoted in footnote 1 above which provides for an injunction "at anytime after the owner's mark has become famous" and the junior mark "that is

likely to cause dilution" is used. The new Act intervened and required a reconsideration of the case on the merits. We have now fully considered the case on the merits, as well as the defendants' other defenses and conclude that the District Court did not err in its decision in favor of the plaintiff, Victoria's Secret.

Accordingly, the judgment of the District Court is AFFIRMED.

## CONCURRENCE

JULIA SMITH GIBBONS, Circuit Judge, concurring. I fully concur in the majority opinion with the exception of one small quibble. I would not use the term "rebuttable presumption" to describe the inference that a new mark used to sell sex-related products is likely to tarnish a famous mark if there is a clear semantic association between the two. Practically speaking, what the inference is called makes little difference. I agree with the majority opinion that the inference is a strong one and that, to counter it, some evidence that there is no likelihood or probability of tarnishment is required. But because we are endeavoring to interpret a new law and because the legislative history is not explicit on the point of modification of the burden of proof, I think it best to end our analysis by characterizing the inference as an inference.

## DISSENT

KAREN NELSON MOORE, Circuit Judge, dissenting. Because I believe that Victoria's Secret has failed to produce sufficient evidence to show that the Moseleys' use of the name "Victor's Little Secret" is likely to tarnish the VICTORIA'S SECRET mark, I would reverse the judgment of the district court and must respectfully dissent.

Under the Trademark Dilution Revision Act of 2006 ("TDRA"), Victoria's Secret is entitled to injunctive relief if the Moseleys' use of "Victor's Little Secret" as the name of their adult-oriented novelty store[1] "is likely to cause dilution . . . by tarnishment of the" VICTORIA'S SECRET mark. 15 U.S.C. § 1125(c)(1). "[D]ilution by tarnishment" is defined as an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." *Id.* § 1125(c)(2)(C). Thus, under the terms of the statute, to determine whether the VICTORIA'S SECRET mark is likely to be tarnished by the Moseleys' use, this court must inquire as to both the "association" between the two marks and the "harm" that the association causes to the senior mark.

Because I agree that there is a clear association between the two marks, the determinative inquiry in this dilution-by-tarnishment case is whether that association is likely to harm Victoria's Secret's reputation. *See id.* § 1125(c)(2)(C) ("that harms the reputation of the famous mark"). Contrary to the majority's conclusion, however, given the record before the panel, I would hold that Victoria's Secret has failed to meet its burden to show that the Moseleys' use of "Victor's Little Secret" is likely to dilute Victoria's Secret's mark.[2]

---

[1]Victor's Little Secret "sell[s] a wide variety of items, including adult videos, adult novelties, and lingerie." *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 424 (2003) (internal quotation marks omitted); *see also id.* at 424 n.4 (listing numerous other items sold). "Victor Moseley stated in an affidavit that women's lingerie represented only about five percent of their sales." *Id.* at 424.

[2]I respectfully disagree with the majority's conclusion that in dilution-by-tarnishment cases involving new marks "with lewd or offensive-to-some sexual association[s]" the TDRA establishes a presumption or inference of tarnishment that the Moseleys must rebut. Maj. Op. at 9, 10. To be sure, the

Victoria's Secret's evidence of tarnishment includes nothing more than the following: (1) an affidavit from Army Colonel John E. Baker stating that he "was . . . offended by [the] defendants' use of [Victoria's Secret's] trademark to promote . . . unwholesome, tawdry merchandise," such as "'adult' novelties and gifts," and that since his "wife . . . and . . . daughter . . . shop at Victoria's Secret, [he] was further dismayed by [the] defendants' effort to associate itself with, trade off on the image of, and in fact denigrate a store frequented by members of [his] family," Record on Appeal ("ROA") at 267 (Baker Aff.); and (2) a statement from one of Victoria's Secret's corporate officers that Victoria's Secret strives to "maintain[] an image that is sexy and playful" and one that "avoid[s] sexually explicit or graphic imagery." *Id.* at 90 (Kriss Aff.).

Reviewing Baker's affidavit, I believe that it is plain that Baker made a "mental association" between "Victor's Little Secret" and "Victoria's Secret." *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 434 (2003); *see also* ROA at 266 (Baker Aff.). It is also clear that Baker held a negative impression of "Victor's Little Secret." *See Moseley*, 537 U.S. at 434; *see also* ROA at 267 (Baker Aff.). But despite the clear negative association of this *one* individual when confronted with "Victor's Little Secret," Victoria's Secret has presented *no* evidence that Baker's, or anyone else's, distaste or dislike of "Victor's Little Secret" is likely to taint their positive opinion or perception of Victoria's Secret. Yet evidence that the junior mark is likely to undermine or alter the positive associations of the senior mark—i.e., evidence that the junior mark is likely to harm the reputation of the senior mark—is precisely the showing required under the plain language of 15 U.S.C. § 1125(c)(2)(C) to prove dilution by tarnishment. As the Second Circuit recently noted in *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009):

---

House Judiciary Committee Report highlights Congress's concern with the pre-TDRA actual-dilution standard, but I do not read its concern that the previous standard created "an undue burden" to mean that Congress envisioned a modification of the party that bears the burden of proof as opposed to simply a lightening of the evidentiary showing. *See* H.R. Rep. No. 109-23, at 5 (2005) ("Witnesses at the[] [legislative] hearings focused on the standard of harm threshold articulated in *Mosely* [sic]. . . . The *Mosely* [sic] standard creates an undue burden for trademark holders who contest diluting uses and should be revised."). The burden to show tarnishment remains with Victoria's Secret.

> That a consumer may associate a negative-sounding junior mark with a famous mark says little of whether the consumer views the junior mark as harming the reputation of the famous mark. The more relevant question, for purposes of tarnishment, would have been how a hypothetical coffee [with a negative-sounding name] would affect the positive impressions about the coffee sold by Starbucks.

*Starbucks Corp*., 588 F.3d at 110; *see also* J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition § 24:89 (4th ed.) [hereinafter McCarthy on Trademarks] (discussing tarnishment claims as being premised on the notion that "positive associations" of the senior mark will be displaced or degraded by the negative associations of the junior mark); Restatement (Third) of Unfair Competition § 25 cmt. g (1995) ("To prove a case of tarnishment, the prior user must demonstrate that the subsequent use is likely to . . . undermine or damage the positive associations evoked by the mark."). In fact, when reviewing the exact same evidentiary record, the Supreme Court explicitly noted that Victoria's Secret's offer of proof included no evidence that "Victor's Little Secret" affected Baker's positive impressions of Victoria's Secret:

> The record in this case establishes that an army officer . . . did make the mental association with "Victoria's Secret," but it also shows that *he did not therefore form any different impression of the store that his wife and daughter had patronized*. There is a complete absence of evidence of any lessening of the capacity of the VICTORIA'S SECRET mark to identify and distinguish goods or services sold in Victoria's Secret stores or advertised in its catalogs. The officer was offended by the ad, *but it did not change his conception of Victoria's Secret*. His offense was directed entirely at [the Moseleys], not at [Victoria's Secret]. Moreover, the expert retained by respondents had nothing to say about the impact of [the Moseleys'] name on the strength of [Victoria's Secret's] mark.

*Moseley*, 537 U.S. at 434 (emphases added).[3]

---

[3]The majority mischaracterizes my citation to the Supreme Court's decision as evidencing a refusal to follow the "will of Congress" and a desire to follow the pre-TDRA "policy [of the] . . . Supreme Court." Maj. Op. at 9. My citation to the Supreme Court's decision, however, does no such thing. First, as stated previously, I believe that the majority's conclusion that Congress intended to change which party has the burden of proof—i.e., the framework governing which party must put forth evidence in support of its position—as opposed to the standard of harm—i.e., actual harm versus a likelihood of harm—is not supported by the statute or the legislative history. In fact, the only evidence that the majority cites in support of its belief that Congress intended to place the burden of proof on the defendant is the House Committee Report, but even that Report undercuts the majority's argument. The full paragraph from which the majority draws its quotation states:

> Witnesses at the[] [legislative] hearings focused on the *standard of harm threshold*

In short, Victoria's Secret has presented *no* probative evidence that anyone is likely to think less of Victoria's Secret as a result of "Victor's Little Secret" and cannot therefore prevail on its claim of dilution by tarnishment. *See Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996) ("Absent any showing that Henson's use [of a puppet named Spa'am] will create negative associations with the SPAM mark, there [is] little likelihood of dilution."). Instead of developing a record on remand that contains at least some evidence that Victoria's Secret's reputation is likely to suffer because of the negative response that "Victor's Little Secret" engendered, the record before the panel indicates only that a single individual thinks poorly of "Victor's Little Secret." *See Moseley*, 537 U.S. at 434. On this record, it is simply no more probable that Victoria's Secret will suffer reputational harm as a result of the Moseleys' use of "Victor's Little Secret" than it is probable that those who are offended by "Victor's Little Secret" will limit their negative impressions to the Moseleys and refrain from projecting those negative associations upon Victoria's Secret. Baker's affidavit does nothing to contradict this conclusion, and given the absence of any indication that his or his family's opinion of Victoria's Secret changed following the Moseleys' use of "Victor's Little Secret," his affidavit may, in fact, provide evidence that individuals are likely to confine their distaste to the Moseleys. *See id.* ("The officer was offended by

---

> articulated in *Mosely* [sic]. For example, a representative of the International Trademark Association observed that "[b]y the time measurable, provable damage to the mark has occurred much time has passed, the damage has been done, and the remedy, which is injunctive relief, is far less effective." The Committee endorses this position. The *Mosely* [sic] standard creates an undue burden for trademark holders who contest diluting uses and should be revised."

H.R. Rep. No. 109-23, at 5 (internal footnote omitted and emphasis added). It was the "standard of harm threshold," i.e., the showing of actual harm that the Supreme Court employed, that was Congress's concern, not the party bearing the burden of proof. This conclusion is supported by the hearings to which the Committee Report refers. During those hearings, the focus of both the House Representatives and the witnesses was whether Congress should "maintain an actual dilution standard, as the Supreme Court held in the Victoria's Secret case," or adopt a "likelihood of dilution standard." *Trademark Dilution Revision Act of 2005: Hearing Before the Subcomm. on Courts, the Internet, and Intellectual Property of the H. Comm. on the Judiciary*, 109th Cong. 4 (2005) (statement of Rep. Berman); *see generally id.* at 1–54.

I certainly recognize that Congress changed the law concerning dilution in response to the Supreme Court's decision in *Moseley*, but the Supreme Court in *Moseley* said nothing about changing the party bearing the burden of proof and neither does the amended statute. Instead, the statute explicitly states that "dilution by tarnishment" is an "association arising from the similarity between a mark or trade name and a famous mark *that harms the reputation of the famous mark*." 15 U.S.C. § 1125(c)(2)(C) (emphasis added). In concluding that Victoria's Secret has failed to prove a likelihood of tarnishment because it has failed to present evidence that Victor's Little Secret is likely to harm the reputation of its mark, I am doing nothing more than applying the plain language of the statute that Congress enacted after the Supreme Court's decision. This approach certainly reflects the "will of Congress." Maj. Op. at 9.

the ad, but it did not change his conception of Victoria's Secret. His offense was directed entirely at [the Moseleys], not at [Victoria's Secret].").

Certainly, it is *possible* that the Moseleys' use of "Victor's Little Secret" to sell adult-oriented material and other novelties could reflect poorly on the VICTORIA'S SECRET mark and could cause Victoria's Secret to suffer damage to its "sexy and playful" reputation, but the evidentiary standard set forth in the statute is one of likelihood *not* mere possibility. Likelihood is based on probable consequence and amounts to more than simple speculation as to what might possibly happen. *See* McCarthy on Trademarks § 24:115 n.2 (indicating that "'likelihood' in the dilution part of the Lanham Act has the same meaning as it does in the traditional infringement sections of the Lanham Act: as synonymous with 'probability'"); *see also Parks v. LaFace Records*, 329 F.3d 437, 446 (6th Cir. 2003) ("A 'likelihood' means a 'probability' rather than a 'possibility' of confusion."). Yet, as the majority notes, on the instant record, the "tarnishing effect of the Moseley's mark on the senior mark" is nothing more than "speculative." Maj. Op. at 8-9.

Despite the absence of evidence, the majority is willing to assume that Victoria's Secret has met its burden to prove the essential element of "harm to reputation" based on the fact that numerous cases from other jurisdictions conclude, without much inquiry, "that a famous mark is tarnished when its mark is semantically associated with a new mark that is used to sell sex-related products." *Id.* at 7. I do not agree. Although it is true that courts have concluded that a finding of tarnishment is likely when a mark's "likeness is placed in the context of sexual activity, obscenity, or illegal activity," *Hormel Foods Corp.*, 73 F.3d at 507, a court cannot ignore the showing of reputational harm that the statute requires.[4]

---

[4]Nor can the court ignore the character of the senior mark when applying the majority's "rule." Victoria's Secret sells women's lingerie, and, as Victoria's Secret readily admits, its own mark is already associated with sex, albeit not with sex novelties. *See* ROA at 90 (Kriss Aff.) (noting that Victoria's Secret attempts to maintain a "sexy and playful" image); *see also, e.g.*, *id.* at 156–57 (depicting Victoria's Secret advertisements for "sexy little things" lingerie, which urge customers to "[b]e bad for goodness sake[] [i]n peek-a-boo's, bras and sexy Santa accessories," to "[g]ive flirty panties" as gifts, and participate in the store's "panty fantasy," which it describes as "Very racy. Very lacy"); *id.* at 209 (reproducing an article in Redbook magazine entitled "46 Things to Do to a Naked Man," which highlights Victoria's Secret's role in the sexual activities of one of the contributors).

Even assuming that "Victor's Little Secret" is plainly unwholesome when compared to Victoria's Secret and that this case is completely analogous to those cases on which the majority relies, I still maintain that it is improper simply to assume likelihood of harm to the reputation of a senior mark when dealing with a junior mark of sexual character. As recounted above, there is *no* evidence connecting Victor's Little Secret's "unwholesome" or "tawdry" sexual character to the senior mark's reputation, and there is nothing in the language of the TDRA that would allow the court to forgive a party's obligation present proof as to an element of the tarnishment cause of action—i.e., the likelihood of harm to reputation.[5] *See* McCarthy on Trademarks § 24:115 ("Even after the 2006 revision when only a likelihood of dilution is required, . . . judges should demand persuasive evidence that dilution is likely to occur. Even the probability of dilution should be proven by evidence, not just by theoretical assumptions about what possibly could occur or might happen.").

With its conclusion that there is sufficient evidence of harm to the reputation of the VICTORIA'S SECRET mark based solely on the sexual nature of the junior mark,

---

In essence, the VICTORIA'S SECRET mark is not entirely separate from the sexual context within which the junior mark, "Victor's Little Secret," operates. This fact makes the instant case unlike many of the cases that the majority cites. *Cf. Williams-Sonoma, Inc. v. Friendfinder, Inc.*, No. C 06-6572 JSW (MEJ), 2007 WL 4973848, at *7 (N.D. Cal., Dec. 6, 2007) (likelihood of tarnishment where "marks for children and teenager furnishings" were associated "with pornographic websites"); *Kraft Foods Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 949 (N.D. Ill. 2002) (likelihood of dilution where the mark for cheese products was associated with websites that "depict[] graphic sexuality and nudity, as well as illustrations of drug use and drug paraphernalia"); *Mattell Inc. v. Internet Dimensions Inc.*, 55 U.S.P.Q.2d (BNA) 1620, 1627 (S.D.N.Y. 2000) (likelihood of tarnishment when the BARBIE mark was linked to adult-entertainment websites); *Polo Ralph Lauren L.P. v. Schuman*, 46 U.S.P.Q.2d (BNA) 1046, 1048 (S.D. Tex. 1998) (dilution likely where Polo Ralph Lauren's mark was associated with "an adult entertainment business"); *Toys "R" Us Inc. v. Akkaoui*, 40 U.S.P.Q.2d (BNA) 1836, 1838 (N.D. Cal. 1996) (likelihood of tarnishment where children's toy store was associated with "a line of sexual products"); *Hasbro, Inc. v. Internet Entm't Group Ltd.*, 40 U.S.P.Q.2d (BNA) 1479, 1480 (W.D. Wash. 1996) (dilution likely where the children's game Candyland was linked to "a sexually explicit Internet site"); *Am. Express Co. v. Vibra Approved Labs. Corp.*, 10 U.S.P.Q.2d (BNA) 2006, 2014 (S.D.N.Y. 1989) (tarnishment likely where an American Express charge card was linked to condoms and a sex-toy store); *Pillsbury Co. v. Milky Way Prods., Inc.*, 215 U.S.P.Q. (BNA) 124, 126, 135 (N.D. Ga. 1981) (likelihood of dilution where the Pillsbury dough figures were portrayed as "engaging in sexual intercourse and fellatio"); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 467 F. Supp. 366, 377 (S.D.N.Y. 1979), *affirmed by* 604 F.2d 200, 205 (2d Cir. 1979) (tarnishment likely where NFL cheerleaders were portrayed in a pornographic film).

[5] The potential problem with simply assuming tarnishment when the junior mark places the senior mark in a sexual context becomes apparent if one considers a different case. What if the holder of a sex-related senior mark levied a claim of dilution by tarnishment against the holder of a junior mark that was similarly associated with sex? Would the court be willing to assume without further proof that despite their similar sexual origins the junior mark necessarily tarnishes the senior mark? Under the majority's reasoning, such an assumption would be appropriate. This cannot be the law.

the majority sanctions an almost non-existent evidentiary standard and, in the process, essentially eliminates the requirement that a plaintiff provide some semblance of proof of likelihood of reputational harm in order to prevail on a tarnishment claim, despite the plain language of 15 U.S.C. § 1125(c)(2). Because I believe that Victoria's Secret has not met its burden to show that "Victor's Little Secret" is likely to dilute the famous mark by way of tarnishment, I respectfully dissent.